















JAH    4/12/06    10:43

3:05-CV-00633   IORIO V. ASSET MARKETING

*74*

*AMDCMP.*

ROBERT S. GIANELLI, #82116
SHERRIL NELL BABCOCK, #134259
GIANELLI & MORRIS, A Law Corporation
626 Wilshire Blvd., Suite 800
Los Angeles, CA 90017
Tel: (213) 489-1600; Fax: (213) 489-1611
Email: rob.gianelli@gmlawyers.com
        sherril.babcock@gmlawyers.com

RAYMOND E. MATTISON, #071850-5
DON A. ERNST, #065726-3
ERNST & MATTISON, A Law Corporation
1020 Palm Street, P.O. Box 1327
San Luis Obispo, California 93406-1327
Tel: (805) 541-0300; Fax: (805) 541-5168
Email: rmattison@ccaccess.net

RONALD A. MARRON, #175650
LAW OFFICES OF RONALD A. MARRON
Bayview Corporate Center
1475 Sixth Avenue, 3rd Floor
San Diego, CA 92101
Tel: (619) 696-9006; Fax: (619) 696-0983
Email: ron.marron@cox.net



FILED

APR 1 2 2006

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Attorneys for Plaintiffs
ANTHONY J. IORIO, FOREST K. BROWN, BETTY BROWN, ET AL.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY J. IORIO, FOSTER K. BROWN, and BETTY BROWN, MAX FREIFIELD, RUTH SCHEFFER, JAMES CUMMINGS, BEATRICE STAFFORD, on behalf of themselves and all others, similarly situated;<br><br>    Plaintiff,<br><br>    v.<br><br>ASSET MARKETING SYSTEMS, INC.; ASSET MARKETING SYSTEMS INSURANCE SERVICES, LLC; SENIORS ONLY FINANCIAL; PRESERVATION FINANCIAL AND INSURANCE SERVICES, INC.; MICHAEL HOWARD BOTKIN; ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA,<br><br>    Defendants. | CASE NO. 05 CV 0633 IEG (CAB)<br><br>~~PROPOSED~~ THIRD AMENDED CLASS ACTION COMPLAINT FOR:<br><br>1. BREACH OF UNFAIR COMPETITION LAW<br><br>2. FRAUD<br><br>3. BREACH OF CONTRACT<br><br>4. DECLARATORY RELIEF<br><br>5. BREACH OF IMPLIED COVENANT<br><br>DEMAND FOR JURY TRIAL |

1

05 CV 0633 IEG (cab)

74 DH1

## NATURE OF ACTION

1.      This is a class action lawsuit brought by and on behalf of senior citizens, or their beneficiaries, who purchased "bonus" deferred annuities from Allianz Life Insurance Company of North America ("Allianz") and certain marketing organizations and selling agents.

2.      Abuses in the sale of deferred annuities to senior citizens have become a growing problem in California and across the country.  Insurance companies have seized on the opportunity of the growing senior market to sell annuities to the elderly.  Insurance companies have realized that senior population represents billions of dollars in assets which could be shifted to deferred annuity products and have subjected them to various sales tactics.

3.      Allianz has used the sale of bonus deferred annuities to create incentives for its agency force to sell these annuities to the elderly.  Allianz pays a high commission to the agents and has them tout the benefits of a bonus which is not really a bonus.  Allianz uses deceptive language and policy provisions to hide the fact that it will apply large surrender penalties, including the loss of the bonus, over lengthy periods of time, and on death.  The net result is that seniors buy contracts which provide no real bonus and subject them to costly surrender penalties and loss of investment funds.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction pursuant to 28 U.S.C. 1332(d)(2)(A), the matter in controversy exceeds $5,000,000 for the Class and the Plaintiffs are citizens of a State different than that of at least one of the Defendants.

2

5.   Venue is proper pursuant to 28 U.S.C. 1391. Plaintiff class representatives reside in the judicial district, all Defendants are conducting business in the judicial district, a substantial part of the events or omissions occurred in the judicial district, most of the Defendants reside in the judicial district and the Defendants are subject to personal jurisdiction in the judicial district.

