USDC SCAN INDEX SHEET

















JAH   7/27/06   9:19

3:05-CV-00633   IORIO V. ASSET MARKETING

*113*

*O.*



2 3 JUL 26  PM 12: 45

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY J. IORIO, et. al., | CASE NO. 05CV633 IEG (CAB) |
| Plaintiffs, | **ORDER GRANTING PLAINTIFFS'**<br>**CLASS CERTIFICATION**<br>**PURSUANT TO FED.R.CIV.P. 23** |
| vs. | |
| ASSET MARKETING INC., et. al., | [Doc. No. 86] |
| Defendants. | |

Presently before the Court is the motion by Anthony Iorio, Max Freifield and Ruth Scheffer ("plaintiffs") on behalf of themselves and those similarly situated to certify as a class, pursuant to Fed.R.Civ.P. 23, all persons who purchased one of the following annuities from Allianz Life Insurance Company of North America or LifeUSA while they were California residents and when they were 65 years or older: Bonus Maxxx, BonusDex, Bonus Maxxx Elite, BonusDex Elite, 10% Bonus PowerDex Elite and MasterDex 10. Excluded from the proposed class are any officer or director of defendant. [Doc. No. 86] For the following reasons, the Court grants plaintiffs' motion.

**BACKGROUND**

**A.      Factual Background**

This action arises out of Allianz Life's ("defendant") sale of a deferred annuities[1] to senior

---

[1]An annuity is an insurance product that accumulates policy values to pay a guaranteed stream of income to the policy owner. (Decl. of Cathy Larson ¶ 3.) A policy owner can choose to receive this income stream in the form of regular payments over a definite period or for the rest of her life. Id. The starting date for the payment stream can be deferred for a period of years. Id. ¶ 4. During the deferral period, gains on the principal invested in a deferred annuity are tax deferred. Id. ¶ 5, 10.

113 NAH

06cv633

1  citizens in the state of California.  (Opp. at 1.)

2      I.      The Allianz Annuities

3  In the mid-1990's, Allianz began concentrating on deferred annuity sales, in part by

4  working with another life insurance company, LifeUSA.  (Memo. ISO Motion at 4.)  To compete

5  in the senior citizen market, Allianz developed certain annuity products[2] that Allianz touted as

6  providing an "immediate bonus."  Id. at 5.  The products offer a "bonus" to those who hold the

7  annuity for specified periods of time.  (Larson Decl. ¶ 7.)  The "bonus" credits purchasers with an

8  amount greater than the premium paid, which increases the resulting stream of annuity payments

9  the purchaser is entitled to receive.  Id.

10  However, if a purchaser fails to meet the conditions of the annuity, he or she suffers the

11  loss of the promised bonus, a loss of the accumulated interest on the bonus and potentially incurs

12  other penalties.  (Opp. 4; Memo. ISO Motion at 5.)

13      II.     How Allianz Life Annuities Are Sold

14  Allianz Life deferred annuities are sold in California through a network of more than

15  21,000 independent insurance agents.  (Larson Decl. ¶ 12.)  The independent agents are free to sell

16  products from other companies.  Id. ¶ 13.  Each independent agent is affiliated with a field

17  marketing organization ("FMO").  Id. ¶ 16.

18  The independent agents have some latitude to develop their own sales presentations and

19  choose what materials to include in those presentations.  Id. ¶ 14.  However, Allianz expected, at

20  least in regards to the BonusMaxx annuity, that agents would leave a designated Allianz brochure

21  describing the annuity with prospective clients.  (Pl. Ex. 1 at 76-77.)[3]

22  The BonusMaxx brochure that Allianz required be given to prospects boasts "Immediate

23  10% growth.  You receive a 10% bonus on all funds paid into your policy during the first policy

24  year, for an immediate gain on your money."  (Gianelli Decl. Ex. 1.)  Additionally, agents

25

26

27      [2]The six challenged annuity products in this case are, as noted earlier, Bonus Maxxx,
BonusDex, Bonus Maxxx Elite, BonusDex Elite, 10% Bonus PowerDex Elite and MasterDex 10.

28

     [3]Plaintiffs' first exhibit is the deposition of Charles Field, the person designated by Allianz as
most knowledgeable about Allianz's marketing of the challenged annuities.

1  submitted any advertising materials they proposed to use in marketing Allianz products to Allianz,

2  which would make any desired changes and return the marketing materials to the agents.  (Pl. Ex. 1

3  at 190, 274.)

