1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

11

12

13

14

15

16

17

| | |
|---|---|
| ANTHONY IORIO, MAX FREIFIELD, RUTH SCHEFFER, on behalf of themselves and all other similarly situated,<br><br>Plaintiffs,<br>vs.<br><br>ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA,<br><br>Defendant. | CASE NO. 05 CV 633 JLS (CAB)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DECERTIFY PUNITIVE DAMAGES CLASS CLAIM**<br><br>(Doc. No. 343) |

18

19

20

21

22

23

24

25

26

27

28

Presently before the Court is Defendant's motion to decertify punitive damages class claim. (Doc. No. 343.)  On July 26, 2006, the Court granted class certification, including the punitive damages claim which sought "[p]unitive damages in an amount appropriate to punish or set an example" of [Defendant], and  "[t]rebling of punitive damages . . . pursuant to Civil Code section 3345." (TAC Prayer for Relief.)  Citing United States Supreme Court and Ninth Circuit case law, Defendant now argues that class certification of the punitive damages claim violates the Due Process Clause of the United States Constitution.  For the reasons stated below, the Court disagrees and **DENIES** Defendant's motion to decertify the punitive damages class claim.

**BACKGROUND**

This case arises out of Allianz Life Insurance Company of North America's ("Defendant") sale of deferred annuities to senior citizens throughout California.  Plaintiffs allege that they were

- 1 -

05 cv 633

1  misled into purchasing the annuities at issue, and assert five causes of action: (1) fraud, (2) breach

2  of contract, (3) breach of the implied covenant of good faith and fair dealing, (4) declaratory relief,

3  and (5) violations of California's Unfair Competition Law, Bus. & Prof. Code § 17200 *et seq*.

4         On July 26, 2006, Chief Judge Gonzalez granted Plaintiffs' motion to certify the class,

5  including the claim for punitive damages.  (Doc. No. 133.)  On December 12, 2006, Chief Judge

6  Gonzalez approved the class notice.  (Doc. No. 136.)  The notice was sent to 10,071 class

7  members, with all but 189 members receiving the notice, and only 211 class members opting out.

8  (Opp. to Mot. at 7.)

9         On October 31, 2007, Defendant filed a motion to decertify the class.  (Doc. No. 204.)

10  After the motion was fully briefed and oral argument heard, the Court denied class decertification

11  on July 8. 2009.  (Doc. No. 238.)

12        Defendant filed the present motion to decertify the class on the punitive damages claim on

13  August 24, 2009.  (Doc. No. 343.)  Plaintiffs filed their response in opposition to the motion on

14  September 24, 2009.  (Doc. No. 347.)  Defendant filed its reply on October 8, 2009.  Oral

15  argument has been set on the motion for October 29, 2009.  The hearing date is hereby vacated and

16  the motion is taken under submission by the Court without oral argument pursuant to Local Rule

17  7.1(d).

18                              **LEGAL STANDARD**

19        A district court's order respecting class certification is "inherently tentative" prior to final

20  judgment on the merits. *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 633 (9th Cir.

21  1982); *see also* Fed. R. Civ. P. 23(c)(1)(C).  If the Court later determines that class certification

22  was not properly granted, the Court should modify or decertify the class. *See Gen. Tel. Co. of Sw.*

23  *v. Falcon*, 457 U.S. 147, 160 (1982).  The decision to decertify lies within the district court's

24  sound discretion. *Knight v. Kenai Peninsula Borough Sch. Dist.*, 131 F.3d 807, 816 (9th Cir.

25  1997).

26        Rule 23(a) requires the party moving for class certification to establish that: "(1) the class

27  is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact

28  common to the class; (3) the claims or defenses of the representative parties are typical of the

1   claims or defenses of the class; and (4) the representative parties will fairly and adequately protect

2   the interest of the class." Fed. R. Civ. P. 23(a).  In addition, the party seeking class certification

3   must establish that one requirement of Rule 23(b) is satisfied.

4          A party moving for class decertification bears the burden of demonstrating that class

5   certification was not properly granted under Rule 23.  *Gonzales v. Arrow Fin. Servs. LLC*, 489 F.