## PARTIES

6.   Plaintiff Anthony J. Iorio is an individual and at all times mentioned herein was, and is, a resident and citizen of the State of California, County of San Diego. Plaintiffs Forest K. Brown and Betty Brown are individuals and at all times mentioned were, and are, residents and citizens of the State of California, County of San Diego. Max Freifield is an individual and at all times mentioned herein was, and is, a resident and citizen of the State of California, County of Ventura. Ruth Scheffer is an individual and at all times mentioned herein was, and is, a resident and citizen of the State of California, County of San Luis Obispo. James Cummings is an individual and at all times mentioned herein was, and is, a resident and citizen of the State of California, County of San Luis Obispo. Beatrice Stafford is an individual and at all times mentioned herein was, and is, a resident and citizen of the State of California, County of San Diego.

7.   Allianz is a corporation created and existing under the laws of the state of Minnesota with its headquarters in Golden Valley, Minnesota. On information and belief, Plaintiffs allege that Allianz is the successor in interest or assignee of LifeUSA Insurance Company. Allianz is the number one seller of deferred annuities to senior citizens in California.

///

*05 CV 0633 IEG (cab)*

8.    Defendant Asset Marketing Systems Insurance Services, Inc. is a Delaware limited liability company and successor in interest to Asset Marketing Systems, Inc., formerly a California Corporation, dissolution filed on August 3, 2001 (collectively referred to as "AMS") and doing business in San Diego, California. Seniors Only Financial, ("SOF") and Preservation Financial and Insurance Services ("PFIS") are affiliates, successors in interest and/or alter egos of AMS and doing business in San Diego, California. Michael Howard Botkin ("Botkin") is an insurance agent doing business in San Diego, California. Botkin has or is acting as an officer and agent of AMS, PFIS and SOF and, at all times mentioned, has acted as an appointed agent of Allianz.

## SUBSTANTIVE ALLEGATIONS

### The Allianz "Bonus" Deferred Annuities

9.    Allianz decided that the senior market was an attractive business opportunity for the sale of its deferred annuities because of the billions of dollars in assets maintained by people who were becoming a part of the growing senior population and seniors' susceptibility to certain sales practices. AIL knew seniors had savings and could be induced to buy annuities over other forms of investments.

10.    To compete in this market, AIL needed to gain access to seniors with assets. Allianz accomplished this by offering sales agents a high rate of commission and allowing them to sell the annuities to the very elderly, persons who were up to 90 years of age, and by using the inducement of a "bonus" to senior purchasers. The bonus offer is a promise by Allianz that a specific percentage bonus would be credited to the annuity policy upon purchase. Allianz devised this bonus so its sales agents could use it to entice seniors to give up existing investments that may have some form of withdrawal penalty and buy Allianz annuities.

4

11.     Allianz knew, however, that the combination of paying high commissions to agents and bonuses to senior purchasers, coupled with the shortened life expectancy of those in the targeted senior market, created a potential financial risk.  The payment of the commissions to the sales agents and bonuses to the seniors would reduce the money Allianz could invest and provide as a return on the annuity.  If the annuitant wanted to withdraw his or her money, or died, before Allianz had an opportunity to earn that money back, as Allianz knew would occur with the elderly population it would be insuring, Allianz would have to return the money before it had a chance to recover the cost of the commissions and bonuses.  To solve this problem, AIL decided it would impose large surrender penalties, include the bonus as part of a surrender penalty, apply the penalties over a lengthy period of time, and apply them on death.

12.     Allianz also knew that telling elderly purchasers they faced large surrender penalties, including the bonus, over a lengthy period of time, and on death, would necessarily frustrate sales.  AIL knew that the elderly would not buy an annuity if they realized they could forfeit their investment returns and portions of the investment itself.