4       FMOs are generally responsible for training their independent agents.  (Larson Decl. ¶ 17.)

5  Allianz Life also offers its own training sessions, but does not require independent agents to attend.

6  Id. ¶ 18.

7       Another factor affecting the content of the annuity marketing presentations are the agents'

8  relationships with clients.  Agents frequently have longstanding relationships with their clients,

9  enabling an agent to make recommendations that fit a particular clients' interests and needs.  (Opp.

10  at 5)(citing to Seran Decl. ¶ 7.)

11  III.    Plaintiffs' Purhases of Allianz Life Annuities

12       Plaintiff Anthony Iorio purchased a LifeUSA Bonus Maxx annuity in November of 2000

13  when he was 65 years old. (Memo. ISO Motion at 11.)  Plaintiff-Iorio bought the annuity from

14  Michael Botkin, who is also a defendant in this case.  Id.  Plaintiff-Iorio surrendered his Bonus

15  Maxx annuity in February 2005 and suffered a loss of his 10% bonus, a loss of interest on the

16  bonus and another 10% in further surrender penalties.  Id. at 12.

17       Plaintiff Ruth Scheffer purchased an Allianz BonusDex annuity in August of 2002 when

18  she was 75 years old.  Id.  She later surrendered her BonusDex annuity and was upset over the high

19  surrender charge fees she suffered. Id.

20       Plaintiff Max Freifield purchased an Allianz Masterdex 10 annuity in August of 2005 when

21  he was 72 years old.  Id.  He made two partial surrenders and suffered a reduction in his "Cash

22  Value." Id.

23  B.    Procedural Background

24       Plaintiffs filed their initial complaint in this Court on March 30, 2005. [Doc. No. 1] On

25  April 12, 2006, plaintiffs filed a Third Amended Complaint[4] (TAC) alleging five causes of action:

26  1) Breach of California's Unfair Competition laws, 2) fraud, 3) breach of contract, 4) declaratory

27  relief and 5) breach of the implied covenant of good faith and fair dealing. [Doc. No. 74]

28

---

[4]The TAC originally included several other plaintiffs, but on June 29, 2006, the parties stipulated to dismiss these plaintiffs' claims without prejudice. [Doc. No. 93]

1   On June 23, 2006, plaintiffs moved to certify this case as a class action pursuant to

2   Fed.R.Civ.P. 23. [Doc. No. 86]

3   On July 10, 2006, defendant Allianz filed its opposition. [Doc. No. 95]

4   Also on July 10, 2006, defendants Asset Marketing, Preservation Financial and Michael

5   Botkin filed a memorandum pointing out that plaintiffs are not seeking class certification against

6   them. [Doc. No. 103]

7   **DISCUSSION**

8   Rule 23 mandates four prerequisites for a class action: [1] the class must be so numerous

9   that joinder of all members is impracticable, [2] there must be questions of law or fact common to

10  the class, [3] the claims or defenses of the representative parties must be typical of the claims or

11  defenses of the class, and [4] the representative parties must fairly and adequately protect the

12  interests of the class. Fed.R.Civ.P. 23(a).  The potential class must also satisfy one of the

13  requirements of Rule 23(b).

14  In the present case, plaintiffs have attempted to satisfy Rule 23(b)(3), which states that an

15  action may be maintained as a class action if the court finds that the questions of law or fact

16  common to the members of the class predominate over any questions affecting only individual

17  members, and that a class action is superior to other available methods for the fair and efficient

18  adjudication of the controversy.   The matters pertinent to the Rule 23(b)(3) inquiry are: [1] the

19  interest of members of the class in individually controlling the prosecution or defense of separate

20  actions; [2] the extent and nature of any litigation concerning the controversy already commenced

21  by or against members of the class, [3] the desirability or undesirability of concentrating the

22  litigation of the claims in the particular forum and [4] the difficulties likely to be encountered in

23  the management of the class action.  Plaintiffs bear the burden of demonstrating that their case

24  meets all of Rule 23's requirements. Western States Wholesale, Inc. v. Synthetic Indus., Inc., 206

25  F.R.D. 271, 274 (C.D. Cal. 2002).

26  Allianz focuses its opposition to certification on plaintiffs' Rule 23(b)(3) showing.  Allianz

27  contends that plaintiffs have "not shown how their specific claims could ever be presented in one

28  courtroom, in one trial, according to classwide proof." (Opp. at 12.)  Thus, according to Allianz,

plaintiffs cannot show that class issues predominate over individual issues as required by Rule

- 4 -

1   23(b)(3)[5].  To evaluate Allianz's claim, the Court must conduct a particularized inquiry into the

2   types of issues that would arise for each of plaintiffs' causes action.