6   Supp. 2d 1140, 1153 (S.D. Cal. 2007); *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 651 (C.D. Cal.

7   2000).  Thus, the moving party must demonstrate that the four requirements of Rule 23(a) and at

8   least one requirement of Rule 23(b) has not been met.  *Id.*

9                                        **DISCUSSION**

10         Defendant asserts that class certification of the punitive damages claim is not appropriate

11  in this case for three reasons, all based on Due Process: (1) "the Supreme Court made clear that

12  punitive damages cannot be awarded on a 'representative' basis to 'other victims'"; (2) "a punitive

13  damages class cannot proceed untethered to an examination of proportionality as to each

14  individual's compensatory damages"; and (3) "the trial proposed ... effectively denies [Defendant]

15  its right to present 'every available defense' to the punitive damages demand . . . [which is]

16  insufficient to satisfy the higher burdens of proof required by the Due Process Clause and

17  California law to establish entitlement to punitive damages."  (Mem. ISO Mot. at 1-2.)  The Court

18  does not find these arguments persuasive.

19  **I.     Relevant Case Law**

20         Before discussing Defendant's arguments, a general overview of the case law is warranted.

21  "The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly

22  excessive or arbitrary punishments on a tortfeasor." *State Farm Mutual Automobile Insurance Co.*

23  *v. Campbell*, 538 U.S. 408, 416 (2003).  Further, the punishment must be "both reasonable and

24  proportionate to the amount of harm to the plaintiff and to the general damages recovered." *Id.* at

25  426.  *Campbell*, which was not a class action suit, involved a nationwide insurer's "scheme" to

26  reduce costs and increase profits by limiting payments on claims.  *Id.* at 414-16.  The trial court

27  held that a $145 million award by the jury was acceptable punishment, but the Supreme Court

28  reversed this punitive award.  *Id.* at 422.  The Supreme Court held that the state court erred in

1    focusing on conduct which did not directly "demonstrate[] the deliberateness and culpability of the

2    defendant's action in the State where it is tortious." *Id.*  The state court focused on out-of-state

3    conduct by the defendant, which the Court found did not have a sufficient "nexus to the specific

4    harm suffered by the plaintiff." *Id.*  Thus, the Court found that the punitive award violated due

5    process. *Id.* at 422-23.

6         In *Philip Morris USA v. Williams*, the Supreme Court further clarified the relationship

7    between punitive damages and due process, though also outside the class action context.  549 U.S.

8    346 (2007).  The *Williams* Court found that a $79.5 million punitive damages award to a widow of

9    a smoker violated due process because the jury was motivated by its desire to punish the defendant

10   for harm caused to non-parties. *Id.* at  349-51.  In *Williams*, the Court explicitly held that "a jury

11   may not punish for the harm caused others." *Id.* at 356-57.  In other words, "the Constitution's

12   Due Process Clause forbids a State to use a punitive damages award to punish a defendant for

13   injury that inflicts upon those who are, essentially, strangers to the litigation." *Id.* at 353.  More

14   specifically, "the Due Process Clause prohibits a State from punishing an individual without first

15   providing that invidual with 'an opportunity to present every available defense.'" *Id.* (citing

16   *Lindsey v. Normet*, 405 U.S. 56, 66 (1972)).

17        Unlike the present case, these two Supreme Court cases were not class action suits.  The

18   Ninth Circuit, however, has attempted to address the issue of when punitive damages may be class

19   certified in its multiple *Dukes v. Wal-Mart, Inc.* decisions.  A three-judge panel of the Ninth

20   Circuit first addressed the issue in its now-abrogated February 6, 2007 decision in *Dukes v. Wal-*

21   *Mart, Inc.*, 474 F.3d 1214 (9th Cir. 2007) (*Dukes I*).  In *Dukes I*, Wal-Mart argued that

22   individualized hearings on the issue of punitive damages are necessary to preserve due process

23   rights, relying on *Campbell,* "because [the court] might punish legal conduct and award damages

24   to non-victims." *Dukes I*, 474 F.3d at 1241-42.  The panel disagreed, finding that *Campbell* is

25   "readily distinguishable" from the present case because it "involved an action brought on behalf of

26   *one* individual under *state* law." *Id.* at 1242.  The panel also found that the district court had

27   taken, and would continue to take, steps necessary to ensure that the damages award complied

28   with due process. *Id.*   Thus, the panel found that individualized hearings were not required and

1  that statistical computation of damages was sufficient.  *Id.*

2      *Dukes I* was withdrawn on December 11, 2007 and replaced with a superceding opinion.