13.     To avoid this impediment to sales, and to induce seniors to buy AIL bonus deferred annuities, Allianz violated surrender penalty disclosure laws, drafted and used deceptive and misleading form annuity contracts, and participated in a marketing scheme with marketing organizations and sales agents designed to deceive and take advantage of seniors.  Allianz has done so by, *inter alia*:

        (a)     Issuing annuity contracts to seniors which violate the notice
                requirements of Insurance Code sections 10127.10 and 10127.13.

*05 CV 0633 IEG (cab)*

These statutes are designed to provide notice to seniors of surrender penalties they may face in purchasing annuities. Allianz violated these statutes in various ways, including: a) placing the annuity policies in a folder or policy jacket which did not contain the required statutory language on its cover; b) failing to use the required statutory language, in the required statutory form, on the cover of, or anywhere else in, the policies; c) failing to set forth the surrender period and associated penalties on the cover of, or anywhere else in, the policies, or disclose on the cover the location within the annuity where the information could be found; d) failing to describe or list as a surrender charge the full consequences of a surrender including the loss of a bonus and account credits;

(b)   Using the inducement of a bonus to encourage purchasers with money in existing annuities, certificates of deposit or other investments to take money out of those investments and place it in an Allianz annuity;

(c)   Using terms such as "bonus" and "value" to represent some present monetary value of he purchaser's investment in the annuity when there was no such bonus or value in existence until at least ten or fifteen years after purchase;

///

///

(d)     Promising that a specific percentage bonus would be credited to the policy upon purchase but failing to disclose that any such advantage would be lost or substantially lost if the purchaser actually kept the annuity for a lengthy period and annuitized the monies deposited under a minimal interest rate – as required by Allianz for the purchaser to receive the so-called bonus;

(e)     Utilizing policy provisions which fail to describe or list the loss of the bonus as part of a surrender charge even though Allianz imposes the loss of a bonus as a surrender charge;

(f)     Hiding the application of a surrender charge (including the loss of a bonus) in the event of death by using contradictory and misleading language, including the use of mislabeled headings such as "Death Benefit" to refer to a loss of monies on death;

(g)     Devising, participating in and authorizing a marketing scheme with marketing organizations and sales agents, such as Defendants, which is designed to deceive and take advantage of senior citizens.  Allianz induced agents to sell its annuities to seniors by providing a high rate of commission to the agents which, in turn, caused Allianz to impose large surrender penalties over long periods of time. Allianz knew the agents would sell the annuities to elderly purchasers by promoting the bogus bonus, by subjecting the purchasers to

7

withdrawal charges on existing investments, and by failing to

disclose the adverse consequences that would result from the

purchase of an Allianz bonus deferred annuity;

(h)     Other acts of which Plaintiffs are presently unaware.

14.     Defendants AMS, PFIS, SOF and Botkin have participated with Allianz in scheme described herein by, *inter alia*:

(a)     Using the inducement of a bogus bonus to encourage purchasers with money in existing annuities, certificates of deposit or other investments to take money out of those investments and place it in an Allianz annuity;

(b)     Selling Allianz bonus deferred annuities to seniors because they could earn a high rate of commission while knowing that the high commission rate meant Allianz would impose onerous surrender penalties on the senior purchasers;

(c)     Delivering Allianz bonus deferred annuity contracts to seniors in folders which violate the notice requirements of Insurance Code sections 10127.10 and 10127.13;

(d)     Promising that a specific percentage bonus would be credited to the policy upon purchase but failing to disclose that any such advantage would be lost or substantially lost if the purchaser actually kept the

8

annuity for a lengthy period and annuitized the monies deposited

under a minimal interest rate – as required by Allianz for the

purchaser to receive the so-called bonus;

(e)    Selling annuities to seniors they knew where improper and

inappropriate given the seniors' ages.

(f)    Other acts of which Plaintiffs are presently unaware.

15.    The scheme alleged herein has resulted in losses of millions of dollars under the

Allianz bonus deferred annuities sold to California senior citizens.

## The Sales To Plaintiffs

16.    On or about May 2000, Anthony J. Iorio received a mailer sent by defendants AMS

that offered a complimentary seniors financial seminar at the Harding Center in Carlsbad,

California. At the seminar, Mr. Iorio was solicited to make an appointment with Botkin at Mr.