3   I.      The Fraud Claim

4           The Court begins by analyzing plaintiffs' second cause of action for fraud.  Plaintiffs allege

5   that Allianz intentionally misrepresented or concealed that [1] the terms "bonus" and "value"

6   represented some present monetary value when no such value existed for ten to fifteen years, [2] a

7   specific percentage bonus would immediately be credited to the policy holders' account without

8   explaining that the any such advantage would be substantially lost if the annuity was held for the

9   lengthy period required by Allianz, [3] the bonus is a surrender charge and [4] a surrender charge

10  applied in case of death.  (TAC ¶ 34.)

11          The elements of fraud are: (a) misrepresentation, (b) knowledge of falsity, (c) intent to

12  defraud, (4) justifiable reliance and (5) damages.  Witkins, Vol. 5, § 772 (Witkin 2005).  It must be

13  shown that the plaintiff actually relied on the misrepresentation.  Id. § 808 (citing to Schroeder v.

14  Auto Driveaway Co., 11 Cal.3d 908, 917 (1974)).

15          Allianz argues that individual elements such as what statements were actually made and

16  whether plaintiffs relied on these statements predominate over common elements.  (Opp. at 13)

17  Plaintiffs contend that common elements predominate because uniform written marketing materials

18  were presented to each class member.  (Reply at 7.)

19          Allianz is correct that courts have generally not granted certification where plaintiffs' claims

20  arise from non-uniform sales presentations.  See e.g. In re LifeUSA Holding Inc., 242 F.3d 136 (3rd

21  Cir. 2001); See also Bradbery v. John Hancock Mut. Life Ins. Co., 222 F.R.D. 568 (W.D. Tenn.

22  2004).  The reasoning behind such decisions is that each individual plaintiff will have to present

23

24          [5]Allianz also makes three very short arguments regarding the superiority of trying each case
    individually as opposed to as a class.  The Court does not find any of these arguments persuasive.
25  Allianz's first argument, that the class members will have to present evidence regarding their
    individual claims, is redundant with Allianz's predominance arguments addressed throughout this
26  order.  Secondly, Allianz states that plaintiffs will not be able to propose workable damages remedies.
    But the cases Allianz cites contained far more complicated damages issues than are present here.  See
27  e.g. Sikes v. Teleline, Inc., 281 F.3d 1350, 1364-66 (11th Cir. 2002).  The Court sees no potential risk,
    as existed in Teleline Inc., that some potential class members will recover without having suffered
28  harm.  Finally, Allianz contends that plaintiffs, by maintaining individual suits against Asset
    Marketing and other defendants, acknowledge the superiority of individual suits as opposed to a class
    action.  This argument lacks merit.

06cv633

1  evidence regarding the specific misrepresentations made to him/her and regarding reliance.

2  However, certification is appropriate where plaintiffs received uniform written material containing

3  the alleged misrepresentations.  Occidental Land, Inc. v. Superior Court, 18 Cal.3d 355, 361

4  (1976)("But the trial court also had before it the written representations contained in the Final

5  Subdivision Public Report provided to each purchaser of a home. As we have seen, each purchaser

6  was required to sign this report before completing the sales transaction with defendant....Thus, we

7  cannot hold as a matter of law that the trial court abused its discretion in determining that at least

8  some of the alleged misrepresentations relied upon in the complaint were made to all members of

9  the class."); See also Martin v. Dahlberg, Inc., 156 F.R.D. 207, 216 (N.D. Cal.1994)(suggesting that

10  certification might have been appropriate if plaintiffs had evidence of a "fixed set of written

11  materials").  The delivery of uniform written materials satisfies the concern that plaintiffs may have

12  been exposed to materially different misrepresentations.  Moreover, when there is sufficient

13  evidence of uniform misrepresentations, a court may presume reliance where the class members'

14  acts thereafter are consistent with reliance.  Vasquez v. Superior Court, 4 Cal.3d 800, 814-15

15  (1971); Occidental Land, Inc., 18 Cal.3d at 363 ("As we held in *Vasquez*, an inference of reliance

16  arises if a material false representation was made to persons whose acts thereafter were consistent

17  with reliance upon the representation.")