3  509 F.3d 1168 (9th Cir. 2007) (*Dukes II*).  In *Dukes II,* the court did not address *Campbell* and the

4  specific issue of due process and punitive damages class claims.  Instead, the court stated:

5          At this pre-merit stage, we express no opinion regarding Wal-Mart's objections to the
           district court's tentative trial plan (or that trial plan itself), but simply note that, because
6          there are a range of possibilities – which may or may not include the district court's
           proposed course of action – that would allow this class action to proceed in a manner that
7          is both manageable and in accordance with due process, manageability concerns present no
           bar to class certification here.
8
   *Id.* at 1190-91.
9
       The decision in *Dukes II*, however, was also abrogated on February 13, 2009 when the
10
   Ninth Circuit ordered that an appeal be heard *en banc*.  *Dukes v. Wal-Mart, Inc.*, 556 F.3d 919,
11
   919 (9th Cir. 2009).  Oral argument was heard before the Ninth Circuit on March 24, 2009 and is
12
   currently awaiting disposition.  Defendant in the present case claims that "[t]he abrogation of the
13
   *Dukes II* opinion leaves a void in the Ninth Circuit's post-*Campell*, post-*Williams* caselaw
14
   regarding the circumstances, if any, under which a punitive damages class claim may be certified
15
   under Rule 23."  (Mem. ISO Mot. at 9.)  The Court does not disagree.  However, merely leaving a
16
   void in the Ninth Circuit precedent does not greatly affect this Court.  That is because, at bottom, a
17
   final decision regarding the effect of *Campbell* and *Williams* on class punitive damages claims has
18
   not yet been rendered by the Supreme Court or the Ninth Circuit, the precedent by which this
19
   Court is bound.  Thus, the Court must look at the case law and facts before it and decide the issue
20
   as the law dictates.  The Court has done so, and hereby holds that due process is not violated by
21
   the class certification of the punitive damages claim in this action and denies Defendant's motion
22
   to decertify the class punitive damages claim.  The Court will address each of Defendant's
23
   arguments below.
24
   **II.      Punitive Damages Cannot Be Awarded on a "Representative Basis"**
25
       Defendant's first argument is that, under *Williams*, punitive damages cannot be awarded on
26
   a "representative" basis.  (Mem. ISO Mot. at 9 (citing *Williams*, 549 U.S. at 353 (finding that a
27
   State cannot "use a punitive damages award to punish a defendant for injury that it inflicts upon
28
   nonparties or those whom they directly represent, *i.e.*, injury that is inflict upon those who are,

1   essentially, strangers to the litigation").)  Defendant begins by citing various case law which

2   defines a class action and the role the representative plays in relation to the other unnamed class

3   members.  Defendant then concludes that, "[b]ecause [the non-representative] class members play

4   no active role in the lawsuit, absent class members are 'legal strangers' to each other, and to the

5   litigation."  (Mem. ISO Mot. at 10 (citations omitted).)  Thus, Defendant argues that punitive

6   damages cannot be awarded based on injury inflicted on the non-representative parties, as reflected

7   by the testimony of the representatives.   Specifically, Defendant argues that the representatives'

8   testimony is not sufficient because Plaintiffs "will not attempt to prove or discuss each class

9   member's circumstances, experiences, and alleged injuries."  (*Id.*)

10          Plaintiffs respond to this argument by contending that punitive damages are not awarded in

11   this class action based on facts unique to individual class members which would require

12   individualized hearings, but rather will be based on Defendant's reprehensible misconduct and the

13   common issues of law and fact.  Further, Plaintiffs argue that the class members are not "strangers

14   in the litigation" because, unlike in *Williams*, all class members are considered parties to the

15   litigation.

16          Plaintiffs first assert that "the most important indicium of the reasonableness of a punitive

17   damages award is the degree of reprehensibility of the defendant's conduct."  (Opp. to Mot. at 3

18   (quoting *Campbell*, 538 U.S. 408, 419 (2003) (citations omitted).)  Thus, Plaintiffs argue that the

19   punitive damages award will be based on the reprehensible misconduct of Defendant, not on facts

20   unique to the individual.  Without going into both parties' arguments regarding the applicable

21   factors used to assess the degree of reprehensibility, the Court finds that this argument is not

22   controlling.  Whereas the degree of reprehensibility may be the most important factor according to

23   the *Campbell* Court, it is not the sole factor.  Thus, this argument alone does not discredit

24   Defendant's due process argument.  However, Plaintiffs' remaining arguments – that the damages

25   will be awarded based on common issues of law and fact and the fact that all class members are

26   parties to the litigation – are persuasive.  The Court will first address the latter argument.