Iorio's home.  When Botkin came to Mr. Iorio's home he sold him a bonus deferred annuity with

LifeUSA Insurance Company which, on information and belief, Plaintiffs allege is now with

Allianz.  This annuity is known as the "Accumulator Bonus Maxx Annuity." A copy of the

contract is attached as Exhibit 1.  To sell this contract, Botkin offered Mr. Iorio a 10% bonus and

had him cash out his Individual Retirement Account. At the time of the sale, Mr. Iorio was sixty-

five years of age.  In March 2005, Mr. Iorio surrendered his policy for $10,404.66, losing bonus

and interest in the total amount of $3,386.16.

///

9

17.     On or about February 2, 2001, Botkin offered and sold Forest K. Brown a bonus deferred annuity with Allianz known as a "FlexDex Bonus Annuity." The contract, without the face page, is attached hereto as Exhibit 2.  On or about May 1, 2002, Botkin offered and sold his wife, Betty Brown, a bonus deferred annuity on the life of her husband with Allianz known as a "FlexDex Multi-Choice Annuity." That contract is attached hereto as Exhibit 3.  In selling these annuities, Botkin offered Mr. And Mrs. Brown a bonus on the annuities and had them cash in bonds.  At the time of these sales, Mr. Brown was eighty years of age.  Mr. and Mrs. Brown have received no bonus and are unable to access their funds without paying a substantial penalty.

18.     Allianz "bonus" deferred annuities were also sold to plaintiffs Max Freifield (Policy No. 70284213, MasterDex 10 annuity), Ruth Scheffer (Policy Nos. 8576131 and 7620473, BonusDex and Power Rate 5 annuities), James Cummings (Policy No. 31276306, Power Rate 7 annuity) and Beatrice Stafford (Policy No. 30364904, FlexDex annuity).

## CLASS ALLEGATIONS

19.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of:

> All California residents who have purchased Allianz "bonus" deferred annuities and a Sub-Class of all California residents who have purchased said annuities through Defendants AMS, PFIS, SOF or Botkin.  Excluded from Class and Sub-Class are the defendants, the officers and directors of Defendants, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

20.     The members of the Class and Sub-Class ("class members") are so numerous that joinder of all members is impracticable.  While the exact number of class members is unknown to Plaintiffs at this time, and can only be ascertained through discovery, it is believed there are thousands of class members.

21.     Plaintiffs' claims are typical of the claims of the class members and are similarly affected by Defendants' wrongful conduct.

22.     Plaintiffs will fairly and adequately protect the interests of the class members and have retained counsel competent and experienced in class and insurance litigation.

23.     Common questions of law and fact exist as to all class members and predominate over any questions solely affecting individual members of the Class.

24.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as damages suffered by Class members may be relatively small, the expense and burden of individual litigation make it impossible for class members to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## FIRST CLAIM FOR RELIEF

### (Violation of the Unfair Competition Law Against All Defendants)

25.     Plaintiffs and the class members hereby repeat and reallege paragraphs 1 through 24 and incorporate same as though fully set forth herein.

*05 CV 0633 IEG (cab)*

26. Business and Professions Code section 17200 et seq., the Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." The acts of Defendants, as alleged herein, constitute unlawful, unfair and/or fraudulent business practices and unfair, deceptive, untrue or misleading advertising within the meaning of § 17200.