18      In the present case, the Court agrees with plaintiffs.  The evidence that Allianz required the

19  distribution of uniform marketing material means that common issues predominate.  Plaintiffs have

20  furnished evidence indicating that Allianz mandated the distribution and discussion of brochures

21  containing the challenged statements regarding annuities.  In his deposition, Allianz's person most

22  knowledgeable (PMK) admits that since 2000, it was a requirement to leave an Allianz annuity

23  brochure with "prospects."  (Pl. Ex. 1 at 76.)  When asked whether Allianz expected agents to

24  review the brochure with the customer, the PMK responded "My expectation is that they would do

25  that."  (Id. at 77.)  This is sufficient evidence of uniformity to satisfy Rule 23(b)(3).

26      In opposition, Allianz has offered evidence regarding the individualized sales presentations

27  used to sell annuities.  Allianz sells its annuities through independent sellers who have a significant

28  amount of control over the content of their presentations.  (Larson Decl. ¶ 14.)  Moreover, many

independent sellers have longstanding relationships with their customers and tailor their

- 6 -

1   presentations to meet their customers' specific needs.  (Seran Decl. ¶ 7.) Allianz does not require

2   independent sellers to attend its training sessions. (Larson Decl. ¶ 18.)  This evidence might be

3   persuasive if plaintiffs' claims arose exclusively from the oral representations of agents.  But

4   plaintiffs have shown that they received uniform written materials containing the challenged

5   statements, which is sufficient to sustain class certification even when there may be some diversity

6   in accompanying oral communication.  See Occidental Land, 18 Cal.3d at 363.

7           II.     The Unfair Competition Law Claim

8           Plaintiffs' second cause of action alleges violation of Business and Professions Code §

9   17200 et seq. (known as the Unfair Competition Law, "UCL").  Specifically, the TAC alleges that

10  Allianz violated Insurance Code sections 10127.10 and 10127.13[6] and that Allianz used deceptive

11  terminology to hide the restrictions and potential penalties Allianz placed on the so-called bonus.

12  (Opp. at 15.)

13          The UCL prohibits "unfair competition," defined as "any unlawful, unfair or fraudulent

14  business act or practice."  With respect to the "unlawful" prong, the UCL "borrows" violations of

15  other laws and treats them as independently actionable.  Farmers Insurance Exchange v. Superior

16  Court, 2 Cal.4th 377, 383 (1992).  Violations of the Insurance Code will serve as a basis for finding

17  an "unlawful" practice.  Daun v. USAA Cas. Ins. Co., 125 Cal.App.4th 599, 605 (Cal. Ct. App.

18  2005).  Additionally, plaintiffs may bring an action under the UCL, even when a challenged practice

19  is not unlawful, on the ground that the practice is "unfair" or "fraudulent."  Cel-Tech

20  Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163, 184 (Cal. 1999).  In

21  the present case, plaintiffs purport to bring their UCL claim under the "unlawful" and "fraudulent"

22  prongs. (Memo. ISO Motion at 15.)  Plaintiffs base their "unlawful" claim on the ground that

23  Allianz violated Insurance Code sections 10127.10 and 10127.13 by failing to provide adequate

24  notice of the annuities' terms.  Id.  Plaintiffs base their "fraudulent" claim on the ground that

25  Allianz's deceptive terminology was misleading.  Id.

26

27          [6]Insurance Code § 10127.10(c) requires insurers selling annuities to senior citizens in
    California to place a notice regarding surrender penalties in 12-point bold print on the cover page or
28  policy jacket of the annuity.  Insurance Code § 10127.13 also requires insurers to set forth the
    surrender penalties and surrender period on the cover or, alternatively, to disclose on the cover or
    policy jacket the location of that information within the contract.

1        Allianz focuses its opposition to certification of the UCL claim on the contention that

2   Proposition 64 amended the UCL to require a showing of harm in fact and causation, elements that

3   would require consideration of individualized evidence. (Opp. at 18-20.) In late 2004, Proposition

4   64 amended the UCL to require, as a prerequisite, that the person bringing suit under the UCL has

5   suffered actual injury in fact that resulted from the alleged unfair competition or false advertising:

6        Actions for any relief pursuant to this chapter shall be prosecuted exclusively in a
           court of competent jurisdiction by any person who has suffered injury in fact and has

7        lost money or property as a result of such unfair competition. UCL § 17204.