27          In *Williams*, the Supreme Court found that the due process clause does not permit a jury to

28   base a punitive damages award in part on punishing a defendant for harm caused to victims whom

1  the parties do not represent – victims who are not before the court, or nonparties.  *Williams,* 549

2  U.S. at 349, 353.  In the present case, however, the non-representative class members who

3  received notice and did not opt out *are* parties to the litigation.[1]  Even though they may be absent

4  from trial, any punitive damages will be awarded based on the harm done to those members, not to

5  strangers or those whose interests are not before the court.  This is illustrated by the requirement

6  that class counsel is bound to represent all class members' interests, not just those of the

7  representatives.  Rule 23(g)(4).

8       The Rule 23 requirements that must be met in order for the Court to certify the class also

9  illustrate that punitive damages will be awarded based on the injury inflicted upon all class

10  members, not individual class members.  Rule 23 requires in part that the Court find that the

11  questions of law and fact are common to all members, that the claims of the representative parties

12  are typical of the claims of the class, and that the representative parties will protect the interests of

13  the class as a whole.  *See* Rule 23(a).  In its Order dated July 26, 2006, the Court found that all

14  such requirements had been satisfied when it certified the class.  (Doc. No. 113.)  Further, the

15  Court ruled that "the questions of law or fact common to class members predominate over any

16  questions affecting only individual members, and that a class action is superior to other available

17  methods for fairly and efficiently adjudicating the controversy."  (*Id.*; *see also* Rule 23(b)(3).)

18  Also illustrative that the injury alleged was inflicted on all class members and not just the

19  representatives is this Court's Order denying decertification, which found "sufficient evidence that

20  (1) all class members received the same misrepresentation" and that, by purchasing the annuities

21  based on the misrepresentations, each member is presumed to have relied on them.  (Doc. No.

22  238.)

23       Accordingly, Defendant's argument that individualized hearings regarding the extent of

24  injury and the circumstances surrounding the injury are necessary to satisfy due process is not

25  persuasive.  Punitive damages award will be based largely on the misconduct of the Defendant.

26  Further, even though *Williams* suggests that the Defendant should have the opportunity to present

27

28       [1] Furthermore, Defendant has treated the non-representative class members as parties, as it has conducted discovery of 10 unnamed class members.  (Opp. to Mot. at 7.)

1    the defenses of reliance and knowledge for each member (*see* Reply to Opp. at 7), this Court has

2    already found that such individual examination is not necessary because every class member

3    received the same alleged misrepresentation and relied on those misrepresentations.  (Doc. No.

4    238.)  Most importantly, however, any damages awarded are necessarily based on punishing the

5    Defendant for harm caused to parties in the litigation, not to strangers not before the court, and the

6    punitive damages award will be going to those parties who were injured by Defendants' conduct..

7    Accordingly, Defendant's first argument fails.

8    **III.     Punitive Damages Cannot Proceed Untethered to Examination of Proportionality as**

9    **to Each Class Member's Compensatory Damages**

10           Defendant's next argument is that "[t]he proportionality of a class-wide punitive damages

11   award may not be assessed by comparing it to a class-wide award of punitive damages.  A

12   constitutional punitive damages award demands an examination of proportionality as to each

13   individual class member's compensatory damages."  (Mem. ISO Mot. at 11.)  In support of this

14   proposition, Defendant cites *Williams* and *Campbell*, which hold that there must be a nexus

15   between the punitive damages and the harm to the plaintiff, *Williams*, 549 U.S. at 354, and that

16   "[c]ourts must ensure that the measure of punishment is both reasonable and proportionate to the

17   amount of harm to the plaintiff and to the general damages recovered." *Campbell*, 538 U.S. at

18   422, 426.  Defendant then contends that "[a]bsent individual hearings for each class member, the

19   jury cannot calibrate a suitable punitive damages award vis-a-vis the class member's

20   compensatory damages."[2]  (Mem. ISO Mot. at 12.).

21           The Court disagrees.  The Court has already found that the computation of damages for

22   each plaintiff in this case is manageable in its July 8, 2008 Order denying decertification.  (Doc.