27. Allianz has violated the UCL by:

    (a)    Issuing annuity contracts to seniors which violate the notice requirements of Insurance Code sections 10127.10 and 10127.13. These statutes are designed to provide notice to seniors of surrender penalties they may face in purchasing annuities. Allianz violated these statutes in various ways, including: a) placing the annuity policies in a folder or policy jacket which did not contain the required statutory language on its cover; b) failing to use the required statutory language, in the required statutory form, on the cover of, or anywhere else in, the policies; c) failing to set forth the surrender period and associated penalties on the cover of, or anywhere else in, the policies, or disclose on the cover the location within the annuity where the information could be found; d) failing to describe or list as a surrender charge the full consequences of a surrender including the loss of a bonus and account credits;

    (b)    Using the inducement of a bonus to encourage purchasers with money in existing annuities, certificates of deposit or other

investments to take money out of those investments and place it in an Allianz annuity;

(c)     Using terms such as "bonus" and "value" to represent some present monetary value of he purchaser's investment in the annuity when there was no such bonus or value in existence for ten or fifteen years after purchase;

(d)     Promising that a specific percentage bonus would be credited to the policy upon purchase but failing to disclose that any such advantage would be lost or substantially lost if the purchaser actually kept the annuity for a lengthy period and annuitized the monies deposited under a minimal interest rate – as required by Allianz for the purchaser to receive the so-called bonus;

(e)     Utilizing policy provisions which fail to describe or list the loss of the bonus as a surrender charge even though Allianz imposes the loss of a bonus as a surrender charge;

(f)     Hiding the application of a surrender charge (including the loss of a bonus) in the event of death by using contradictory and misleading language, including the use of mislabeled headings such as "Death Benefit" to refer to a loss of monics on death;

///

(g)     Devising, participating in and authorizing a marketing scheme with marketing organizations and sales agents, such as Defendants, which is designed to deceive and take advantage of senior citizens. Allianz induced agents to sell its annuities to seniors by providing a high rate of commission to the agents which, in turn, caused Allianz to impose large surrender penalties over long periods of time. Allianz knew the agents would sell the annuities to elderly purchasers by promoting the bogus bonus, by subjecting the purchasers to withdrawal charges on existing investments, and by failing to disclose the adverse consequences that would result from the purchase of an Allianz bonus deferred annuity;

(h)     Other acts of which Plaintiffs are presently unaware.

28.     Defendants AMS, PFIS, SOF and Botkin have violated the UCL by, *inter alia*:

(a)     Using the inducement of a bogus bonus to encourage purchasers with money in existing annuities, certificates of deposit or other investments to take money out of those investments and place it in an Allianz annuity;

(b)     Selling Allianz bonus deferred annuities to seniors because they could earn a high rate of commission while knowing that the high commission rate meant Allianz would impose onerous surrender penalties on the senior purchasers;

///

*05 CV 0633 IEG (cab)*

(c)     Delivering Allianz bonus deferred annuity contracts to seniors in folders which violate the notice requirements of Insurance Code sections 10127.10 and 10127.13;

(d)     Promising that a specific percentage bonus would be credited to the policy upon purchase but failing to disclose that any such advantage would be lost or substantially lost if the purchaser actually kept the annuity for a lengthy period and annuitized the monies deposited under a minimal interest rate – as required by Allianz for the purchaser to receive the so-called bonus;

(e)     Selling annuities to seniors they knew where improper and inappropriate given the seniors' ages.

(f)     Other acts of which Plaintiffs are presently unaware.

29.     As a result of Defendants' unfair competition, Plaintiffs have suffered injuries in fact and have lost money or property, as have the other class members.

30.     On behalf of themselves and on behalf of the general public, Plaintiffs and the class members respectfully request that the Court order Defendants to grant restitution of the penalties assessed and fees charged, and interest thereon, and enjoin Defendants from committing the acts alleged herein in the future.

/ / /

*05 CV 0633 IEG (cab)*

31.    Defendants knew their conduct was directed to one or more senior citizens, that those senior citizens were more vulnerable to said conduct than other members of the general public, or that their actions would cause harm and injury to the senior citizens and/or their heirs and beneficiaries, thereby entitling Plaintiffs and the class members to trebling of any restitution awarded, under Civil Code section 3345.

32.    Plaintiffs and the class members request attorneys' fees under Code of Civil Procedure section 1021.5 and/or under a common fund theory.

## SECOND CLAIM FOR RELIEF

### (Fraud Against All Defendants)

33.    Plaintiffs and the class hereby repeat and reallege paragraphs 1 through 32 and incorporate same as though fully set forth herein.