8   This amendment imposed an actual reliance requirement on UCL claims arising from fraudulent

9   business practices or statements. <u>Pfizer Inc. v. Superior Court</u>, --- Cal.Rptr.3d ----, 2006 WL

10   1892581, *9 (Cal. Ct. App. 2006)("Inherent in Proposition 64's requirement that a plaintiff

11   suffered 'injury in fact... as a result of' the fraudulent business practice or false advertising... is

12   that a plaintiff actually relied on the misrepresentation and as a result, was injured thereby."); <u>See</u>

13   <u>also</u> <u>In re Tobacco Cases II</u>, 2005 WL 579720 (Cal. Supr. Ct. 2005).

14        Plaintiffs have met their burden under Rule 23(b)3. As plaintiffs point out, the evidence

15   necessary to support this UCL claim will be common throughout the proposed class. All the class

16   members were residents of California over the age of 65 and were, consequently, eligible for the

17   protection provided by Insurance Code 10127.10 and 10127.13. Plaintiffs can prove that Allianz

18   violated these Insurance Code sections by examining the six form contracts challenged in this

19   case. After Proposition 64, plaintiffs' claim under the "fraudulent" prong of the UCL raises the

20   issue of causation, an issue that potentially lends itself to individualized proof. However, as

21   discussed above, the uniformity of written statements received by plaintiffs allows them to prove

22   reliance through class-wide evidence. <u>See</u> <u>Vasquez v. Superior Court</u>, 4 Cal.3d at 814-15.

23        III.    Breach of Contract Claims

24        In support of their breach of contract claims, plaintiffs rehash the charges made in support

25   of their fraud claims, contending that Allianz: [1] issued contracts that do not provide adequate

26   notice of the contracts terms as required by Insurance Code §§ 10127.10(c) and 10127.13, [2]

27   used the terms "bonus" and "value" in misleading ways, [3] represented that a specific percentage

28   bonus would immediately be credited to the policy holders' account without explaining that the

   any such advantage would be substantially lost if the annuity was held for the lengthy period

06cv633

1  required by Allianz [4] utilized policy provisions that failed to list the bonus as surrender charge

2  when it was and [5] hid the application of surrender penalty in case of death.  (TAC ¶ 43.)

3      Plaintiffs' contract claims are not entirely clear.[7]      The Court construes plaintiffs'

4  complaint as seeking declaratory judgment that certain forfeiture provisions in plaintiffs' annuity

5  contracts with Allianz are unenforceable.  Based on the facts alleged, declaratory judgement of

6  unenforceability appears to be the most likely claim.  Moreover, plaintiffs' description of their

7  claim seems most consistent with declaratory judgment.  (Reply at 4.)("If Allianz has breached its

8  contract with the class members by applying unenforceable terms - whether those terms are

9  unenforceable by virtue of being violative of the insurance statutes or by not complying with

10  California's contract rules on penalties, forfeitures, etc.... the terms simply cannot be enforced.")

11      In a claim for declaratory judgment, common elements would predominate.  The evidence

12  presented in each plaintiff's claim would be similar: [1] evidence that Allianz did not provide

13  proper notice of the annuities' surrender penalties as required by the Insurance Code and

14  [2]evidence that the six challenged annuity contracts had surrender penalties provisions.

15  Additionally, "controversies involving widely used contracts of adhesion," such as the ones

16  present in this case, are "ideal cases for class adjudication, the contracts are uniform, the same

17  principles of interpretation apply to each contract, and all members of the class will share a

18  common interest in the interpretation of an agreement to which each is a party." La Sala v. Amer.

19  Sav. & Loan Assn., 5 Cal.3d 864, 876 (1991).

20  //

21  //

22  //

23  //

24  //

25

---

26  [7]As defendants point out,  plaintiffs may not have  valid contract claims.  However, the Court will assume, *arguendo*, that plaintiffs have valid contract claims for the sake of the Court's certification analysis. Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 177-8 (1974)("We find nothing

27  in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.

28  Indeed, such a procedure contravenes the Rule by allowing a representative plaintiff to secure the benefits of a class action without first satisfying the requirements for it.")

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** plaintiffs' motion for certification.

**IT IS SO ORDERED**.

Dated: *July 25, 2006*

_____
**HON. IRMA E. GONZALEZ, Chief Judge**
United States District Court
Southern District of California

cc:      Magistrate Judge Bencivengo
         All Parties of Record

06cv633