23   No. 238.)  In its opposition to the motion, Plaintiffs set forth how the compensatory damages will

24

25           [2] In its Reply, Defendant reiterates that "a class-wide multiplier would give all class members
     an equal proportion of punitive damages based solely on [Defendant's] conduct, even though – based
26   on their varying actual and potential harms – some class members otherwise might be entitled to a
     smaller ratio than the class-wide multiplier, while others otherwise might be entitled to a larger ratio."
27   (Reply to Opp. at 6.)  First, the ratio may be different given the compensatory damages awarded each
     class group.  Further, the actual harms for each group are largely the same, as they are economic in
28   nature depending on the class group.  As for the potential harm, as explained above, the potential harm
     may be assessed as a whole.

05 cv 633

1   be calculated depending on the group in the class where each member falls.[3]  (*See* Opp. to Mot. at

2   12-13.)  After compensatory damages have been assessed, a ratio between punitive and

3   compensatory damages can be calculated based on the factors set forth in *Campbell*.

4   　　　　*Campbell* teaches that "few awards exceeding a single-digit ratio between punitive and

5   compensatory damages . . . will satisfy due process."  538 U.S. at 425.  One such situation where a

6   single-digit ratio may be inadequate is when compensatory damages are significantly low or

7   significantly high.  *Id.*  However, the "precise award in any case . . . must be based upon the facts

8   and circumstances of the defendant's conduct and the harm to plaintiff."  *Id.*   Specifically, the

9   ratio may be guided by the "disparity between actual or potential harm suffered by the plaintiff and

10  the punitive damages award."  *Id.* at 418 (quoting *BMW of N. Amer., Inc. v. Gore*, 517 U.S. 559,

11  581-82 (1996)).  In *Gore*, the Supreme Court stated that the proper inquiry in determining punitive

12  damages is "whether there is a reasonable relationship between the punitive damages award and

13  the *harm likely to result from the defendant's conduct* as well as the harm that actually has

14  occurred."  517 U.S. at 581-82 (emphasis added); *see also TXO Prod. Corp. v. Alliance Res.*

15  *Corp.*, 509 U.S. 443 (1993) (finding that "[i]t is appropriate to consider the magnitude of the

16  potential harm that the *defendant's conduct* would have caused to its intended victim if the

17  wrongful plan had suceeded. . ." (emphases altered)); Opp. to Mot. at 10-12 (citing various other

18  cases suggesting the same).

19  　　　　Accordingly, as the above case law indicates, the ratio between compensatory damages and

20  punitive damages is not determined by a bright-line rule.  Rather, the jury must investigate the

21  relationship between the award and the harm that actually occurred or could have potentially

22  occurred or if the compensatory damages are substantially high or low, and determine the proper

23  ratio along these "guideposts."  These inquiries, however, do not require individualized

24  determinations based on each class member.  Instead, as *Gore* and *Campbell* indicate, the base is

25  the amount of compensatory damages awarded, which is readily determined by class group, and the

26  harm that was or could have been caused by the Defendant's conduct.  Defendant's conduct (i.e. the

27

28  　　　　[3]  The three groups are: (1) those who surrendered their policies; (2) those who are active policyholders who are not yet receiving annuity payments; and (3) those now receiving annuity payments.  (Opp. to Mot. at 12.)

1   misrepresentations regarding the annuities plan), however, did not change depending on the class

2   member, as the Court found that all misrepresentations were substantially the same.[4]  (*See* Doc. No.

3   238 at 40.)  A jury can assess the harm that could have been caused by these misrepresentations as a

4   whole based on the Defendant's misconduct irrespective of the individual circumstances

5   surrounding the class members, as they are all, at bottom, elderly persons who relied on

6   misrepresentations regarding the bonus that was allegedly part of the offered annuity plan. (*Id.*)

7   Therefore, the appropriate ratio can be determined by the jury without violating due process as set

8   forth in *Campbell* and *Williams*.

9        Moreover, class action decisions regarding the ratio for punitive damages may be limited by

10   the Court based on due process concerns, if necessary.  In *In re Exxon Valdez*, a jury awarded a

11   punitive damages verdict of $5 billion against Exxon, but the Ninth Circuit reduced the judgment to

12   $2.5 billion.  490 F.3d 1066 (9th Cir. 2007).  The judgment was further reduced by the Supreme

13   Court to comply with a 1-to-1 ratio.  *Exxon Shipping Co. v. Baker*, 128 S.Ct. 2605 (2008).  This

14   shows that courts have the ability to modify class action punitive damages awards as necessary to

15   comply with the constitutional limitations regarding the ratio between compensatory and punitive

16   damages.[5]  The Court in the instant case, if necessary, will do the same.  At this point in the

17   litigation, however, the trial proposed is manageable and satisfies due process.  Thus, Defendant's

18   second argument fails.