34.    Allianz intentionally misrepresented and/or concealed the following material facts from Plaintiffs and the class members.

(a)    Using terms such as "bonus" and "value" to represent some present monetary value of he purchaser's investment in the annuity when there was no such bonus or value in existence for ten or fifteen years after purchase;

(b)    Promising that a specific percentage bonus would be credited to the policy upon purchase but failing to disclose that any such advantage

16

would be lost or substantially lost if the purchaser actually kept the annuity for a lengthy period and annuitized the monies deposited under a minimal interest rate -- as required by Allianz for the purchaser to receive the so-called bonus;

(c)    Utilizing policy provisions which fail to describe or list the loss of the bonus as a surrender charge even though Allianz imposes the loss of a bonus as a surrender charge;

(d)    Hiding the application of a surrender charge (including the loss of a bonus) in the event of death by using contradictory and misleading language, including the use of mislabeled headings such as "Death Benefit" to refer to a loss of monies on death;

(e)    Devising, participating in and authorizing a marketing scheme with marketing organizations and sales agents, such as Defendants, which is designed to deceive and take advantage of senior citizens. Allianz induced agents to sell its annuities to seniors by providing a high rate of commission to the agents which, in turn, caused Allianz to impose large surrender penalties over long periods of time. Allianz knew the agents would sell the annuities to elderly purchasers by promoting the bogus bonus, by subjecting the purchasers to withdrawal charges on existing investments, and by failing to

*05 CV 0633 IEG (cab)*

disclose the adverse consequences that would result from the

purchase of an Allianz bonus deferred annuity;

(f)     Other acts of which Plaintiffs are presently unaware.

35.     Defendants AMS, PFIS, SOF and Botkin intentionally misrepresented and/or concealed the following material facts from Plaintiffs and the class members:

(a)     Using the inducement of a bogus bonus to encourage purchasers with money in existing annuities, certificates of deposit or other investments to take money out of those investments and place it in an Allianz annuity;

(b)     Selling Allianz bonus deferred annuities to seniors because they could earn a high rate of commission while knowing that the high commission rate meant Allianz would impose onerous surrender penalties on the senior purchasers;

(c)     Delivering Allianz bonus deferred annuity contracts to seniors in folders which violate the notice requirements of Insurance Code sections 10127.10 and 10127.13;

(d)     Promising that a specific percentage bonus would be credited to the policy upon purchase but failing to disclose that any such advantage would be lost or substantially lost if the purchaser actually kept the annuity for a lengthy period and annuitized the monies deposited

18

under a minimal interest rate – as required by Allianz for the

purchaser to receive the so-called bonus;

(e)  Selling annuities to seniors they knew where improper and

inappropriate given the seniors' ages.

(f)  Other acts of which Plaintiffs are presently unaware.

36.  Plaintiffs and the class members relied upon said representations and omissions by

purchasing the annuities.

37.  As a proximate result of the representations and omissions of said Defendants,

Plaintiffs and the class members have suffered loss of monies in a sum to be proven at the time of

trial.

38.  The aforementioned acts were performed by Defendants maliciously, fraudulently

and oppressively entitling Plaintiffs and the Class members to punitive damages in an amount

appropriate to punish Defendants.

39.  Defendants knew their conduct was directed to one or more senior citizens, that

those senior citizens were more vulnerable to said conduct than other members of the general

public, or that their actions would cause harm and injury to the senior citizens and/or their heirs and

beneficiaries, thereby entitling Plaintiffs and the class members to trebling of any punitive damages

awarded, under Civil Code section 3345.

## THIRD CLAIM FOR RELIEF

### (Breach of Contract Against Allianz)

40.    Plaintiffs and the class members hereby repeat and reallege paragraphs 1 through 32 and incorporate the same as though fully set forth herein.

41.    Plaintiffs and the class members entered into written contracts with Allianz, as alleged herein.

42.    The essential terms of the contracts were that Allianz agreed to accept a premium from said purchasers, credit monies to their policies, including a bonus, and pay a death benefit to their beneficiaries in the event they died.  Said purchasers, in return, agreed to pay a premium under the contract.