19   **IV.     The Trial Proposed Will Unconstitutionally Preclude Defendant From Asserting**

20   **Individual Defenses to Class Members' Punitive Damages Claims**

21        Defendant's final argument is largely intertwined with its first regarding "strangers to the

22

23   [4] In its July 2008 Order denying decertification, the Court found that "[w]hether the brochure says that the bonus is 'immediate' or 'upfront' or that the purchaser will 'earn' a bonus upon the deposit of premiums, the effect is the same – a misrepresentation to all class members regarding a

24   bonus that could not be collected for at least fifteen years."  (Doc. No. 238 at 40.)

25   [5] Plaintiffs attempt to cite *Exxon Shipping Co.* as illustrating that punitive damage awards in a class action are appropriate. (Opp. to Mot. at 13.)  Defendant counters this by pointing to the fact

26   that, in *Exxon Shipping*, the defendant consented to the use of a class action for the damages claim. (Mem. ISO Mot. at 11 n.2; Reply to Opp. at 8 n.4).  In the present case, there was no such consent.

27   Accordingly, the Court does not address whether *Exxon Shipping Co.* speaks to whether the Supreme Court has approved class action punitive damages claims.  Instead, the present Court cites *Exxon*

28   *Shipping Co.* only as support for the proposition that a court has authority to modify a punitive damages claim as necessary to comply with constitutional limitations.

1  litigation," but more specifically states that Defendant should have the right to present an individual

2  defense against each class member to rebut their reliance and knowledge.  (Mem. ISO Mot. at 13-

3  14 (citing *Williams*, 549 U.S. at 353).)  In the Court's July 2008 Order denying decertification of

4  the class, the Court found that the reliance by the representative parties on the alleged

5  misrepresentations by Defendant supported a presumption of reliance by the other non-

6  representative class members who purchased the annuities based on the same misrepresentations.

7  (Doc. No. 238 at 41-45 (citing California state law).)  As already stated above in discussing

8  Defendant's first argument, the Court has consistently found that all class members were presented

9  with the same alleged misrepresentations, and by purchasing the annuities, reliance on said

10  misrepresentation is properly presumed.  (*Id.*; *see also* supra page 7.)  Defendant argues that the

11  Court's reliance on this state law evidentiary inference cannot override Defendant's due process

12  rights.  Of course, the Court agrees that constitutional rights overrule state law inferences.  The

13  Court, however, does not agree that finding each member relied on the misrepresentations when it

14  purchased the annuities violates Defendant's due process rights as set forth in *Campbell* and

15  *Williams*.

16       Specifically, this Court has already found that Defendant's inability to "raise individualized

17  defenses for each annuity sale" did not violate due process.  The Court found that "[i]n light of the

18  uniform written misrepresentations and the well-established presumption of reliance created by

19  California law, the Court finds [the due process] argument to lack merit."  (Doc. No. 238 at 47.)

20  Defendants cite no new case law to undermine these original findings.  The Ninth Circuit,

21  regardless of its attempts to do so, has not clarified the issue on when *Campbell* and *Williams* apply

22  to class actions.  And, without any guidance other than the law before it, the Court does not

23  presently find that the due process rights set forth in the non-class action cases of *Campbell* and

24  *Williams* affect the current class punitive damages claims.  Accordingly, though Defendants

25  originally brought this matter before the Court on the false assertion at oral argument that new

26  Ninth Circuit law has been produced, prompting the Court to allow the present motion to be filed,

27  this is simply not the case.  The Court, therefore, declines to turn class actions suits regarding

28  punitive damages on its head without further guidance by the Supreme Court or the Ninth Circuit.

1

**CONCLUSION**

2          For the above stated reasons, the Court finds that class certification of the punitive damages

3   claim in the above action does not violate Defendant's due process rights under the current state of

4   the law.  Thus, the Court **DENIES** Defendant's motion to decertify the class punitive damages

5   claim.

6

7   **IT IS SO ORDERED.**

8

9   DATED:  October 21, 2009

10                                                          _____
                                                            Honorable Janis L. Sammartino
11                                                          United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

05 cv 633