43.    Allianz breached the terms of the policies by:

(a)    Issuing annuity contracts to seniors which violate the notice

requirements of Insurance Code sections 10127.10 and 10127.13.

These statutes are designed to provide notice to seniors of surrender

penalties they may face in purchasing annuities.  Allianz violated

these statutes in various ways, including: a) placing the annuity

policies in a folder or policy jacket which did not contain the

required statutory language on its cover; b) failing to use the

required statutory language, in the required statutory form, on the

cover of,  or anywhere else in, the policies; c) failing to set forth the

surrender period and associated penalties on the cover of, or

20

anywhere else in, the policies, or disclose on the cover the location within the annuity where the information could be found; d) failing to describe or list as a surrender charge the full consequences of a surrender including the loss of a bonus and account credits;

(b)    Using terms such as "bonus" and "value" to represent some present monetary value of he purchaser's investment in the annuity when there was no such bonus or value in existence for ten or fifteen years after purchase;

(c)    Promising that a specific percentage bonus would be credited to the policy upon purchase but failing to disclose that any such advantage would be lost or substantially lost if the purchaser actually kept the annuity for a lengthy period and annuitized the monies deposited under a minimal interest rate – as required by Allianz for the purchaser to receive the so-called bonus;

(d)    Utilizing policy provisions which fail to describe or list the loss of the bonus as a surrender charge even though Allianz imposes the loss of a bonus as a surrender charge;

(e)    Hiding the application of a surrender charge (including the loss of a bonus) in the event of death by using contradictory and misleading language, including the use of mislabeled headings such as "Death Benefit" to refer to a loss of monies on death;

(f)     Other acts of which Plaintiffs are presently unaware.

44.     The acts of Allianz in applying surrender penalties and failing to pay a bonus and monies due under the annuities, as herein alleged, breached the contracts.

45.     As a proximate result of the breach of the contracts by Allianz, Plaintiffs and the class members have suffered a loss of the monies and interest thereon in an amount to be proven at the time of trial.

## FOURTH CLAIM FOR RELIEF

### (Declaratory Relief Against Allianz)

46.     Plaintiffs and the class members hereby repeat and reallege paragraphs 1 through 32 and 40 through 44 and incorporate the same as though fully set forth herein.

47.     As alleged above, an actual controversy exists between the parties regarding their rights and liabilities under the contracts and the cited statutes.

48.     Plaintiffs and the class members request a declaration of the parties rights and liabilities under the contracts and the statutes cited.

## FIFTH CLAIM FOR RELIEF

### (Breach of the Implied Covenant of Good Faith and Fair Dealing Against Allianz)

*05 CV 0633 IEG (cab)*

49.     Plaintiffs and the class members hereby repeat and reallege paragraphs 1 through 32 and 40 through 44 and incorporate the same as though fully set forth herein.

50.     As alleged above, the relationship of insurer and insureds exists between Allianz and the senior purchasers of the bonus deferred annuities.

51.     The relationship of insurer and insureds has caused there to be implied in law a duty extending from Allianz to the Plaintiffs and the class members to deal fairly with the Plaintiffs and the class members and in good faith. Allianz breached that duty of good faith and fair dealing in several ways, including, but not limited to, the following:

    (a)     Issuing annuity contracts to seniors which violate the notice
            requirements of Insurance Code sections 10127.10 and 10127.13.
            These statutes are designed to provide notice to seniors of surrender
            penalties they may face in purchasing annuities. Allianz violated
            these statutes in various ways, including: a) placing the annuity
            policies in a folder or policy jacket which did not contain the
            required statutory language on its cover; b) failing to use the
            required statutory language, in the required statutory form, on the
            cover of, or anywhere else in, the policies; c) failing to set forth the
            surrender period and associated penalties on the cover of, or
            anywhere else in, the policies, or disclose on the cover the location
            within the annuity where the information could be found; d) failing

23

to describe or list as a surrender charge the full consequences of a

surrender including the loss of a bonus and account credits;

(b)   Using the inducement of a bonus to encourage purchasers with

money in existing annuities, certificates of deposit or other

investments to take money out of those investments and place it in

an Allianz annuity;

(c)   Using terms such as "bonus" and "value" to represent some present

monetary value of he purchaser's investment in the annuity when

there was no such bonus or value in existence for ten or fifteen years

after purchase;

(d)   Promising that a specific percentage bonus would be credited to the

policy upon purchase but failing to disclose that any such advantage

would be lost or substantially lost if the purchaser actually kept the

annuity for a lengthy period and annuitized the monies deposited

under a minimal interest rate – as required by Allianz for the

purchaser to receive the so-called bonus;

(e)   Utilizing policy provisions which fail to describe or list the loss of

the bonus as a surrender charge even though Allianz imposes the

loss of a bonus as a surrender charge;

///

24

(f)   Hiding the application of a surrender charge (including the loss of a bonus) in the event of death by using contradictory and misleading language, including the use of mislabeled headings such as "Death Benefit" to refer to a loss of monies on death;

(g)   Devising, participating in and authorizing a marketing scheme with marketing organizations and sales agents, such as Defendants, which is designed to deceive and take advantage of senior citizens. Allianz induced agents to sell its annuities to seniors by providing a high rate of commission to the agents which, in turn, caused Allianz to impose large surrender penalties over long periods of time. Allianz knew the agents would sell the annuities to elderly purchasers by promoting the bogus bonus, by subjecting the purchasers to withdrawal charges on existing investments, and by failing to disclose the adverse consequences that would result from the purchase of an Allianz bonus deferred annuity;

(h)   Other acts of which Plaintiffs are presently unaware.

52.   As a proximate result of the aforementioned acts and omissions of Allianz, Plaintiffs and the class members have suffered loss of monies in a sum to be proven at the time of trial. It has also become reasonably necessary for Plaintiffs and the class members to retain counsel to recover amounts due under the contracts.

25

*05 CV 0633 IEG (cab)*

53. The aforementioned acts were performed by Allianz maliciously, fraudulently and oppressively entitling Plaintiffs and the class members to punitive damages in an amount appropriate to punish Allianz.

54. Defendants knew their conduct was directed to one or more senior citizens, that those senior citizens were more vulnerable to said conduct than other members of the general public, or that their actions would cause harm and injury to the senior citizens and/or their heirs and beneficiaries, thereby entitling Plaintiffs and the Class to trebling of any punitive damages award, under Civil Code section 3345.

**WHEREFORE, Plaintiffs and the class members pray for judgment against Defendants as follows:**

1. Restitution of the monies improperly collected or withheld by Allianz;

2. A preliminary and permanent injunction restraining Defendants from further unfair practices;

3. Special damages in a sum to be determined at the time of trial;

4. A declaration of the rights and liabilities of the parties under the Allianz bonus deferred annuities.

5. Reasonable attorneys' fees;

///

26

*05 CV 0633 IEG (cab)*

1    6.    Punitive damages in an amount appropriate to punish or set an example of

2    Defendants;

3

4    7.    Trebling of punitive damages and/or restitution amounts pursuant to Civil Code

5    section 3345;

6

7    9.    Costs of suit incurred herein; and

8

9

10    10.    For such other and further relief as the Court deems just and proper.

11    DATED:                                    GIANELLI & MORRIS
                                              ERNST & MATTISON
12                    4/6/06                   LAW OFFICES OF RONALD A. MARRON

13

14                                    By: _____

15                                          ROBERT S. GIANELLI
                                          Attorneys for Plaintiffs,
16                                          ANTHONY J. IORIO; FOSTER K. BROWN; BETTY
                                          BROWN, MAX FREIFIELD, RUTH SCHEFFER,
17                                          JAMES CUMMINGS, BEATRICE STAFFORD; and
                                          all others similarly situated

18

19

20

21

22

23

24

25

26

27

28

*05 CV 0633 IEG (cab)*