1  **PILLSBURY WINTHROP SHAW PITTMAN LLP**
2  Daniel G. Lamb, Esq., State Bar No. 101685
   Brian D. Martin, Esq., State Bar No. 199255
3  501 West Broadway, Suite 1100
   San Diego, California  92101-3575
4  Telephone:    (619) 234-5000

5  **JORDEN BURT LLP**
6  James F. Jorden, Esq., *Pro Hac Vice*
   Raul A. Cuervo, Esq., *Pro Hac Vice*
7  Denise A. Fee, Esq., *Pro Hac Vice*
   Jefferson Court, Suite 400 East
8  1025 Thomas Jefferson Street, N.W.
   Washington, D.C.  20007-5208
9  Telephone:    (202) 965-8100

10
11 **JORDEN BURT LLP**
   Jeffrey L. Williams, Esq., *Pro Hac Vice*
12 175 Forest Drive, Suite 301
   Simsbury, Connecticut 06089-9658
13 Telephone:    (860) 392-5000

14 *Attorneys for Defendant Allianz Life*
   *Insurance Company of North America*
15

16              **UNITED STATES DISTRICT COURT**
               **SOUTHERN DISTRICT OF CALIFORNIA**
17

18 ANTHONY J. IORIO, MAX FREIFIELD,       :   CASE NO.:  05 CV 0633 JLS (CAB)
   RUTH SCHEFFER, on behalf of themselves :
19 and all others similarly situated,     :   [CIVIL ACTION]
                                          :
20               Plaintiffs,              :   **DEFENDANT ALLIANZ LIFE INSURANCE**
                                          :   **COMPANY OF NORTH AMERICA'S TRIAL**
21 v.                                     :   **BRIEF**
                                          :
22 ALLIANZ LIFE INSURANCE COMPANY         :
   OF NORTH AMERICA,                      :   **Final Pretrial Conference**
23                                        :   Date:  March 11, 2010
                 Defendant.              :   Time:  1:30 p.m.
24                                        :   Place:  Courtroom 6
                                          :
25                                        :
                                          :   **Trial**
26                                        :   Date:  March 29, 2010
                                          :   Time:  9:00 a.m.
27 _____    :   Place:  Courtroom 6

28

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ..................................................................................................1

II.    PROCEDURAL BACKGROUND ........................................................................1

    A.    The Class Action Complaint. ....................................................................1

    B.    The Court's Orders Clarifying The Class And Its Claims. .........................2

III.   FACTUAL BACKGROUND ................................................................................5

    A.    Allianz Bonus Deferred Annuities. ...........................................................5

    B.    The Allianz Policy Forms Were Accepted For Filing By The California Department Of Insurance. .........................................................................6

    C.    The Senior Notice Disclosures .................................................................8

    D.    The Sales Agents And Presentations. ........................................................9

    E.    The Sales Materials. ................................................................................10

    F.    The Class Representatives' Annuity Purchases. .......................................11

    G.    The Agents' Testimony. ...........................................................................11

    H.    The Absent Class Members' Annuity Purchases. .....................................13

IV.   LEGAL STANDARDS AND BURDENS OF PROOF .......................................13

    A.    California Supplies The Governing Substantive Law. ..............................13

    B.    Plaintiffs Bear The Burden Of Proving Their Claims, And Entitlement To The Relief Requested, By A Preponderance Of The Evidence. ..................14

    C.    Plaintiffs Must Prove Entitlement To Punitive Damages By Clear And Convincing Evidence. ..............................................................................14

    D.    The Court Has A Continuing Duty To Ensure That Class Certification Is Proper. ....................................................................................................14

V.    LEGAL CAUSES OF ACTION .........................................................................15

    A.    Allianz Committed No Fraud. ..................................................................15

        1.    Describing The Premium Bonus As "Immediate" Is Not A Misrepresentation Of Fact. ..........................................................15

        2.    Allianz Did Not, And Does Not, "Undercut" The Bonus By Adjusting Yields, Applying The "Haircut," Or Otherwise. .............16

i

3. The "Recouping" Theory Fails The Essential Elements Of Fraud. ................18

4. The Evidence Will Not Show A Misrepresentation On Which Plaintiffs Justifiably Relied. .............................................................................21

5. A Reasonable Factfinder Cannot Draw An Inference Of Class-Wide Reliance. ..........................................................................................23

    a. Class Member Testimony Rebuts The Inference. ................................24

    b. Policyholder Behavior Rebuts The Inference. .....................................25

    c. Class Member-Agent Interaction Rebuts The Inference. ....................26

6. There Is No Injury Caused By A Misrepresentation. .........................................26

B. Allianz Fully Performed The Annuity Contracts. .....................................................27

1. A Breach Of Contract Claim Cannot Be Based On A Provision of Law That Is Not Within The Contract Itself. .....................................................28

2. Subsection 10127(b) Immunizes Allianz From Liability For Annuities In Effect On January 1, 2003. ....................................................30

3. Allianz Complied With The Senior Notice Statutes, So The Surrender Provisions Remain Enforceable. .....................................................31

4. The Senior Notice Statutes Should Not Be Interpreted To Forfeit Allianz's Contract Rights. ......................................................................33

5. A Supposed Violation Of The Senior Notice Statutes Did Not Cause Plaintiffs Any Injury. ................................................................................37

6. Class Members Who Have Not Incurred Surrender-Related Penalties Have No Breach Of Contract Claim. ..................................................38

C. Plaintiffs Cannot Prove Their Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing. .............................................................39

1. Without An Underlying Breach Of Contract, A Claim For Breach Of The Implied Covenants Is Not Viable. .........................................................39

2. Allianz Had Proper Cause To Enforce The Contract Provisions. ....................39

VI. EQUITABLE CAUSES OF ACTION. .....................................................................40

A. Plaintiffs Cannot Prove Their UCL "Fraudulent" Prong Claim. .................................40

1. There Is Nothing Misleading About The Bonus Deferred Annuities. ..............................................................................................40

2. The Alleged Misrepresentations Did Not Cause Plaintiffs Any Injury. ..................................................................................................42

ii

3.    The UCL Does Not Authorize Relief For Class Members Who Were Not Exposed To Allegedly Wrongful Business Practices.....................43

4.    Relief May Not Be Granted To Class Members Whose Claims Have Not Accrued Or Who Have Sustained No Injury.................................45

B.    Plaintiffs Cannot Prove Their UCL "Unlawful" Prong Claim. ...................47

C.    Plaintiffs Do Not Have A Claim Based On The UCL "Unfairness" Prong.................47

VII.    AFFIRMATIVE DEFENSES ..................................................................................49

A.    Statutes of Limitations. .................................................................................49

1.    Three-Year Period For Common Law Fraud Claims. ......................49

2.    Four-Year Period For Breach Of Contract Claims. .........................51

3.    Two- Or Four-Year Periods For Breach Of The Implied Covenant Of Good Faith And Fair Dealing Claims. .........................52

4.    Three-Year Period For Declaratory Relief. ....................................53

5.    Four-Year Period For UCL Claims...................................................55

a.    UCL "Fraudulent" Prong. .....................................................55

b.    UCL "Unlawful" Prong. ........................................................56

B.    Estoppel.........................................................................................................57

C.    Waiver...........................................................................................................58

D.    Mitigation Of Damages.................................................................................58

E.    Consent And Acceptance...............................................................................58

F.    Failure To Exercise Ordinary Care...............................................................59

G.    Comparative Fault.........................................................................................59

H.    Intervening Fault Or Cause...........................................................................59

VIII.    REMEDIES...........................................................................................................60

A.    Plaintiffs Cannot Prove They Are Entitled To Restitutionary Relief. .........60

1.    Neither The Bonus Nor Non-Guaranteed Policy Values Is Money Or Property That Was Once In Plaintiffs' Possession. ....................60

2.    If Plaintiffs Had Any Interest In Non-Guaranteed Contract Benefits, It Was A Non-Cognizable Expectancy Interest...............61

B.    Plaintiffs Are Not Entitled To Injunctive Relief...........................................62

CASE NO.:  05 CV 0633 JLS (CAB)

1.    Plaintiffs Are Not Entitled To An Injunction Compelling Allianz
      To Pay Them Money. .......................................................................62

2.    Plaintiffs Are Not Entitled To An Injunction Regulating Allianz's
      Annuity Sales And Marketing Practices. ...........................................63

C.    Plaintiffs Are Not Entitled To Declaratory Relief. .......................................64

1.    Declaratory Relief Is Unripe For Most Class Members. ..................64

2.    Declaratory Relief Is Moot As To Ms. Scheffer And Mr. Iorio. .....67

3.    Declaratory Relief Duplicates Plaintiffs' Other Legal And
      Equitable Claims, And Is Therefore Unnecessary. ...........................68

D.    Plaintiffs Did Not Plead, And Are Not Entitled To, Special Damages. ........70

E.    Plaintiffs May Not Recover Consequential Damages In Connection With
      Their Claim For Breach Of Contract. ...........................................................70

F.    Plaintiffs Are Not Entitled To Punitive Damages.........................................71

G.    Even If Punitive Damages Are Awarded, Such Damages Cannot
      Constitutionally Exceed The Amount Of Compensatory Damages
      Awarded. .......................................................................................................72

H.    Section 3345 Does Not Apply To UCL Restitutionary Awards....................74

IX.   CONCLUSION.........................................................................................................75

CASE NO.:  05 CV 0633 JLS (CAB)

1

## TABLE OF AUTHORITIES

2

**CASES**                                                                                        **Page(s)**

3

4

*1231 Euclid Homeowners Association v. State Farm Fire & Casualty Co.*,
　　135 Cal. App. 4th 1008 (2006) ............................................................................39

5

*Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227 (1937).............................................52

6

*Akkerman v. Mecta Corp.*, 152 Cal. App. 4th 1094 (2007)..............................................44

7

*Amchem Products Inc., v. Windsor*, 521 U.S. 591 (1997) ................................................46

8

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503 (1994) ...................70

9

*Archdale v. American International Specialty Lines Insurance Co.*,
　　154 Cal. App. 4th 449 (2007) .............................................................................53

10

*Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375 (2004)...............27

11

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ........................................................45

12

*Arya Group, Inc. v. Cher*, 77 Cal. App. 4th 610 (2000) .................................................34

13

*B&O Manufacturing., Inc. v. Home Depot USA, Inc.*, No. C 07-02864 JSW,
　　2007 WL 3232276 (N.D. Cal. Nov. 1, 2007) ......................................................69

14

15

*Bank of the West v. Superior Court,* 2 Cal. 4th 1254 (1992) ...........................................74

16

*Barnes v. American Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998) .......................................14

17

*Barton v. Alexander Hamilton Life Insurance Co. of America,*14
　　110 Cal. App. 4th 1640 (2003) .........................................................................14

18

*Basich v. Allstate Insurance Co.*, 87 Cal. App. 4th 1112 (2001)......................................72

19

*Beck v. State Farm Mutual Automobile Insurance Co.*, 54 Cal. App. 3d 347 (1976) .........14

20

*Bernhardt v. County of Los Angeles,* 279 F.3d 862 (9th Cir. 2002)...........................67, 68

21

*Bernson v. Browning-Ferris Industries of California, Inc.*, 7 Cal. 4th 926 (1994) ............55

22

*Berryman v. Merit Property Management*, 152 Cal. App. 4th 1544 (2007)......................41

23

*Bionghi v. Metropolitan Water District of South California*, 70 Cal. App. 4th 1358 (1999).............39

24

*Blair v. Shanahan*, 38 F.3d 1514 (9th Cir. 1994) .........................................................67

25

*Bova v. City of Medford*, 564 F.3d 1093 (9th Cir. 2009).........................................65, 66

26

*Brown v. Bank of America*, 457 F. Supp. 2d 82 (D. Mass. 2006)..............................38, 47

27

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002) ...................................................70

28

*Buck v. Am. Airlines, Inc.*, 476 F.3d 29 (1st Cir. 2007) ................................................52

*Buckland v. Threshold Enterprises*, 155 Cal. App. 4th 798 (2007)................................62

*Buller v. Sutter Health*, 160 Cal. App. 4th 981 (2008) ..........................................20, 21

*Burdick v. Union Security Insurance Co.*, No. CV 07-4028 ABC (JCx),
    2009 WL 4798873 (C.D. Cal. Dec. 9, 2009) ...........................................46, 66

*California Service Station & Automotive Repair Association v. American Home
    Assurance Co.*, 62 Cal. App. 4th 1166 (1998)................................................18, 19

*Cada v. Baxter Healthcare Corp.*, 920 F.2d 446 (7th Cir. 1990) ................................56

*Cal-Air Conditioning, Inc. v. Auburn Union School District*, 21 Cal. App. 4th 655 (1993)..............31

*California Shoppers, Inc. v. Royal Globe Insurance Co.*, 175 Cal. App. 3d 1 (1985) ......................39

*Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223 (2006) ...................................57

*In re Cantrell*, 329 F.3d 1119 (9th Cir. 2003) ...............................................................14

*Caro v. Proctor & Gamble*, 18 Cal. App. 4th 644 (1993) .........................................23, 25

*Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939 (S.D. Cal. 2007) ...............................64

*Celador International Ltd. v. The Walt Disney Co.*, 347 F. Supp. 2d 846 (C.D. Cal. 2004)..............69

*Cirzoveto v. AIG Annuity Insurance Co.*, 625 F. Supp. 2d 623 (W.D. Tenn. 2009) ..................19, 27

*Citizens of Humanity, LLC v. Costco Wholesale Corp.*, 171 Cal. App. 4th 1 (2009)........................62

*City Lincoln-Mercury Co. v. Lindsey*, 52 Cal. 2d 267 (1959) .........................................35

*Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966 (2009)..........................................43, 44, 45

*Cole v. Oroville Union High School District*, 228 F.3d 1092 (9th Cir. 2000)....................................68

*In re Conseco Insurance Co. Annuity Marketing & Sales Practices Litigation*,
    Nos. C-05-04726 RMW, C-06-00537 RMW, 2007 WL 486367 (N.D. Cal. Feb. 12,
    2007) ................................................................................................57

*Credit Managers Association of Southern California v. Kennesaw Life & Accident
    Insurance Company*, 809 F.2d 617 (9th Cir. 1987) ................................................29

*Cruz v. PacifiCare Health Systems, Inc.*, 30 Cal. 4th 303 (1995) ......................................74

*Daro v. Superior Court*, 151 Cal. App. 4th 1079 (2007).........................................38, 43, 47

*DeFeo v. Procter & Gamble Co.*, 831 F. Supp. 776 (N.D. Cal.1993)........................................65

*Edward Brown & Sons v. City & County of San Francisco*, 36 Cal. 2d 272 (1950).........................58

*Endres v. Wells Fargo Bank*, No. C 06-7019 PHJ, 2008 WL 344204
    (N.D. Cal. Feb. 6, 2008) ....................................................................57

*Erlich v. Menezes*, 21 Cal. 4th 543 (1999)....................................................70

*Exxon Shipping Co. v. Baker*, 128 S. Ct. 2605 (2008)..............................72, 73

*In re The Exxon Valdez*, 296 F. Supp. 2d 1071 (D. Alaska 2004) ....................73

*FCE Benefit Administrators, Inc. v. George Washington University*,
    209 F. Supp. 2d 232 (D.D.C. 2002) ................................................69

*Feitelberg v. Credit Suisse First Boston, LLC*, 134 Cal. App. 4th 997 (2005)....................75

*Felix v. Zlotoff*, 90 Cal. App. 3d 155 (1979)..............................34, 36, 37

*In re First Alliance Mortgage Co.*, 471 F.3d 977 (9th Cir. 2006) ....................60

*Fodor v. AOL Time Warner, Inc.*, 217 F. App'x 622 (9th Cir. 2007)....................51

*Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995) ....................40

*Galanty v. Paul Revere Life Insurance Co.*, 23 Cal. 4th 368 (2000)....................29, 30

*Gallardo v. DiCarlo*, 203 F. Supp. 2d 1160 (C.D. Cal. 2002)....................51

*General Motors Acceptance Corp. v. Kyle*, 54 Cal. 2d 101 (1960)....................35

*General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982)....................15

*Gonzales v. Concord Gardens Mobile Home Park, Ltd.*, 90 Cal. App. 3d 871 (1979) ....................34

*Gregurek v. United of Omaha Life Insurance Co.*, No. CV 05-6067-GHK (FMOx),
    2009 WL 4723137 (C.D. Cal. Nov. 10, 2009)....................25

*Guebara v. Allstate Insurance Co.*, 237 F.3d 987 (9th Cir. 2001)....................39

*Guerrero v. Gates*, 442 F.3d 697 (9th Cir. 2006) ....................56

*Gutierrez v. Mofid*, 39 Cal. 3d 892 (1985)....................54, 55

*Hackethal v. National Casualty Co.*, 189 Cal. App. 3d 1102 (1987) ....................22

*Hadland v. NN Investors Life Insurance Co.*, 24 Cal. App. 4th 1578 (1994)....................22

*Haley v. Casa del Rey Homeowners Association*, 153 Cal. App. 4th 863 (2007) ....................37

*Harris v. Itzhaki*, 183 F.3d 1043 (9th Cir. 1999) ....................67

*Haskell v. Time, Inc.*, 965 F. Supp. 1398 (E.D. Cal. 1997) ....................40

*Headwaters v. Bureau of Land Management*, 893 F.2d 1012 (9th Cir. 1989) ....................67, 68

*Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999)....................63, 64

vii

*Homestead Supplies, Inc. v. Executive Life Insurance Co.*, 81 Cal. App. 3d 978 (1978).............34, 35

*In re Hotel Telephone Charges*, 500 F.2d 86 (9th Cir. 1974)................................................46

*Howard Jarvis Taxpayers Association v. City of La Habra*, 25 Cal. 4th 809 (2001).........................57

*Hydranautics v. FilmTec Corp.*, 306 F. Supp. 2d 958 (S.D. Cal. 2003).....................................49

*In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305 (3d Cir. 2008)...............................47

*J.C. v. Los Angeles Unified Sch. Dist.*, 139 Cal. App. 4th 499 (2006) ...................................50

*Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103 (1988) .......................................................49

*Jones Intercable of San Diego, Inc. v. City of Chula Vista*, 80 F.3d 320 (9th Cir. 1996) .................67

*Kahn v. East Side Union High School District*, 31 Cal. 4th 990 (2003)....................................59

*Kaldenbach v. Mutual of Omaha Life Insurance Co.*, 178 Cal. App. 4th 830 (2009).........................44

*Kane v. Hartford Accident & Indemnity Co.*, 98 Cal. App. 3d 350 (1979) .................................59

*Karl Storz Endoscopy-America, Inc. v. Surgical Tech., Inc.*,
    285 F.3d 848 (9th Cir. 2002) .........................................................................57

*Kavruck v. Blue Cross of California*, 108 Cal. App. 4th 773 (2003).......................................25

*Kinghorn v. Citibank, N.A.*, No. C 97-3111 FMS, 1999 WL 30534
    (N.D. Cal. Jan. 20, 1999) ............................................................................69

*Kizer v. County of San Mateo*, 53 Cal. 3d 139 (1991) ...................................................71

*Kline v. Turner*, 87 Cal. App. 4th 1369 (2001)........................................................49, 50

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003) ...................................46, 62

*Kotlar v. Hartford Fire Insurance Co.*, 83 Cal. App. 4th 1116 (2000) ...................................29

*Lambros v. Metropolitan Life Insurance Co.*, 111 Cal. App. 4th 43 (2003) ...............................41

*Laster v. T-Mobile USA, Inc.*, No. 05-cv-1167, 2009 WL 4842801
    (S.D. Cal. Dec. 14, 2009)............................................................................64

*Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181 (S.D. Cal. 2005) .................................22, 43

*Levald, Inc. v. City of Palm Desert*, 998 F.2d 680 (9th Cir. 1993)......................................53

*Lewis & Queen v. N.M. Ball Sons*, 48 Cal. 2d 141 (1957) ..............................................34, 35

*Lewis Jorge Construction Management, Inc. v. Pomona Unified School District*,
    34 Cal. 4th 960 (2004) ..............................................................................70

*Lewis v. Casey*, 518 U.S. 343 (1996)..................................................................45

viii

*Li v. Yellow Cab Co.*, 13 Cal. 3d 804 (1975) ...........................................................59

*In re Lisa R.*, 13 Cal. 3d 636 (1975) .........................................................................57

*Lukovsky v. City & County of San Francisco*, 535 F.3d 1044 (9th Cir. 2008) ...................56

*Madrid v. Perot Systems Corp.*, 130 Cal. App. 4th 440 (2005)...........................60, 61

*Malcom v. Farmers New World Life Insurance Co.*, 4 Cal. App. 4th 296 (1992).............22

*Massachusetts Mutual Life Insurance Co. v. Superior Court*,
   97 Cal. App. 4th 1282 (2002) ...........................................................................23

*Mazur v. eBay Inc.*, 257 F.R.D. 563 (N.D. Cal. 2009) ............................................66

*McGreehan v. California State Automobile Association*, 235 Cal. App. 3d 997 (1992)...................32

*McQuillion v. Schwarzenegger*, 369 F.3d 1091 (9th Cir. 2004)....................................68

*Medina v. Safe-Guard Products International, Inc.*, 164 Cal. App. 4th 105 (2008)...........................35

*Mirkin v. Wasserman*, 5 Cal. 4th 1082 (1993) ...................................................22, 43

*Mitchell v. Clarke*, 71 Cal. 163 (1886) ......................................................................70

*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co.*,
   36 Cal. 4th 412 (2005) .....................................................................................34

*National Rural Telecomm. Cooperative v. DirecTV, Inc.*, 319 F. Supp. 2d 1059
   (C.D. Cal. 2003)................................................................................................61

*New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090 (C.D. Cal. 2004) ..............................70

*Norgart v. Upjohn Co.*, 21 Cal. 4th 383 (1999)........................................................50

*North Star Reinsurance Corp. v. Superior Court*, 10 Cal. App. 4th 1815 (1992).......................53, 54

*Officers for Justice v. Civil Service Commission*, 688 F.2d 615 (9th Cir. 1982)...........................14

*Opsal v. United Services Automobile Association*, 2 Cal. App. 4th 1197 (1991).................... 39-40

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) .....................................................66

*Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2006) ........................................46

*The Pantry, Inc. v. Stop-N-Go Foods, Inc.*, 777 F. Supp. 713 (S.D. Ind. 1991)..............................69

*Parrish v. NFL Players' Association*, 534 F. Supp. 2d 1081 (N.D. Cal. 2007)................... 21-22, 43

*Parsons v. Tickner*, 31 Cal. App. 4th 1513 (1995) ..................................................49

*Pashley v. Pacific Electric Railway*, 25 Cal. 2d 226 (1944).........................................55

*Pastoria v. Nationwide Insurance*, 112 Cal. App. 4th 1490 (2003) ..............................20

ix

*Perez-Encinas v. AmerUs Life Insurance Co.*, 468 F. Supp. 2d 1127 (N.D. Cal. 2006) ....................52

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) ................................................14

*Philip Morris USA v. Williams*, 549 U.S. 346 (2007)........................................................72

*Phillips v. American International Group, Inc.*, 498 F. Supp. 2d 690 (S.D.N.Y. 2007) ....................19

*Platt Electric Supply, Inc. v. EOFF Electric, Inc.*, 522 F.3d 1049 (9th Cir. 2008) ..........................50

*Princess Cruise Lines, Ltd. v. Superior Court*, 179 Cal. App. 4th 36 (2009)............................... 42-43

*Public Utilities Commission of California v. FERC*, 100 F.3d 1451 (9th Cir. 1996)...................67, 68

*Quezada v. Loan Center of California, Inc.*, No. CIV. 2:08-00177 WBS KJM,
    2009 WL 5113506 (E.D. Cal. Dec. 18, 2009) ............................................................21, 24, 42

*Reno v. Catholic Soc. Services, Inc.*, 509 U.S. 43 (1993)....................................................66

*Residential Capital, LLC v. Cal-Western Reconveyance Corp.*,
    108 Cal. App. 4th 807 (2003) ....................................................................... 33-34, 36

*Richter v. Mutual of Omaha Insurance Co.*, No. CV 05-498 ABC, 2007 WL 6723708
    (C.D. Cal. Feb. 1, 2007), *aff'd*, 286 F. App'x 427 (9th Cir. 2008)........................28, 29, 30, 40

*Roby v. McKesson*, 47 Cal. 4th 686 (2009)................................................................72, 73

*Rodarte v. Philip Morris, Inc.*, No. CV 03-0353 FMC (CTx),
    2003 WL 23341208 (C.D. Cal. June 23, 2003) ................................................................57

*Rubin v. Green*, 4 Cal. 4th 1187 (1993)....................................................................74

*San Diego Housing Commission v. Industrial Indemnity Co.*, 68 Cal. App. 4th 526 (1998)..............39

*Sanchez v. Wal-Mart Stores, Inc.*, No. Civ. 2:06-CV-02573-JAM-KJM,
    2009 WL 1514435 (E.D. Cal. May 28, 2009) ................................................................24

*Santa Maria v. Pacific Bell*, 202 F.3d 1170 (9th Cir. 2000)................................................56

*Sayer v. Lincoln National Life Insurance Co.*, No. 7:05-cv-1423-RDP, 2006 WL 6253201
    (W.D. Ala. Oct. 12, 2006), *aff'd*, 228 F. App'x 963 (11th Cir. 2007)......................................19

*Searle v. Wyndham International, Inc.*, 102 Cal. App. 4th 1327 (2002) ..................................... 41-42

*Seven Words LLC v. Network Solutions*, 260 F.3d 1089 (9th Cir. 2001) ....................................67

*Shakur v. Schriro*, 514 F.3d 878 (9th Cir. 2008) ..........................................................48

*In re Simon II Litigation*, 407 F.3d 125 (2d Cir. 2005) ....................................................73

*Sosna v. Iowa*, 419 U.S. 393 (1975) ......................................................................45

*Spiegler v. Home Depot USA, Inc.*, 552 F. Supp. 2d 1036 (C.D. Cal. 2008) ...............................18

x

*Stasher v. Harger-Haldeman*, 58 Cal. 2d 23 (1962) ................................................................31

*State Farm Fire & Casualty Co. v. Superior Court*, 210 Cal. App. 3d 604 (1989)............................34

*State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003)......................72, 73

*Stewart v. M.M.&P. Pension Plan*, 608 F.2d 776 (9th Cir. 1979).......................................66

*Stewart v. Truck Insurance Exchange*, 17 Cal. App. 4th 468 (1993) ...................................72

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) ...................................................69

*Texas v. United States*, 523 U.S. 296 (1998) ........................................................65

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009)..................................................42, 46

*Treadaway v. Camellia Convalescent Hospitals, Inc.*, 43 Cal. App. 3d 189 (1974) ..........................54

*United States v. Geophysical Corp. of Alaska*, 732 F.2d 693 (9th Cir. 1984) ...................................67

*United States v. Washington*, 759 F.2d 1353 (9th Cir. 1985) ................................................68

*US Ecology, Inc. v. California*, 129 Cal. App. 4th 887 (2005).................................................37

*In re Vaccine Cases*, 134 Cal. App. 4th 438 (2005) ....................................................48

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996)...............................................47

*Vasquez v. Superior Court*, 4 Cal. 3d 800 (1971) .......................................................23

*Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285 (S.D. Cal. 2003) ........................................14

*Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158 (2002)........................................42

*Walker v. USAA Casualty Insurance Co.*, 474 F. Supp. 2d 1168 (E.D. Cal. 2007) ....................61, 63

*Walker v. Geico General Insurance Co.*, 558 F.3d 1025 (9th Cir. 2009)...............................61, 62, 63

*Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989 (9th Cir. 2006)..................51, 56

*Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466 (2006) ...................................................41

*Weinstein v. Bradford*, 423 U.S. 147 (1975)..........................................................67

**FEDERAL RULES**

28 U.S.C. § 2201 et seq...................................................................... 52, 64-65

Fed. R. Civ. P. 9 ...................................................................................70

Fed. R. Civ. P. 23 ...................................................................................14

1

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200 ...................................................................................1

Cal. Bus. & Prof. Code § 17203 .................................................................................46

Cal. Bus. & Prof. Code § 17204 .................................................................................42

Cal. Bus. & Prof. Code § 17208 .................................................................................55

Cal. Civ. Code § 312 ...................................................................................................52

Cal. Civ. Code § 337 ...................................................................................................51

Cal. Civ. Code § 1588 .................................................................................................22

Cal. Civ. Code § 1589 .................................................................................................22

Cal. Civ. Code § 1710 .................................................................................................21

Cal. Civ. Code § 1714 ...........................................................................................22, 59

Cal. Civ. Code § 1750 ...................................................................................................1

Cal. Civ. Code § 3294 ...........................................................................................14, 71

Cal. Civ. Code § 3300 .................................................................................................53

Cal. Civ. Code § 3513 ...........................................................................................22, 58

Cal. Civ. Code § 3515 ...........................................................................................22, 58

Cal. Code of Civ. Proc. § 337 .....................................................................................53

Cal. Code of Civ. Proc. § 338 .........................................................................49, 53, 54

Cal. Code of Civ. Proc. § 339 .....................................................................................53

Cal. Code of Civ. Proc. § 1858 ...................................................................................35

Cal. Evid. Code § 115 .................................................................................................14

Cal. Evid. Code § 623 ...........................................................................................23, 57

Cal. Ins. Code § 101 .....................................................................................................6

Cal. Ins. Code § 335 ...................................................................................................22

Cal. Ins. Code § 336 ...........................................................................................22, 58

Cal. Ins. Code § 760 .....................................................................................................6

Cal. Ins. Code § 761 .....................................................................................................6

Cal. Ins. Code § 762 .....................................................................................................6

CASE NO.:  05 CV 0633 JLS (CAB)

Cal. Ins. Code § 763 ...................................................................................................6

Cal. Ins. Code § 785 ...................................................................................................6

Cal. Ins. Code § 786 ...................................................................................................6

Cal. Ins. Code § 787 ...................................................................................................6

Cal. Ins. Code § 788 ...................................................................................................6

Cal. Ins. Code § 789 ...................................................................................................6

Cal. Ins. Code § 790 ...................................................................................................6

Cal. Ins. Code § 1749 .................................................................................................6

Cal. Ins. Code § 10120 .............................................................................................35

Cal. Ins. Code § 10127 ...................................................................................... *passim*

Cal. Ins. Code § 10133 .............................................................................................35

Cal. Ins. Code § 10137 .............................................................................................36

Cal. Ins. Code § 10138 .............................................................................................36

Cal. Ins. Code § 10163 ...............................................................................................6

Cal. Ins. Code § 10168 .........................................................................................6, 36

Cal. Ins. Code § 10509 .........................................................................................5, 6

Cal. Ins. Code § 12926 .............................................................................................32

**STATE REGULATIONS**

10 Cal. Code Reg. § 2201 ............................................................................................6

10 Cal. Code Reg. § 2202 ............................................................................................6

10 Cal. Code Reg. § 2203 ............................................................................................6

10 Cal. Code Reg. § 2204 ............................................................................................6

10 Cal. Code Reg. § 2205 ............................................................................................6

10 Cal. Code Reg. § 2206 ............................................................................................6

10 Cal. Code Reg. § 2207 ............................................................................................6

10 Cal. Code Reg. § 2208 ............................................................................................6

10 Cal. Code Reg. § 2209 ............................................................................................6

10 Cal. Code Reg. § 2210 ............................................................................................6

xiii

10 Cal. Code Reg. § 2211 ...................................................................................6

10 Cal. Code Reg. § 2212 ...................................................................................6

10 Cal. Code Reg. § 2213 ...................................................................................6

10 Cal. Code Reg. § 2214 ...................................................................................6

10 Cal. Code Reg. § 2215 ...................................................................................6

10 Cal. Code Reg. § 2216 ...................................................................................6

10 Cal. Code Reg. § 2217 ...................................................................................6

10 Cal. Code Reg. § 2218 ...................................................................................6

## **OTHER AUTHORITIES**

Cal. Ins. Dep't Bulletin 93 (1993) .....................................................................33

2 Lee R. Russ, *Couch on Insurance* (3d ed. 2008) ..........................................30

3 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* (4th ed. 2002)..............................15

Darlene K. Chandler, *The Annuity Handbook* (4th ed. 2005)............................5

Kenneth Black, Jr. & Harold D. Skipper, *Life Insurance* (13th ed. 2000) ..........5

NAIC, *Buyer's Guide To Fixed Deferred Annuities*........................................5

Restatement (Second) of Contracts (1981) ................................................. 70-71

Restatement (Second) of Torts (1965) ..............................................................59

CASE NO.:  05 CV 0633 JLS (CAB)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.    INTRODUCTION

Defendant Allianz Life Insurance Company of North America ("Allianz") submits this Trial Brief pursuant to the Order dated January 19, 2010,[1] and Local Rule 16.1(f)(9)(a).  Allianz respectfully submits that plaintiffs' claims for breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the "unlawful" and "fraudulent" prongs of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, and common law fraud, are without merit and that the class should be decertified.

# II.    PROCEDURAL BACKGROUND

## A.    The Class Action Complaint.

Anthony J. Iorio filed this class action lawsuit as the sole class representative on March 30, 2005, alleging that Allianz, Asset Marketing Systems, Inc., Asset Marketing Systems Insurance Services, LLC, Senior Only Financial, Preservation Financial and Insurance Services, Inc., and his independent agent Michael Botkin committed elder abuse, violated the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, violated the UCL, and breached their duties of good faith and fair dealing.  In the amended class action complaint, the representative plaintiff dropped the elder abuse claim, added claims for breach of the statutory duty of good faith and fair dealing and breach of contract, and added additional named plaintiffs.  The complaint was amended again, alleging for the first time that class members were defrauded and entitled to declaratory relief, and deleting the CLRA and statutory duty of good faith claims.  In plaintiffs' Third Amended Complaint ("Complaint"), the operative pleading in this case, Max Freifield and Ruth Scheffer were added as representative plaintiffs.  On June 8, 2006, the parties stipulated that the action would be dismissed as to all other representative plaintiffs.  All defendants other than Allianz were dismissed with prejudice on March 1, 2007.

The Third Amended Complaint asserts causes of action for common law fraud, violations of the UCL "fraudulent" and "unlawful" prongs, breach of contract, breach of the implied

---

[1] Order Granting Joint Motion for Order Setting Additional Pretrial Dates (Docket No. 358).

CASE NO.:  05 CV 0633 JLS (CAB)

covenant of good faith and fair dealing, and declaratory relief.  (Doc. No. 74).  The following class was certified in July 2006 by The Honorable Irma E. Gonzalez:  "[A]ll persons who purchased one of the following annuities from Allianz Life Insurance Company of North America or LifeUSA while they were California residents and when they were 65 years or older: Bonus Maxxx, BonusDex, Bonus Maxxx Elite, BonusDex Elite, 10% Bonus PowerDex Elite and MasterDex 10."   Order dated July 26, 2006 (Doc. No. 113), at 1.   None of the class representatives owned the Bonus Maxxx Elite, BonusDex Elite, or the 10% Bonus PowerDex Elite policy forms.

The Complaint's Prayer for Relief seeks compensatory damages and these remedies:

- "Restitution of the monies improperly collected or withheld by Allianz";

- "A preliminary and permanent injunction restraining Defendants from further unfair practices";

- "A declaration of the rights and liability of the parties under the Allianz bonus deferred annuities";

- "Special damages in a sum to be determined at the time of trial";

- "Punitive damages in an amount appropriate to punish or set an example of" Allianz; and

- "Trebling of punitive damages and/or restitution amounts pursuant to Civil Code section 3345."

**B.     The Court's Orders Clarifying The Class And Its Claims.**

This Court correctly construed plaintiffs' two-tier deferred annuities as having "a cash value, *i.e.*, the amount that the policyholder receives upon surrendering the annuity for cash, and an annuitization value, *i.e.*, the amount used for calculating the annuity payments if the policyholder meets the annuity's deferral and payout requirements."  Order dated July 8, 2008, at 2.  "To receive the full annuitization value (including bonus plus interest), the annuity had to remain in deferral for at least five years and payout taken over at least ten years."  *Id.*  During this deferral period, the policies' annuitization values received interest and/or index credits at or above the rates guaranteed in the contracts.  *See id.* at 22-23.  "For example, in the period prior to Mr. Iorio's surrender of his Bonus Maxxx annuity, the payout for that annuity always exceeded

2

the contractually guaranteed minimum of 3%." *Id.* at 23. "Plaintiffs construe the difference between the annuitization value and the cash value to be part of the surrender penalties imposed on plaintiffs who annuitized prematurely or cashed in their policies." *Id.* at 3. "A policyholder who annuitized in a shorter period of time would receive the cash value, which included a 10% charge on premiums received, a reduced rate of interest, and no bonus." *Id.* at 2-3.

The Court's post-certification rulings have clarified the class composition, and characterized and reduced the class claims. As the Court construed the Complaint, plaintiffs contend that Allianz fraudulently "marketed the annuities with the promise of a '10% immediate bonus.'" Order dated Feb. 23, 2009 (Doc. No. 283), at 1. Plaintiffs' common law fraud and UCL "fraudulent" prong claims, as defined by the Court, are based on the premise that the promise of a 10% immediate bonus had two separate affirmative misrepresentations embedded within it: (1) the "immediate" issue (*i.e.*, that the bonus was immediately available in cash) and (2) the "bonus" issue (*i.e.*, Allianz's alleged non-disclosures regarding "manipulating the annuity yields" and "applying a haircut"). *Id.* at 5.[2] This Court held that Mr. Iorio's "immediate" issue fraud claims – both common law and under the UCL – are time-barred because those claims accrued upon delivery of his annuity contract. Order dated July 8, 2008 (Doc. No. 238), at 11 & 37. As such, the Court ruled that he cannot serve as a class representative on the "immediate" issue. *Id.*

The Court also found in its Order dated July 8, 2008 that plaintiffs' breach of contract claim takes two forms: (1) that Allianz allegedly breached its promise of a 10% bonus by

---

[2] Allianz respectfully disagrees with this Court's findings regarding the "bonus issue." Based on this Court's orders, the discovery conducted in this matter, and plaintiffs' own pleadings, Allianz maintains that the "bonus issue" is an uncertified and non-certifiable omission claim. Even *after* this Court's findings regarding the "bonus issue," plaintiffs continue to describe their fraud claim as containing distinct misrepresentation and non-disclosure components. *See*, *e.g.*, Plaintiffs' Motion in Limine No. 5 to Prohibit Allianz From Arguing And Submitting Evidence Regarding The Performance of Other Types of Investments (Doc. 299) at 3 (stating their claims arise from "Allianz's false promise of an immediate bonus *and its failure to properly disclose the annuities large and ever-increasing surrender penalties*") (emphasis supplied).

"failing to disclose that any such advantage would be lost or substantially lost if the purchaser actually kept the annuity for a lengthy period," *id*. at 27; and (2) that Allianz did not comply with California Insurance Code §§ 10127.10(c) and 10127.13, which require certain disclosures to appear on the face of annuity contracts issued to senior citizens. *Id*. at 28-29. The Court dismissed the first form of plaintiffs' breach of contract claim as "merely a variant of fraud" but found that "the second claim for breach of contract is viable." *Id*. at 28-29. The Court stated that "a reasonable jury could find that Allianz failed to comply with the senior notice statutes and thus committed a breach of contract by omitting and/or altering the language required by the California Insurance Code and then applying the improperly disclosed penalties when plaintiffs surrendered their policies." *Id.* at 29. The surviving breach of contract allegations are also the basis for the UCL "unlawful" claim, as well as for their claim for breach of the implied covenant of good faith and fair dealing. The Court held further that none of these claims accrues until plaintiffs "lost money or property" as a result of Allianz's alleged noncompliance with the senior notice statute. *Id*. at 13-14. And the Court held that the notice-based claims of class members who have not fully or partially surrendered their policies may only result in prospective declaratory relief, not in monetary relief. *See* Order dated Feb. 23, 2009, at 7.[3]

---

[3] The class data necessarily is sorted by policy and not by individual class member. Each class member's surviving claims, if any, depend on when the policy was delivered and whether a full or partial surrender was taken from that policy that incurred a penalty. The Class List identifies policy *issue* date, not *delivery* date, and does not distinguish between penalty-free surrenders/withdrawals and those where a penalty applied. Identifying which individual policies support which viable claims requires a manual review of the policy files to determine delivery dates and whether any penalty was applied. As explained in Allianz's Motion to Modify the Class Definition, Establish Subclasses, and Adopt a Trial Plan (Doc. No. 267), manual review of the policies that had partial surrender is necessary to determine which were penalty-free, *e.g.*, a required minimum withdrawal from an annuity in a qualified plan, or an exercise of the annual 10% penalty-free withdrawal feature of the annuity contracts.

4

III.    **FACTUAL BACKGROUND**

    A.    **Allianz Bonus Deferred Annuities.**

As Americans continue to live longer, outliving one's assets is a significant financial risk. Annuities are one type of financial instrument designed to minimize this risk, and are a form of insurance that offer numerous benefits, including safety of principal, guaranteed interest rates, and guaranteed income. *See* Darlene K. Chandler, *The Annuity Handbook* 64 (4th ed. 2005). In exchange for premium, the insurance company agrees to pay a stream of income over a certain period of time or for the remainder of the policyholder's life, provided that the policyholder complies with the terms of the contract. *See* Kenneth Black, Jr. & Harold D. Skipper, *Life Insurance* 161-62 (13th ed. 2000) ("Black & Skipper"). Annuities are the opposite of life insurance in that they insure against the risk of living longer than one's life expectancy and consequently outliving one's assets. *Id.* at 162. The National Association of Insurance Commissioners ("NAIC") describes an annuity as "a contract in which an insurance company makes a series of income payments at regular intervals in return for a premium or premiums you have paid. Annuities are most often bought for future retirement income. Only an annuity can pay an income that can be guaranteed to last as long as you live." NAIC, *Buyer's Guide To Fixed Deferred Annuities* 2 ("Buyer's Guide").[4] The Buyer's Guide, which was provided to class members along with a plethora of explanatory materials, cautions that one "shouldn't buy an annuity to reach short-term financial goals." *Id.*

"A *deferred* annuity has two parts or *periods*. During the *accumulation period*, the money you put into the annuity, less any applicable charges, earns interest. The earnings grow tax-deferred as long as you leave them in the annuity. During the second period, called the *payout period*, the company pays income to you or to someone you choose." *Id.* (emphases in original). Two-tiered deferred annuities have two values: a cash value, which is the amount the

---

[4] Life insurance companies are required to provide "to all prospective insureds a buyer's guide" prior to accepting premium or upon delivery of the policy. Cal. Ins. Code § 10509.975(a). This buyer's guide is the one published by the NAIC. *Id.* § 10509.975(b).

policyholder receives if the contract is surrendered for cash, and an annuitization value, which is the amount used to calculate the annuity payments after the deferral period is satisfied. The six Allianz annuity contracts at issue are two-tiered deferred annuities. Each policy's annuitization value is immediately credited the full premium plus a bonus that is a percentage of the first-year premiums paid. The 10% bonus added to Mr. Iorio's premium payment of $10,210.94 immediately produced an annuitization value of $11,232.03; Ms Scheffer's starting annuitization value of $105,164.20 was her $95,603.82 first-year premium plus a bonus of $9,560.38; and Mr. Freifield's first-year premium of $12,144.26 was credited a bonus of $1,214.43, for an annuitization value of $13,358.69. Plaintiffs' contracts state that to receive the annuitization value, including the bonus and interest added to that value, the annuity must remain in deferral for at least five years and payout taken over a period of at least ten years.

Fixed annuities provide immediate and sustained advantages to consumers whose primary financial concern is safety. Allianz annuity owners who maintained their contracts have received the benefit of not losing a dime of principal *or interest*, and the comfort of knowing their funds are guaranteed.

## B. The Allianz Policy Forms Were Accepted For Filing By The California Department Of Insurance.

Annuities rank among the most regulated financial products in the country. By statutes and administrative rules, California authorizes the sale of annuities, thereby recognizing annuities as valuable insurance products. The sale of annuities, particularly to individuals who are age 65 and older, is expressly regulated. *See* Cal. Ins. Code §§ 785-789, 10509. And, because annuities are insurance products, they are comprehensively governed by the Insurance Code. *See*, *e.g.*, *id.* §§ 101, 760-763, 785-789, 790, 1749, 10168, 10509. The Legislature has vested the Commissioner with the authority to assess the propriety of insurance products offered for sale in California. All life insurance and annuity policy forms must be filed with and accepted by the Commissioner before they may be sold in the State. *Id.* §§ 10163.35, 10168.93. The Commissioner has the authority to reject the policy form or to note the Department's "nonacceptance" of the filing. *See* 10 Cal. Code Regs. §§ 2201-2218.10; § 2216. The

6

submission process is extensive, as demonstrated by the filing experiences of the six annuity forms at issue in this case.

The Department's filing and acceptance processes also includes evaluations of Actuarial Memoranda, Statements of Variability, and the Statements of Understanding ("SOUs").  Allianz submitted statements explaining the features of each of the six annuity forms, including descriptions of the features at issue in this case.  For example, the Bonus Maxxx submission explained that "[t]he policy contains an annuitization bonus.  The annuitization value is realized as long as the policy is in force for at least five years and payments are taken over at least ten years."  The Department accepted the Bonus Maxxx policy form, Mr. Iorio's annuity, on September 4, 1998.  The letter accompanying the MasterDex 10 submission explained the particulars of that policy, including defining the cash value as equal to "87.5% of premium paid, growing at 1.5%, less any partial surrenders and systematic withdrawals of credits."  The Department accepted the MasterDex 10 policy form, Mr. Freifield's annuity, on May 14, 2004.

The Department often requires additional information and revisions before the policy filing is accepted.  The filing experience for the BonusDex, Ms. Scheffer's policy, illustrates the extent of the Department's review.  Allianz submitted the policy form on September 25, 2001.  Two days later, the Department notified Allianz that the form would be held as "pending" until certain concerns were addressed and/or changes were made, including the manner of index calculations; participation and cap rates, including the guarantees of those rates; and differences between the annuitization and cash values.  Over the next three months, through numerous exchanges with the Department, Allianz addressed each issue, including those related to the definitions of annuitization value, cash value, and full surrender in the contract's "Benefits and Values" section.  Satisfied with the changes, the Department lifted the form's "pending" status and accepted the BonusDex for filing on December 19, 2001.

**C.      The Senior Notice Disclosures.**

As noted, plaintiffs' claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of the UCL "unlawful" prong each allege that Allianz violated sections 10127.10[5] and 10127.13[6] of the Insurance Code, which require surrender charge disclosure language to appear on the cover page or policy jacket of annuity contracts issued to senior citizens that include a surrender *charge*.  Recognizing that the Allianz annuities at issue do not have a surrender *charge*, but instead two contract values, the Department expressly approved a modified disclosure for Allianz bonus annuities.

The Department notified Allianz in September 1999 of a possible compliance problem relating to the senior notice.  Allianz promptly responded, explaining that the statutory language

[5] Section 10127.10 provides in pertinent part:

(c)  Every individual life insurance policy and every individual annuity contract, other than variable contracts and modified guaranteed contracts, subject to this section, that is delivered or issued for delivery in this state shall have the following notice either printed on the cover page or policy jacket in 12-point bold print with one inch of space on all sides or printed on a sticker that is affixed to the cover page or policy jacket:

"IMPORTANT

YOU HAVE PURCHASED A LIFE INSURANCE POLICY OR ANNUITY CONTRACT.  CAREFULLY REVIEW IT FOR LIMITATIONS. THIS POLICY MAY BE RETURNED WITHIN 30 DAYS FROM THE DATE YOU RECEIVED IT FOR A FULL REFUND BY RETURNING IT TO THE INSURANCE COMPANY OR AGENT WHO SOLD YOU THIS POLICY. AFTER 30 DAYS, CANCELLATION MAY RESULT IN A SUBSTANTIAL PENALTY, KNOWN AS A SURRENDER CHARGE."

[6] Section 10127.13 provides:

All individual life insurance policies and individual annuity contracts for senior citizens that contain a surrender charge period shall either disclose the surrender period and all associated penalties in 12-point bold print on the cover sheet of the policy or disclose the location of the surrender information in bold 12-point print on the cover page of the policy, or printed on a sticker that is affixed to the cover page or to the policy jacket.  The notice required by this section may appear on a cover sheet that also contains the disclosure required by subdivision (d) of Section 10127.10.

8

failed to distinguish between surrender charges and the policies with two values, which "would be misleading to the consumer and create a very real potential for a consumer complaint against LifeUSA as well as a very real threat of consumer litigation against LifeUSA."  The Department agreed that the concern was "valid" and invited Allianz to "rewrite" the disclosure for its particular products.  For its bonus deferred annuities, Allianz proposed the following notice:

IMPORTANT NOTICE TO SENIOR CITIZENS –

YOU HAVE PURCHASED AN ANNUITY CONTRACT.  YOU WILL NEED TO READ IT CAREFULLY TO LEARN ABOUT YOUR CONTRACT BENEFITS AND CONTRACT LIMITATIONS.  THE CONTRACT MAY BE RETURNED TO US, OR YOU MAY SEND IT TO THE AGENT WHO SOLD YOU THE CONTRACT, WITHIN 30 DAYS FROM THE DATE YOU RECEIVED IT FOR A FULL REFUND.  AFTER 30 DAYS, IF YOU CANCEL THE CONTRACT, THE CONTRACT MAY HAVE A SUBSTANTIAL PENALTY APPLIED TO THE PROCEEDS OF THE CONTRACT.  THE PENALTY WILL REDUCE THE AMOUNT OF FUNDS AVAILABLE FOR SURRENDER TO YOU.  THIS PENALTY WILL BE IN EFFECT FOR THE LIFE OF THE CONTRACT.  FOR DETAILS PLEASE READ CAREFULLY THE SECTION OF THE CONTRACT CAPTIONED 'BENEFITS AND VALUES.'

On January 30, 2001, the Department expressly approved Allianz's modified language, stating that its "file" on the notice issue was "closed."

### D.     The Sales Agents And Presentations.

In California, Allianz annuities are sold through a network of more than 21,000 independent insurance agents, affiliated with local Field Marketing Organizations ("FMOs"), and licensed by the state.  The class member policies at issue were sold by 2,765 California-licensed independent insurance agents.  The Allianz consumer brochures and SOUs, as well as other informational materials provided to class members, were personally delivered by the agent – usually at the purchaser's home, usually in meetings lasting an hour or more, and always accompanied by the agent's individualized, non-scripted oral presentation.  Independent agents are free to sell products for other companies, tailoring their sales presentations to each client's particular financial circumstances and goals.  As plaintiffs' expert witness Dr. Edward Finegan has acknowledged, in a face-to-face presentation by an agent to a prospective purchaser, the

9

1    agent's explanation, the quality of the explanation, the questions the purchaser asked, and the

2    answers given, all will affect that purchaser's understanding of the contract-related materials.

3         **E.    The Sales Materials.**

4         The Allianz consumer brochures and SOUs varied from policy to policy and, even with

5    regard to the same policy, the sales materials varied over time.  A total of 85 versions of the

6    product-specific brochures and SOUs were utilized in California during the class period, in

7    connection with the six annuity policy forms at issue.  The content of brochures varied

8    depending, for example, on the type of product and when it was sold.  Some brochures were as

9    few as six pages and others as many as 16.  The SOUs also varied between products and changed

10   over time – *e.g.*, some were two pages, others were four pages; some had as few as six

11   enumerated points and others had as many as 16 points; some SOUs included glossaries, some

12   depicted hypothetical scenarios, and some included tables illustrating the year-by-year

13   differences between "Annuitization Value," "Cash Value," and "Guaranteed Minimum Value."

14   The brochures and SOUs also contained variations on the cash surrender disclosure.[7]

15        In addition to the brochure and SOU, purchasers also were provided with myriad other

16   informational and explanatory materials from their agents, "reams of presentations, papers,

17   graphs, charts, so on."  Deposition of Anthony J. Iorio ("Iorio Dep.") at 70:20-21.  Mr. Freifield

18   received and signed several documents that the other representative plaintiffs did not, including a

19   "Disclosure to California Residents" form, a "Notice Regarding Replacement," and a document

20   titled "Sale of An Annuity to Applicants Who Are Age 65 or Older."  Mr. Freifield's agent, John

21

22   _____

23   [7] The particular Accumulator Bonus Maxxx brochure Mr. Iorio received was version eight (of
     21), and his SOU was the third iteration (of nine).  Based on her purchase date, the BonusDex
24   brochure Ms. Scheffer likely received was the first of four versions; the SOU she signed was the
     first of three BonusDex iterations.  Mr. Freifield likely received the sixth (of ten) MasterDex 10
25   brochure, and the SOU he signed was the second version (of four).  The brochure and SOU
     revisions for the other three annuities at issue, which were not purchased by any of the class
26   representatives, are:  BonusMaxxx Elite (five brochures, four SOUs); BonusDex Elite (seven
     brochures, four SOUs); and 10% Bonus PowerDex Elite (eight brochures, six SOUs).
27

28

Marshall, supplied two statements of understanding – the Allianz SOU and a one required by his FMO – which Mr. Freifield initialed 18 times attesting that he understood the policy.

**F.    The Class Representatives' Annuity Purchases.**

The named plaintiffs admit they:  (1) relied primarily, if not exclusively, on their agents' oral explanation for their understanding of their Allianz annuities; (2) do not remember significant aspects of what their agents explained to them; (3) did not read or rely on the Allianz consumer brochure for their understanding of their policy or their decision to purchase it – indeed, they disclaimed reliance; (4) previously owned other annuities or life insurance policies and incurred surrender penalties in connection with terminating those policies; and (5) signed without reading the Allianz SOU, attesting that they read the disclosures, understood the operation of the bonus, understood that no promises were made about future values other than guaranteed values, and that the annuity was suitable for their long term financial needs.  None of the named plaintiffs could identify any misrepresentation made to them – written or oral. Instead, they now claim they "did not understand" their annuities and regret purchasing them. Mr. Iorio, Ms. Scheffer, and Ms. Freifield supplemented their deposition testimony with declarations itemizing terms and conditions of their annuities that they personally "did not understand," including terms and conditions relating to their contractual ability to realize the bonus, the two policy values, and so-called "reductions" to the rates of return.  Doc. No. 195.

**G.    The Agents' Testimony.**

Mr. Iorio's agent, Michael Botkin, will testify that he reviewed with Mr. Iorio a financial questionnaire and made a series of inquiries about his future income and liquidity needs. Deposition of Michael Botkin at 204:14-205:11.  Mr. Botkin recommended the Bonus Maxxx deferred annuity based on Mr. Iorio's stated desire to receive income payments in the future, and clearly recalls explaining the terms and conditions of that policy.  *Id.* at 205:25-206:21; 210:10-211:2; 212:21-213:23; 214:16-215:2.  Mr. Botkin will testify that he "absolutely" explained the difference between annuitization value and cash value, including the crediting of the bonus to the annuitization value and that Mr. Iorio would receive the cash value "if he decided to surrender the policy."  *Id.* at 217:19-22, 213:21-23.  Following the explanation, Mr. and Mrs. Iorio "said

11

they understood" that aspect of the annuity.  *Id.* at 217:22-25.  In addition to these verbal explanations, Mr. Botkin also provided the Bonus Maxxx brochure and the SOU, which he reviewed with Mr. Iorio "line by line."  *Id.* at 213:2-3.

Likewise, Mr. Freifield's agent, John Marshall, "explained to Mr. Freifield that the MasterDex 10 is intended to be a long-term investment," that it "allowed him to participate in the growth of the market but without risk," that "he was entitled to take penalty free withdrawals every year after the first year up to 10% of the premium paid," and that "after the fifth year, he would be eligible to take an income stream."  Declaration of John Burke Marshall dated August 28, 2007, ¶ 12 (Doc. No. 187).  Mr. Marshall will testify that he "clearly explained that if he [Mr. Freifield] decided to surrender his policy early, he would pay very high surrender costs, lose the benefit of the interest growth, and lose the bonus.  I explained that he should not deposit money into the product that he thought he might need to withdraw over and above the 10% that he could take penalty free each year."  *Id.* ¶ 13.  Mr. Marshall reviewed the Allianz SOU with Mr. Freifield and also provided an additional "Statement of Understanding for Annuities," a "checklist" that Mr. Freifield separately initialed no fewer than 18 times to acknowledge his "understanding of [the] investment."  Mr. Marshall personally delivered to Mr. Freifield his MasterDex 10 contract and again "reviewed all the features and benefits" with him.  *Id.* ¶ 17.

Other California-licensed insurance agents, *e.g.*, Lisa Seran and Steven Hehner, will testify that their sales presentations were individualized and un-scripted, because each sale is adapted to the individual client's needs, goals, and experience.  The agents will testify that their clients had different conversations with them, different levels of experience, different risk tolerance, and that purchasers read the annuity contracts, brochures, SOUs, and other documents to different degrees.  Some clients did not read these documents at all, some wanted explanations of certain provisions, and some relied solely on the oral presentations.  For example, Ms. Seran will testify that the total mix of information presented and emphasized to each client is unique. Declaration of Lisa E. Seran dated June 26, 2006, ¶ 17 (Doc. No. 100).

CASE NO.:  05 CV 0633 JLS (CAB)

**H.    The Absent Class Members' Annuity Purchases.**

Allianz was granted leave to depose ten randomly-selected absent class members:  Vera Baker, James Farris, Alvin Frink, Deanne Husted, Frank Johnson, Bernice Kaplan, Eleonora Lipovitz, Willis Sieker, Charles Weite, and Blanche Williams.  These class members variously testified that they (1) relied primarily, or solely, upon their agents' advice and explanations in deciding to purchase the annuities;[8] (2) did not read or recall reading their brochures;[9] (3) did not read the SOUs they signed;[10] and (4) did not review their annuity contracts.[11]

**IV.   LEGAL STANDARDS AND BURDENS OF PROOF**

**A.    California Supplies The Governing Substantive Law.**

The parties do not dispute that California state law governs all aspects of the substantive claims in this action.

---

[8] *See*, *e.g*., Deposition of Vera Baker at 21:4-16 (her understanding of and decision to purchase the annuity was based on what her agent told her and nothing else); Deposition of Eleonora Lipovits at 20:25-21:12 (testifying that her decision to purchase the annuity was based on what her agent told her, and that she trusted and relied on the agent); Deposition of Willis Sieker at 35:2-12 (he relied on his agents when purchasing the annuity); Deposition of James Farris at 26:1-3 (his decision to purchase his annuity was based on what his agent told him).

[9] *See, e.g.*, Deposition of Eleonora Lipovits at 57:23-25 (testifying that she did not read the consumer brochure before purchasing her annuity); Deposition of Willis Sieker at 34:19-22 (stating that he did not recall reading the consumer brochure); Deposition of James Farris at 112:10-15 (stating he did not use the brochure to understand the terms and conditions of the policy or in reaching his decision to buy the policy).

[10] *See*, *e.g*., Deposition of Vera Baker at 59:6-60:9 (stating that she did not remember reviewing the SOU and that her understanding of the annuity was not based on that document); Deposition of Eleonora Lipovits at 25:12-26:19 (testifying that she did not recognize the SOU, did not read it before purchasing the annuity, and that she did not use the SOU in deciding to purchase the annuity); Deposition of James Farris at 40:10-23 (testifying that he does not recall anything about the SOU and that it is "very possibl[e]" that he signed the SOU without reading it.)

[11] *See*, *e.g.*, Deposition of James Farris at 65:25-66:3 (stating he did not read any part of the policy, including the front cover); Deposition of Bernice Kaplan at 44:12-16; 57:21-23 (stating she found the buyers' guide "boring" and not recalling having read the policy or contract summary in any detail).

13

CASE NO.:  05 CV 0633 JLS (CAB)

**B.      Plaintiffs Bear The Burden Of Proving Their Claims, And Entitlement To The Relief Requested, By A Preponderance Of The Evidence.**

Plaintiffs' claims for breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the UCL "unlawful" and "fraudulent" prongs, and for common law fraud must be established by a preponderance of the evidence.  *See* Cal. Evid. Code § 115 ("Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence.").

**C.      Plaintiffs Must Prove Entitlement To Punitive Damages By Clear And Convincing Evidence.**

Under California law, "a plaintiff is not eligible for punitive damages unless the underlying claims for fraud, oppression or malice are proven by clear and convincing evidence." *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1309 (S.D. Cal. 2003) (citing Cal. Civ. Code § 3294); *see also Barton v. Alexander Hamilton Life Ins. Co. of Am.*, 110 Cal. App. 4th 1640, 1644 (2003) (the "clear and convincing evidence" standard applies to punitive damages claims in civil actions).  "The law does not favor punitive damages and they should be granted with the greatest caution." *Beck v. State Farm Mut. Auto. Ins. Co.*, 54 Cal. App. 3d 347, 355 (1976).  In addition, "[i]t is well settled that, under California law, a plaintiff may not recover punitive damages for breach of an obligation arising out of a contract." *Von Grabe*, 312 F. Supp. 2d at 1308-09 (citing Cal. Civ. Code § 3294 and *In re Cantrell*, 329 F.3d 1119, 1125 (9th Cir. 2003)).

**D.      The Court Has A Continuing Duty To Ensure Class Certification Is Proper.**

"[B]efore entry of a final judgment on the merits, a district court's order respecting class status is not final or irrevocable, but rather, it is inherently tentative." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 633 (9th Cir. 1982); *see also* Fed. R. Civ. P. 23(c)(1)(C).  Indeed, "District Courts are *required* to reassess their rulings regularly as the case develops."  *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 134 n.4 (3d Cir. 1998) (emphasis supplied); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1145 (8th Cir. 1999) (stating that a district court "has a duty to assure that a class once certified continues to be certifiable under Fed. R. Civ. P. 23(a)").  "'The ability of a court to reconsider its initial class rulings is a vital ingredient in the flexibility of courts to realize the full potential benefits flowing from the judicious use of the class action

14

device.'"   Order dated July 8, 2008, at 35 (quoting 3 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 7.47 (4th ed. 2002)).   If it appears for any valid reason that class certification was improvidently granted, the Court should either modify or decertify the class. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982).

## V.   LEGAL CAUSES OF ACTION

Based on the evidence adduced in discovery, plaintiffs will not be able to prove the essential elements of their legal claims (fraud, breach of contract, and breach of the implied covenant of good faith and fair dealing) by a preponderance of the evidence.

### A.      Allianz Committed No Fraud.

As defined by this Court, plaintiffs' fraud claim is

that the promise of a '10% immediate bonus' had two separate affirmative misrepresentations embedded within it: (1) the 'immediate issue,' which the Court previously defined as 'Allianz affirmatively misrepresent[ing] the bonus to be 'immediate' when, in fact, the purchaser would have to wait at least fifteen years to realize the bonus', and (2) the 'bonus issue', i.e., Allianz's representation that the amount of the bonus would be 10% when, in fact, Allianz undercut the bonus by adjusting yields and applying an expense recovery adjustment, a/k/a 'haircut'.

Order dated Feb. 23, 2009 (Doc. No. 283) at 3 (internal citation omitted).   Plaintiffs cannot prove the essential elements of fraud for either "issue" embedded within their common law claim, including "(a) misrepresentation, (b) knowledge of falsity, (c) intent to defraud, (4) justifiable reliance and (5) damages.    It must be shown that the plaintiff ***actually relied*** on the misrepresentation."  Order dated July 26, 2006, at 5 (citation omitted; emphasis supplied).   Nor can plaintiffs prove a class-wide inference of reliance, or that they or the class members were harmed as a result of conduct attributable to Allianz.

#### 1.      Describing The Premium Bonus As "Immediate" Is Not A Misrepresentation Of Fact.

Allianz sales materials and policy-related documents are not misleading or deceptive in describing the premium bonus as "immediate."  It is undisputed that 110% of the policyholder's premium is immediately credited to the policy's Annuitization Value or that the premium plus bonus earns interest at or above the guaranteed rate over the life of the policy.  Indeed, this Court found that "the parties do not dispute that the policy discloses Allianz's application of a bonus

15

equaling 10% of premiums paid during the first policy year to the annuitization value.  Nor do the parties dispute that the cash value, which policyholders obtain when they request a lump-sum payment of their annuity, does not include the bonus."  Order dated July 8, 2008, at 21.

Plaintiffs nonetheless claim that the bonus is not immediate because it is not credited to the policy's Cash Value, *i.e.*, that it is not immediately available in cash.  That understanding of the bonus is expressly contradicted by the consumer brochure, the SOU each class member signed, the contract summary, and the annuity contract itself – each of which explain that to receive the policy's Annuitization Value, including the bonus and interest earned, the annuity must remain in deferral for at least five years and payout taken over a period of at least ten years.  The materials explain – in words, graphs, and charts – that if the contract is terminated, rather than annuitized in income payments, the cash surrender value is paid.  Eighty-five iterations of the product-specific brochures and SOUs were used in California during the class period, and every iteration fully explains what plaintiffs assert was affirmatively misrepresented regarding the "immediate" issue.

Nor will the evidence prove that plaintiffs actually relied on any allegedly misleading statements contained in the policy-related documents, because each admitted that they did not read or rely upon those materials.  Even assuming that plaintiffs could prove actual reliance on the allegedly offending documents for their understanding of "immediate," it was patently unreasonable to believe that they could make a $10,000 premium payment on Monday and withdraw $11,000 in cash on Tuesday.  Moreover, even if Mr. Iorio, Ms. Scheffer, and Mr. Freifield can somehow demonstrate that they possessed such an unlikely misunderstanding of "immediate" based on policy materials that are expressly to the contrary, the representative plaintiffs cannot possibly demonstrate that 12,112 other policyholders shared the same subjective and improbable belief.

## 2.   Allianz Did Not, And Does Not, "Undercut" The Bonus By Adjusting Yields, Applying The "Haircut," Or Otherwise.

The predicate to the other bonus issue "embedded" in plaintiffs' fraud claim, that Allianz "undercuts" the bonus, is simply untrue.  Allianz cannot disclose that it "recoups" the bonus

16

because, as the evidence will show, Allianz does not recover the bonus through yield manipulation, the "expense recovery adjustment" (the so-called "haircut"), or through any other mechanism.  The evidence will show that class members always received **at least** the crediting and payout rates their policies promised; in fact, the large majority received **more** than promised And the evidence will show that the actuarial formulae plaintiffs claim are tools for recouping the bonus are actually tools used by Allianz to determine **how much more**.

Plaintiffs assert that Allianz bonus annuity policyholders receive lower rates due to a purportedly higher "spread," *i.e.*, the difference between the amount the company earns on its investments and the cost of providing the policy benefits.  Allianz actuaries will testify that the structure of its two-tier bonus annuities is intended to (and does) encourage policyholders to remain in the contract longer, allowing Allianz to make longer term investments that often result in higher returns.  Allianz shares these higher returns, when achieved, with the policyholders in the form of higher rates and caps.  The evidence will show that interest rates and caps were at all times at or above the contract guarantees. And the  evidence will show that Allianz's **non**-bonus annuities (*e.g.*, the MasterDex) often have **lower** crediting rates than its bonus annuities (*e.g.*, the MasterDex 10), thus belying the claim that yields are "manipulated" to recover the bonus.  As for the expense recovery adjustment, the documentary and testimonial evidence will show that the "haircut" is a current crediting mechanism used to determine payout rates that is unrelated to the premium bonus.  The Allianz actuaries will testify that the formula is used to determine whether a policyholder who elects to annuitize in policy years six through ten will receive a payout rate **greater** than the contract promised and, if so, **how much greater**.  The evidence also will show that Allianz applies the formula to both its bonus and non-bonus annuities, thus further belying the factual predicate to plaintiffs' "recouping" allegations.

Plaintiffs complain that the actuarial formulae used to calculate non-guaranteed contract benefits were concealed.  They do not claim – and cannot claim – that the crediting and payout rates ever were less than promised.  Contract language contains *only* the guarantees; future values are not shown in the contract because they are not guaranteed.  Allianz's discretion to pay more than the guarantee is not an implied promise that it will do so.  In fact, each class member

17

signed an SOU, stating that, "I understand that any values shown, other than Guaranteed Minimum Values, are not guarantees, promises, or warranties."  Their agent signed the same document, attesting that "no promises or assurances have been made about the future values of the policy" other than guaranteed values.

### 3. The "Recouping" Theory Fails The Essential Elements Of Fraud.

Even if plaintiffs could prove the factual predicate to their claim that Allianz recovers the bonus by lowering crediting and payout rates, which they cannot, plaintiffs cannot prove the required elements of fraud, including (a) the materiality of non-guaranteed interest crediting and payout calculations that only can result in an amount *greater than* their contracts promised; (b) a duty to disclose those discretionary calculations; (c) Allianz's intent to defraud by not disclosing the method by which it determines non-guaranteed benefits; or (d) that any member of the class was injured by the calculations.

The immateriality of payout calculations to Mr. Iorio, Ms. Scheffer, Mr. Freifield, and other members of the class, is demonstrated not only by its absence from the Complaint, but also by plaintiffs' failure to mention *anything* about payouts when describing the basis for their claims in interrogatory answers and deposition testimony.  In fact, each of the representative plaintiffs stated that their decision to terminate their contracts and/or to sue Allianz was prompted by how their policies performed *during deferral*.  But even if the payout calculation formula had been material to Mr. Iorio, Ms. Scheffer, Mr. Freifield, or other members of the class, Allianz simply had no duty to disclose its internal actuarial calculations or the pricing factors embedded in the costs and benefits of the annuity contracts.

Plaintiffs "essentially assert that an insurer owes a duty to disclose information about premium pricing to potential policyholders" and commits fraud (or violates the UCL) if it fails to do so.  *See Cal. Serv. Station & Auto. Repair Ass'n. v. Am. Home Assur. Co.*, 62 Cal. App. 4th 1166, 1173 (1998).  This is not the law.  *See Spiegler v. Home Depot USA, Inc.*, 552 F. Supp. 2d 1036, 1046-48 (C.D. Cal. 2008) (for an undisclosed fact to be material, members of the public must have had an expectation or an assumption about the fact; claim that defendants concealed their internal pricing policies failed since plaintiffs did "not allege that they ever saw, were

informed about, or had knowledge of" the policies and plaintiffs "agreed to pay the contract price irrespective of the components included in that price"). "There is no duty of ordinary care to disclose pricing information during arm's-length contract negotiations," including "no special duty in the relationship between an insurer and a potential insured." *Ca1. Serv. Station*, 62 Cal. App. 4th at 1173. Thus, "an insured person's initial decision to obtain insurance and the corresponding decision of an insurer to offer coverage remain, at the inception of the contract at least, an arm's length transaction to be governed by traditional standards of freedom to contract." *Id.* (citation and quotation omitted).

In a case featuring similar allegations, an Alabama federal district court held that absent a fiduciary or confidential relationship between the insurer and the annuity purchaser, and absent a request by the consumer for the information, the insurer "did not have a duty to disclose its pricing structure, yield spread, or any alleged 'recouping' of the bonus interest rate." *Sayer v. Lincoln Nat'l Life Ins. Co.*, No. 7:05-cv-1423-RDP, 2006 WL 6253201, at *9 (W.D. Ala. Oct. 12, 2006), *aff'd*, 228 F. App'x 963 (11th Cir. 2007). The *Sayer* court flatly rejected the same theory being advanced by the plaintiffs in this case,

> that the bonus was somehow 'recouped' or 'self-financed,' and accus[ing] Defendant of pricing the Annuity so as to cover Defendant's costs, including the costs of the 'bonus rate.' Plaintiff alleges this caused Defendant to set renewal rates lower than they could have been set, thereby forcing Plaintiff to 'self-finance' her own bonus. . . . What Plaintiff refuses to recognize is that this is immaterial to whether or not Defendant breached its contract with her. At base, it appears Plaintiff is dissatisfied with Defendant's internal pricing structure. But Defendant's pricing methods are irrelevant to her claim. Moreover, Defendant had no duty to disclose its pricing to Plaintiff upon her purchase of the Annuity, especially since Plaintiff did not request this information.

*Id.* at *4; *see also Cirzoveto v. AIG Annuity Ins. Co.*, 625 F. Supp. 2d 623, 631 (W.D. Tenn. 2009) (another case involving similar bonus-recouping allegations; relying on *Sayer* and reiterating the principle that an insurer has "no duty to disclose its internal ratemaking and pricing procedures related to the annuity"); *Phillips v. Am. Int'l Group, Inc.*, 498 F. Supp. 2d 690, 695 (S.D.N.Y. 2007) (rejecting fraud allegation that annuity contracts made misleading partial disclosures when they represented that plaintiff would receive "bonus" rates of interest in

19

the first years of the contract but failed to disclose that the bonus rates could not be permanently realized; the disclosures in the annuity contracts belied the claim since they expressly provided that the bonus rates apply in the first years only, that the base rates may change in subsequent years, and that defendants retained sole discretion to determine the rates in subsequent years, subject to a minimum rate, so "the fact that the Annuity Contracts did not disclose that the bonus rate of interest could not be permanently realized does not rise to the level of fraud").

Plaintiffs' reliance on *Pastoria v. Nationwide Insurance*, 112 Cal. App. 4th 1490 (2003), is misplaced. In *Pastoria*, the plaintiffs alleged they purchased health insurance policies based upon the defendant insurance company's description of the premiums, lack of deductibles, and other policy benefits. *Id.* at 1493. Shortly after purchasing the policies, the insurer implemented significant policy changes, including material increases in premiums and substantial deductibles. *Id.* Plaintiffs further alleged that, at the time of their purchase, the insurer knew of but concealed the impending changes. *Id.* at 1494. The *Pastoria* court held that those allegations were sufficient to state a claim for relief under the UCL "fraud" prong. *Id.* at 1499. Here, unlike *Pastoria*, Allianz made no representation about policy costs that were later increased or policy benefits that were later reduced. Policyholders were guaranteed crediting and payout rates that were true then, true now, and will remain true until the contracts are terminated through surrender or annuitization.

Because every class member received what their annuity contract promised **or more**, what plaintiffs are really complaining about is that the "more" was not "more enough." In *Buller v. Sutter Health*, an insured brought a UCL action against a health insurer and hospital for not disclosing the availability of discounts. 160 Cal. App. 4th 981 (2008). The essence of the complaint was that "the billing invoices overstate the amount due because [the insurer and hospital] have an undisclosed policy of discounting balances for consumers who pay promptly," and that this practice violates the UCL because the defendants "do not inform consumers about the availability of the discount, and because consumers who pay in full in a timely manner without requesting a discount are not automatically given corresponding refunds." *Id.* at 984. The court rejected this theory, concluding that:

CASE NO.:  05 CV 0633 JLS (CAB)

requiring a business to state a discount on its initial invoice runs counter to the purpose of having discretionary discounts in the first place. Indeed, taken to their logical conclusion, appellant's arguments would effectively require a business to disclose all discretionary discounts it might offer. While we sympathize with appellant's frustration over his failure to benefit from respondents' discount policy, when viewed from the standpoint of consumers in general *we believe respondents' practice is beneficial rather than harmful, inasmuch as they apparently are not required to offer privately insured patients any discounts whatsoever.*

*Id.* at 991-92 (emphasis supplied). In sum, treating a party more favorably than the insurance contract requires cannot be actionable.

Plaintiffs here cannot dispute that the guaranteed crediting and payout rates were set forth in the contracts; nor can they dispute that Allianz *always* paid *at least* the guaranteed rates. Moreover, the brochures and SOUs that are the centerpiece of plaintiffs' fraud claims, but on which plaintiffs admittedly did not rely, disclose that Allianz's discretion to pay more than the guarantees is not a promise or warranty that it *will* pay more.

> ### 4.    The Evidence Will Not Show A Misrepresentation On Which Plaintiffs Justifiably Relied.

The evidence does not support an intentional misrepresentation, which is "[t]he suggestion, as a fact, of that which is not true, by one who does not believe it to be true." Cal. Civ. Code § 1710(1). Although Judge Gonzalez found that "plaintiffs have shown that they *received* uniform written materials containing the challenged statements," Order dated July 26, 2006, at 7 (emphasis supplied), plaintiffs admittedly did not *rely* on those statements. Receipt of the materials is not enough, particularly when: (1) plaintiffs did not read, remember, or rely on the "challenged statements"; (2) plaintiffs do not remember what their agents orally explained to them about the bonus; and (3) the statements in the brochures, SOUs, Buyer's Guides, contract summaries, contracts, and other written materials disclose what plaintiffs claim was misrepresented. *See, e.g., Quezada v. Loan Center of Cal., Inc.*, No. CIV. 2:08-00177 WBS KJM, 2009 WL 5113506, at *4 (E.D. Cal. Dec. 18, 2009) (no actual reliance where "defendants can argue that plaintiff would not have behaved any differently had the omitted information been disclosed in the loan documents because she never read the loan documents or relied on them when she decided to enter the loan"); *Parrish v. NFL Players' Ass'n*, 534 F. Supp. 2d 1081,

21

1093-94 (N.D. Cal. 2007) (dismissing misrepresentation claims where named plaintiffs did not read, hear or rely on alleged misrepresentations); *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005) (plaintiffs failed to show causation when "none of the named Plaintiffs allege that they saw, read, or in any way relied on the advertisements [or] allege that they entered into the transaction *as a result* of those advertisements") (emphasis in original); *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1095 (1993) (plaintiffs who did not read the alleged misrepresentations could not have actually relied on them in their investment decisions).

Nor was plaintiffs' supposed reliance justified.  It is the law in California that an insured has a duty to read his or her policy.  *Hadland v. NN Investors Life Ins. Co.*, 24 Cal. App. 4th 1578, 1586-87 (1994).   The evidence will show that the named plaintiffs failed in that duty. Because each had an absolute obligation to read their annuity contracts, they are deemed as a matter of law to have knowledge of the terms and conditions of their contracts.  *See Hackethal v. Nat'l Cas. Co.*, 189 Cal. App. 3d 1102, 1112 (1987) ("It is a duty of the insured to read his policy.") (internal quotation marks omitted); *Malcom v. Farmers New World Life Ins. Co.*, 4 Cal. App. 4th 296, 304 n.6 (1992) (same).  Plaintiffs, "having failed to read the policy and having accepted it without objection, cannot be heard to complain it was not what they expected. *Their reliance on representations about what they were getting for their money was unjustified as a matter of law*."  *Hadland*, 24 Cal. App. 4th at 1589 (emphasis supplied); *see also* Cal. Ins. Code §§ 335 (presumed knowledge), 336 (waiver); Cal. Civ. Code §§ 1588 (ratification of voidable contract), 1589 (consent by acceptance of benefits), 1714 (contributory negligence), 3513 (waiver of advantage), 3515 (consent).

In addition, each class member signed an SOU, attesting that they read and understood the disclosures, the agent thoroughly explained the policy and answered any questions, they understood that only guaranteed values were warranted, they believed the policy was suitable for their long-term financial goals, and understood they could return it for a full refund for any reason within the "free look" period.  In issuing the policies, Allianz reasonably believed those representations to be true.  "Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is

22

not, in any litigation arising out of such statement or conduct, permitted to contradict it."  Cal. Evid. Code § 623.  The annuity contract between Allianz and the plaintiffs defines the terms of their respective agreements.  All provide that:  (1) Allianz retained the discretion to determine the crediting and payout rates, as long as the rates meet or exceed the contract guarantees; and (2) the premium bonus, which is immediately credited to the policy's annuitization value, but not the cash value, will be paid so long as the policyholder complies with the deferral and payout requirements.  By telling the policyholder what will be paid, the annuity contract also explains what will not be paid.

### 5.    A Reasonable Factfinder Cannot Draw An Inference Of Class-Wide Reliance.

California courts uniformly characterize a claim of class-wide reliance as a *rebuttable* inference.  *See, e.g.*, *Vasquez v. Superior Court*, 4 Cal. 3d 800 (1971) (stating that "if the trial court finds material misrepresentations were made to the class members, at least an inference of reliance would arise as to the entire class.  Defendants may, of course, introduce evidence in rebuttal."); *Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1295 (2002) (affirming a finding of class-wide reliance "subject to any rebuttal evidence Mass Mutual might offer"); *Caro v. Proctor & Gamble*, 18 Cal. App. 4th 644, 667 n.20 (1993) ("Defendants could also properly introduce evidence to rebut any inference or presumption of reliance arising from Caro's evidence of a material misrepresentation.").  Here, the facts and the law preclude applying an inference of class-wide justifiable reliance in this case.  Such an inference is flatly rebuted by *inter alia*:  (1) the testimony of the class representatives and absent class members who themselves deny relying on the purportedly uniform documents; (2) policyholder experience, which reveals that more than 80% of class members have not surrendered their policies[12]; and (3) uncontradicted agent testimony that they explained the terms and conditions of the policies at the time of purchase and again upon policy delivery.

---

[12] Statements of class members who responded to the Customer Assurance Program ("CAP") survey conducted by the Life Insurance and Market Research Association ("LIMRA") also rebut

*(footnote continued on next page)*

23

#### a.      Class Member Testimony Rebuts The Inference.

The evidence at trial will show that class members had differing expectations, goals, and reasons for purchasing the annuity contracts, as well as differing sources of information, including their insurance agent's oral presentations.  An inference of class-wide reliance is not proper where consumers are presented with an array of information influencing their purchase decisions.  "There are innumerable variations in the experiences and information possessed by consumers, in the factors that influence consumers' purchasing decisions, and in the manner by which consumers react to [surrender provision] warnings and the disclosure of [bonus and surrender] information.  The putative class will include persons who knew about the alleged hazard, yet purchased the [annuity] product anyway. . . . As a result, there is no 'typical' claim or experience, certainly not [plaintiffs'] experiences, that can be extrapolated classwide."  *Sanchez v. Wal-Mart Stores, Inc.*, No. Civ. 2:06-CV-02573-JAM-KJM, 2009 WL 1514435, at *3 (E.D. Cal. May 28, 2009) (denying class certification of UCL and CLRA claims, stating that the putative class "will include persons who knew about the alleged hazard, yet purchased the product anyway; people, like Plaintiff, who bought the Stroller because of its price, size, and other characteristics; and many others for whom the 'warning' would have made no difference in their purchase decision."); *see also Quezada*, 2009 WL 5113506, at *5-6 (inference of reliance rebutted where representative plaintiff did not read or ask questions about the alleged

_____

the inference of class-wide reliance, misunderstanding, or dissatisfaction.  Although the Court's in limine ruling is to exclude the LIMRA evidence, Allianz intends to make an offer of proof at trial.  LIMRA mailed its CAP survey to all new policyholders, inquiring about their annuity purchase.  Among the respondents were 174 class members who purchased their Allianz policies in 2006.  A large majority of class members responded that their agent reviewed with them their "financial status, tax status, investment objectives, and other pertinent information to determine whether this annuity is suitable;" that they "consider this annuity to be a long-term investment and do not intend to use these funds to meet current needs;" and their understanding that "surrender charges are imposed on premature full withdrawal."  Allianz will *not* offer the class member responses as proof that they in fact understood the terms and conditions of their policies, but as evidence that it is unwarranted and unfair to infer the opposite, that 12,115 policyholders do not understand and do not want their Allianz annuities.

misrepresentations in her loan documents); *Gregurek v. United of Omaha Life Ins. Co.*, No. CV 05-6067-GHK (FMOx), 2009 WL 4723137, at *7-8 (C.D. Cal. Nov. 10, 2009) (affirming denial of class certification of claim alleging uniform fraudulent statements because of variability in insurance agent's corrective oral presentations); *Kavruck v. Blue Cross of Cal.*, 108 Cal. App. 4th 773, 786 (2003) (same); *Caro*, 18 Cal. App. 4th at 668 (denying class certification for action alleging misrepresentations on orange juice labeling because representative plaintiff did not read the entire label, unlike other potential class members, and thus reliance issues would require highly individualized proof).

### b.    Policyholder Behavior Rebuts The Inference.

The Order granting class certification states that "an inference of reliance arises" when subsequent actions are "consistent with reliance upon the representation."  Order dated July 26, 2006, at 6.  Here, class member conduct is *inconsistent* with the misrepresentation alleged.  More than 80% of class members are utilizing their policies just as they are intended (and likely were explained) – as a long-term investment to provide a future income stream (as Mr. Iorio testified) or as a legacy for one's children or grandchildren (as Ms. Scheffer testified).  There is not an iota of evidence that any class member sought to immediately avail themselves of the 10% bonus, which would have been the certain effect if policyholders actually believed they could make a $10,000 premium payment on Monday and cash-out their annuity for $11,000 on Tuesday.

During the class period, 352 Californians aged 65 or older purchased one of the subject Allianz annuities but cancelled their policies during the statutory 30-day "free look" period.  But for exercising their right to examine an annuity policy and return it *for any reason* for a full refund within 30 days, these 352 individuals also would be class members.  Instead, upon delivery of their policies – and as contemplated by the senior disclosure statute that is the subject of plaintiffs' UCL claim – these 352 "senior citizens" reviewed the materials and determined the policy was not what they wanted, or was not as described by the agent, and they cancelled without cost or obligation.  Presumably, other "senior citizens" were equally capable to make that determination but, like the representative plaintiffs, did not read the materials.  And, presumably, other "senior citizens" undertook that review and determined that they *do*

25

understand the policy and that it is what they want.  To infer the contrary, based on the sketchy accounts of three policyholders, is unwarranted, speculative, and unfair to Allianz.

### c.   Class Member-Agent Interaction Rebuts The Inference.

A class-wide inference also is rebutted by the one-on-one interaction between 2,765 California-licensed insurance agents and the 12,115 class members to whom the agents sold the 15,688 policies at issue in this case.  The agents will testify that they explain the operation of the bonus and the policies' guaranteed values to prospective purchasers.  For example, Mr. Botkin will testify that he reviewed the Statement of Understanding with Mr. Iorio "line by line."  Mr. Marshall will testify that he presented Mr. Freifield with not one but two statements of understanding, which Mr. Freifield signed or initialed nearly 20 times attesting to his understanding.   Agents Seran and Hehner also will testify about their sales practices in explaining the terms and conditions of the Allianz annuities.

Similarly, plaintiffs' expert, Dr. Finegan, will testify that the only way to know what any class member understood or misunderstood about their policy is to ask them.  And he will testify that each class member's understanding will depend on what questions they asked and the quality of the answers provided by the agent.

### 6.   There Is No Injury Caused By A Misrepresentation.

What plaintiffs describe as "damages" are merely restatements of the terms and conditions of their policies.  Mr. Iorio describes his damages as "suffer[ing] a loss of his 10% bonus, a loss of interest on the bonus, and another 10% in further surrender penalties," after he "surrendered his Bonus Maxxx annuity in February of 2005" for cash.  Order dated July 26, 2006, at 3.  But those are not "damages" – they are the terms of his contract in the event he surrendered his policy for cash.

Ms. Scheffer's "damages" are that she "surrendered her BonusDex annuity and was upset over the high surrender charges she suffered."  Order dated July 26, 2006, at 3.  Again, Ms. Scheffer's "upset" is the consequence of terminating her BonusDex annuity, consequences that were fully disclosed in her brochure and SOU.

26

Mr. Freifield's injurious circumstances are described as having "made two partial surrenders and suffered a reduction in his 'Cash Value.'"  Order dated July 26, 2006, at 3.  Mr. Freifield took partial withdrawals – $1,282.05 on January 23, 2006 and $1,923.08 on April 12, 2006 – and his MasterDex 10 policy values were reduced accordingly.  *See Cirzoveto*, 625 F. Supp. 2d at 630 ("Because he cashed out at a time when even if the interest rates Plaintiff suggests should have been applied to the annuity had been applied, all Plaintiff was entitled to was the return of his premium – the very amount he received.  Thus, Plaintiff cannot establish the fourth element of his misrepresentation claims.").

An essential element of plaintiffs' fraud claims is proof of damages resulting from something misrepresented.  Because the "damages" plaintiffs "suffered" are nothing more than an articulation of the fully disclosed policy terms, they cannot show a misrepresentation.  Nor will Mr. Iorio, Ms. Scheffer, and other similarly-situated class members be able to establish that they suffered any damages resulting from the application of the expense recovery adjustment, because they surrendered their annuities before the adjustment could even be applied.  Mr. Freifield and the more than 80% of class members who have not surrendered will not be able to show damages upon annuitization, because applying the expense recovery adjustment can only result in their receiving more than the contract promises.  And no class member can prove damages resulting from alleged "yield manipulations" because all policyholders were at all times credited with interest that was at least, and usually more, than the policy guarantees.

### B.    Allianz Fully Performed The Annuity Contracts.

Under California law, a claim for breach of contract requires proof of:  "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff."  *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375, 1391 n.6 (2004).  Plaintiffs' surviving breach of contract claim (along with their UCL "unlawful" claim, and request for declaratory relief) purports to incorporate the senior notice statutes, Cal. Ins. Code §§ 10127.10(c) & 10127.13, into the contract.  Plaintiffs allege that any deviation from those statutes as they construe them is a breach of contract and renders the surrender provisions unenforceable – even if that construction is at odds with the California

27

Department of Insurance *and* the Department-approved modified language.  *See* Order dated July 8, 2008, at 27 & 29-30.  The claim fails both on the law and on an absence of proof.

> ### 1. A Breach Of Contract Claim Cannot Be Based On A Provision of Law That Is Not Within The Contract Itself.

A failure to perform is not a breach of contract unless the defendant is obligated to perform under a specific contractual provision.  A breach of the annuity contract cannot rest on the violation of a statutory provision that does not itself exist as a term within the contract.

A breach of contract theory nearly identical to the one asserted by plaintiffs in this case was rejected in *Richter v. Mutual of Omaha Insurance Co.*, a class action brought in the Central District of California, where the class was represented by the same counsel representing this class.  No. CV 05-498 ABC, 2007 WL 6723708 (C.D. Cal. Feb. 1, 2007), *aff'd*, 286 F. App'x 427 (9th Cir. 2008).  As here, the *Richter* plaintiffs asserted breach of insurance contracts based on the defendant's alleged failure to comply with notice requirements imposed by the Insurance Code.  "Defendant argue[d] that because Plaintiffs [could] not point to any specific provision of the insurance contracts that was breached, Plaintiffs [could] not make a case for breach of contract."  *Id.* at *4.  "Plaintiffs counter[ed] that any relevant insurance code sections are read into the contract – *i.e.*, that by violating any applicable provisions of the California Insurance Code, Defendant has also breached the contract."  *Id.*  Judge Collins, now Chief Judge of the Central District, rejected plaintiffs' theory, calling it "illogical" and "unsupported by the law:"

> While Plaintiffs are correct that under certain circumstances, certain provisions of the California Insurance Code are given effect as though they had been included in the insurance contract, it does not follow that a violation of these sections of the insurance code is a breach of contract.  In other words, Plaintiffs are correct that in certain circumstances, an insurance contract (or portion thereof) may be deemed unenforceable if in conflict with California law.  *See, e.g.*, *Julian v. Hartford Underwriters Ins. Co.*, 35 Cal. 4th 747, 754-55 (2005); *Interinsurance Exch. v. Ohio Casualty Ins. Co.*, 58 Cal. 2d 142 (1962).  However, *Plaintiffs' assertion that a violation of the California Insurance Code can therefore form the basis of a breach of contract claim is not only an illogical leap, but is also unsupported by the law.*  Plaintiffs have not cited, and the Court is not aware of any precedent stating that a violation of the California Insurance Code, in and of itself (*i.e.*, without a concurrent breach of a provision of the insurance contract) can form the basis for a breach of contract claim.

28

*Id.* (emphasis supplied).  The *Richter* court found that, absent allegations that the defendant breached a specific provision of the insurance contract, the class claims for breach of contract claim failed.  *Id.*  The Ninth Circuit affirmed.  286 F. App'x 427.

In *Credit Managers Association of Southern California v. Kennesaw Life & Accident Insurance Company*, the Ninth Circuit rejected a similar argument predicated on "the principle that insurance policies are governed by the statutory and decisional law in force at the time the policy is issued and such provisions are read into each policy issued thereunder and become part of the contract with full binding effect on each party."  809 F.2d 617, 623 (9th Cir. 1987).  The Ninth Circuit stated that this "principle is used by California courts to enforce policies of automobile liability insurance as though they were written in accordance with statute, even when the policies contain express language to the contrary."  *Id.*  The court noted that the plaintiff was "[e]mboldened by this example of legislative and judicial curtailment of contractual power," and rejected the argument that provisions of the California Insurance Code are automatically read into insurance contracts.  *Id.*  Thus, under *Credit Managers*, a breach of an insurance contract claim cannot be based upon a provision of law that is not itself within the contract.  *See Richter*, 2007 WL 6723708, at *4 (citing and characterizing the holding of *Credit Managers*).

Neither of the authorities upon which plaintiffs primarily rely – *Kotlar v. Hartford Fire Insurance Co.*, 83 Cal. App. 4th 1116 (2000), and *Galanty v. Paul Revere Life Insurance Co.*, 23 Cal. 4th 368 (2000) – are to the contrary and both decisions are readily distinguishable.  In *Kotlar*, the breach of contract claim rested on the alleged failure to perform an express provision of the insurance contract, not a statutory violation read into the contract.  The plaintiff landlord (Kotlar) brought an action for breach of contract against his insurer (Hartford) and an insurance broker for their failure to notify him of the cancellation of a commercial liability policy that the insurer had issued to the landlord and his tenant.  The landlord had received a certificate of insurance informing him he was named as an additional insured on the policy.  83 Cal. App. 4th at 1119.  "This same document contained a provision in which Hartford promised it would 'endeavor' to give Kotlar 30 days' advance notice of cancellation of the policy."  *Id.*  Hartford thus had an express *contractual* obligation to provide notice of any cancellation to Kotlar.

29

In *Galanty*, the California Supreme Court found an "unavoidable" conflict between a statutory incontestability clause barring the denial of benefits for certain preexisting conditions, and other policy provisions excluding coverage for any preexisting conditions. 23 Cal. 4th at 375-76.  Refusing to nullify the statutory incontestability clause, the *Galanty* court held:  "Policy language required by the Insurance Code takes precedence over other policy language."  *Id.* at 387.  However, the statute at issue in *Galanty* differs dramatically from the statute at issue in this case.  In *Galanty*, the "standard incontestability clause that the Insurance Code requires policies of disability insurance to include," *id.* at 371-72, imposes substantive obligations on the contracting parties, not merely notice-giving obligations.  The insurer breached the insurance contract by denying coverage for the insured's disability because the statutory incontestability clause was effectively a contract term.  In contrast, Insurance Code §§ 10127.10(c) and 10127.13 require giving *notice* of existing contract terms; they do not themselves act as effective contract terms.  The notice statutes cannot be treated as imposing another contract term, or other contract-like obligations.  As one commentator has noted, "the fact that a statute is deemed part of a contract of insurance does not affect the permissible scope or content of the policy, where the statute in question relates only to the form of the policy."  2 Lee R. Russ, *Couch on Insurance* § 19:1 (3d ed. 2008).  Thus, unlike the statute at issue in *Galanty*, the senior notice statutes cannot support the basis of a contract claim.

In sum, as the *Richter* court held, "certain provisions of the California Insurance Code are given effect as though they had been included in the insurance contract," but "it does not follow that a violation of these sections of the insurance code is a breach of contract."   2007 WL 6723708, at *4.

### 2.    Subsection 10127(b) Immunizes Allianz From Liability For Annuities In Effect On January 1, 2003.

All policies at issue in this litigation that were effective on January 1, 2003 must be construed as in compliance with section 10127.10(c).  The statute was amended in 2003 to provide that "policies subject to this section which are in effect on January 1, 2003, ***shall be construed to be in compliance with this section, and any provision in any policy which is in***

*conflict with this section shall be of no force or effect*."   Cal. Ins. Code § 10127.10(b) (emphasis supplied).   Thus, by operation of this amendment, all policies effective prior to January 1, 2003 are deemed to be in compliance with section 10127.10(c), regardless of the form of their senior notice.

### 3.   Allianz Complied With The Senior Notice Statutes, So The Surrender Provisions Remain Enforceable.

In addition to being unable to prove a breach of contract as a matter of law, plaintiffs are unable to prove a violation of the senior notice statute or that they are entitled to the windfall they demand.   Allianz effectively complied with the statutes, and with the California Department of Insurance's approval of its senior disclosure, thereby satisfying the statutes' reasonable objectives.

Where the obligation imposed by a statute relates solely to notice of contract terms, substantial compliance substitutes for strict compliance.

> Substantial compliance, as the phrase is used in the decisions, means *actual* compliance in respect to the substance essential to every reasonable objective of the statute.   But when there is such actual compliance as to all matters of substance then mere technical imperfections of form or variations in mode of expression . . . should not be given the stature of non-compliance and thereby transformed into a windfall for an unscrupulous and designing buyer.

*Stasher v. Harger-Haldeman*, 58 Cal. 2d 23, 29 (1962) (emphasis in original).   Literal compliance is not the test for a forfeiture of contract rights if there has been effective statutory compliance.   *See, e.g.*, *id.* (conditional sales contract substantially complied with notice requirements of a statute concerning the purchase of a vehicle as to the "cash price" and "down payment," notwithstanding error misstating the number of payments to be made); *Cal-Air Conditioning, Inc. v. Auburn Union Sch. Dist.*, 21 Cal. App. 4th 655, 670-71 (1993) (school district's decision to correct a general contractor's error in listing a subcontractor in a bid proposal even though the general contractor failed to give statutory two-day written notice to the subcontractor was not a ground to set aside the correction, since other communications with the subcontractor substantially complied with the objectives of the statutory notice).

31

The case of *McGreehan v. California State Automobile Association* illustrates that an insurance contract need not adopt an Insurance Code provision's specific language to conform. 235 Cal. App. 3d 997, 1004 (1992).   The insurance statute at issue in *McGreehan*, section 11580.2, mandated that automobile insurance contracts contain a provision to cover insureds against injury by an uninsured motorist.  *Id.*  Subdivision (h) of the statute stated that "any loss payable" under the terms of the uninsured motorist coverage may be reduced by workers' compensation benefits.  *Id.*  The offset clause in the plaintiff's policy used the phrase "any amounts payable."  *Id.* at 1004.  The *McGreehan* court found it "apparent" that the terms "any amounts payable" and "any loss payable" were virtually interchangeable and thus fulfilled the statute's objectives.  *Id.*  The court stated:  "***We know of no authority, and respondent cites none, which states that in order to be found in conformance with a given statute, an insurance policy must adopt the specific language of that legislation.***"  *Id.* (emphasis supplied).  As in *McGreehan*, plaintiffs here "place[] too much emphasis on the fact that the policy's language is not identical to that used in [the] Insurance Code."  *Id.*

The "reasonable objectives" of the senior notice statutes are to inform policyholders on the policy jacket or cover page that:  (1) they have purchased an annuity contract; (2) the contract should be reviewed carefully for limitations; (3) the contract can be cancelled within thirty days by returning it to the company or the selling agent; and (4) after thirty days, cancellation may result in a "substantial penalty."  The Allianz annuity contracts reasonably complied with each of these objectives.

Compliance with the reasonable objectives of the senior notice statutes is further evidenced by the Department's invitation to Allianz to "rewrite" the disclosure for the policies at issue, and the Department's acceptance of the revised disclosure without verbatim conformity to sections 10127.10(c) and 10127.13.   If the senior disclosure did not comply with the requirements of the Insurance Code, the Department was obliged to reject it, but it did not.  *See* Cal. Ins. Code § 12926 ("The commissioner shall require from every insurer a full compliance with all the provisions of this code.").  Indeed, the Department never has required the verbatim statutory language under the appropriate circumstances.  As early as 1993, just before the senior

32

notice statutes became effective, the Department issued Bulletin 93-7, which was "intended to clarify, but not alter the meaning of the statutes." Under the Department's authority to interpret and apply the Insurance Code, "[a]cceptable changes" to the statutory wording included:

> 1.     The disclosure statement required by Section 10127.10 may be modified to state that "You have purchased an annuity" where the contract is an annuity rather than life insurance.
>
> 2.     Section 10127.10(c) requires a disclosure statement disclosing all surrender charges. If you have a term plan or traditional permanent insurance, there may not be surrender charges. If this is the case, the words "KNOWN AS A SURRENDER CHARGE" may be deleted. However, all other penalties must be disclosed. Additionally, under some circumstances, surrender information is quite extensive and cannot be listed on the cover of the life insurance policy or annuity contract as required by Section 10127.13. In this event, the insurer must disclose in 12-point type on the cover sheet of the policy the location of the surrender information.

Cal. Ins. Dep't Bulletin 93-7 (1993).

Allianz's senior disclosures fulfill the reasonable expectations of the notice statutes, and plaintiffs are not entitled to a windfall from Department-approved modified language.

### 4.     The Senior Notice Statutes Should Not Be Interpreted To Forfeit Allianz's Contract Rights.

The Court also should not read penalties into the senior notice statutes where none were written by the Legislature, and where judicial implication of such penalties would lead to disproportionately harsh results. In the absence of any legislative instruction that a party forfeits its contract rights by virtue of a statutory violation, judicial forfeiture of such rights is contrary to law.

"Unless a statute expressly deprives the parties of their right to sue on a contract made in violation of that statute, the right to recover on the contract will not be denied, if denial of recovery would be out of proportion to the demands of public policy." *Residential Capital, LLC v. Cal-Western Reconveyance Corp.*, 108 Cal. App. 4th 807, 814-15 (2003). "Thus, unless no other conclusion is possible from the words of a statute, it should not be held to make agreements contravening it totally void." *Id.* at 815 (internal quotation marks omitted). Before holding a contract term unenforceable,

33

courts will consider the importance of any policy as reflected in legislation or judicial decision and the probability that the policy will be furthered by declaring a term unenforceable, as well as the extent to which the parties engaged in misconduct, its seriousness and deliberateness, and the degree of connection between the misconduct and the particular term at issue. These factors are then explicitly required to be balanced against the expectation of the parties, whether a forfeiture will result from a declaration of unenforceability, and finally, the public interest, if any, in enforcing that term.

*Id.* at 816; *see also Homestead Supplies, Inc. v. Executive Life Ins. Co.*, 81 Cal. App. 3d 978, 989 (1978) (stating that the "effect of illegality on the enforceability of an agreement depends on the facts and circumstances of the particular case including the kind and degree of illegality involved, the public policy or policies to be served, whether those public policies will best be served by enforcing the agreement or denying enforcement and the relative culpability and equities of the parties").

In many cases, "'effective deterrence is best realized by enforcing the [contract term] rather than leaving [the party seeking to avoid the term] in possession of the benefit; or the forfeiture resulting from unenforceability is disproportionately harsh considering the nature of the illegality.'" *Homestead Supplies*, 81 Cal. App. 3d at 990 (quoting *Lewis & Queen v. N.M. Ball Sons*, 48 Cal. 2d 141, 151 (1957)). Indeed, California caselaw is replete with decisions enforcing contract terms notwithstanding actual non-compliance with a statute.[13] "'In each such

---

[13] *See, e.g.*, *MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co.*, 36 Cal. 4th 412, 436-44 (2005) (subcontractor was not barred from recovering for work because it was unlicensed under regulatory statutes when it executed contract); *Arya Group, Inc. v. Cher*, 77 Cal. App. 4th 610, 615-18 (2000) (violation of statutory requirement that construction contracts for single-family dwellings must be evidenced in writing did not render contract unenforceable); *State Farm Fire & Cas. Co. v. Superior Court*, 210 Cal. App. 3d 604, 610-11 (1989) (even if limitation provision in insurance policies was inconsistent with limitation authorized by statute for inclusion in standard form fire insurance policy, the appropriate remedy was to enforce the policy provision consistent with the governing statute rather than void it); *Gonzales v. Concord Gardens Mobile Home Park, Ltd.*, 90 Cal. App. 3d 871, 873-74 (1979) (contractor's failure to give property owner the statutorily-prescribed notice describing lien law provisions did not deprive the contractor of his right to enforce the contract); *Felix v. Zlotoff*, 90 Cal. App. 3d 155, 162-63 (1979) (licensed building designer was not precluded from enforcing parol contract even
*(footnote continued on next page)*

34

case, how the aims of policy can best be achieved depends on the kind of illegality and the particular facts involved.'"  *Homestead Supplies*, 81 Cal. App. 3d at 990 (quoting *Lewis & Queen*, 48 Cal. 2d at 151).  Applying these principles to this case, there are a number of reasons the senior notice statutes should not be interpreted to require forfeiture of Allianz's right to enforce the annuity contracts' surrender provisions.

First, there is no manifested legislative intent to render the surrender provisions unenforceable.  The senior notice statutes do not contain an express penalty of any kind, nor must a penalty necessarily be implied in the statutes.  California courts "'will not impose penalties for non-compliance with statutory provisions in addition to those that are provided expressly or by necessary implication.'"  *Gen. Motors Acceptance Corp. v. Kyle*, 54 Cal. 2d 101, 111 (1960) (quoting *City Lincoln-Mercury Co. v. Lindsey*, 52 Cal. 2d 267, 276 (1959)); *Medina v. Safe-Guard Prods. Int'l, Inc.*, 164 Cal. App. 4th 105, 110 (2008) (same).  "In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted[.]"  Cal. Civ. Proc. Code § 1858.

Further, construing sections 10127.10(c) and 10127.13 in concert with the surrounding sections of the Insurance Code, it is evident that no forfeiture remedy was intended.  The Legislature has shown that it is perfectly capable of drafting a statute that voids or renders unenforceable the provisions of an insurance contract as contrary to law, where that is the Legislature's intent.  *See*, *e.g.*, Cal. Ins. Code §§ 10120 (declaring provisions excluding, reducing or limiting sterilization operation benefits "void and of no effect"), 10127.15 (declaring provisions contained in a policy of disability insurance or a self-insured employee welfare benefit plan for a reduction of loss of time benefits during a benefit period because of an increase in Social Security benefits "null and void"), 10133.65 (declaring provisions permitting material

though he did not comply with a statute requiring persons preparing design plans to sign contracts for such services and to note their registration number thereon).

35

changes to health insurer/health provider contracts "void, unlawful, and unenforceable" if they do not allow for statutory notice requirements), 10137 (declaring structured settlement payment transfers void if certain statutory notice requirements are not fulfilled), 10138 (enumerating a dozen different provisions that will render a transfer agreement "void and unenforceable"). The Legislature also has specifically approved the minimum nonforfeiture amounts for Allianz's annuity contracts. *See* Ins. Code §§ 10168.2 & 10168.25. If the Legislature intended for a violation of the senior notice statutes to invalidate an annuity's surrender provisions, it could have and would have said so.

Second, "the realities of the situation must be considered." *Felix v. Zlotoff*, 90 Cal. App. 3d 155, 162 (1979) (internal quotation marks omitted). The "extent to which the parties engaged in misconduct," and "its seriousness and deliberateness" are considerations relevant to whether the surrender provisions are unenforceable. *Residential Capital*, 108 Cal. App. 4th at 816. Here, the legislative purpose of sections 10127.10(c) and 10127.13 is to educate policyholders, not enrich them or to punish insurers. In every case, Allianz's senior disclosures were located on the policy cover page and clearly informed the policyholder of the "substantial penalty" if the contract is surrendered after 30 days. The Department of Insurance not only accepted the content and form of the policies generally, it specifically approved a modified senior disclosure proposed by Allianz. In contrast to the statutory language, which generally advises that the penalty for surrender may be substantial, the Allianz disclosure goes further, expressly advising that the "penalty will be in effect for the life of the contract." Moreover, plaintiffs received annuity contracts and disclosure materials, such as the SOUs, brochures, and contract summaries, which informed them in detail about the terms and conditions of their annuities, including that, "for the life of the contract," the cash value will be paid upon surrender. Plaintiffs chose not to read these documents generally, or the senior notice in particular.

Third, precluding Allianz from enforcing the annuity contract surrender provisions is grossly inequitable not only to the company, but also to its policyholders. Voiding the surrender provisions exposes Allianz to massive financial liability, without having intentionally disobeyed the law or breaching any contract term. Nothing compels the unjust result sought by plaintiffs

36

here – "the courts should not be so enamored with the Latin phrase '*in pari delicto*' that they blindly extend the rule to every case where illegality appears somewhere in the transaction." *Felix*, 90 Cal. App. 3d at 162.

In addition, all of Allianz's policyholders will be financially injured by rendering the surrender provisions unenforceable.  At trial, Allianz's actuaries will explain that the difference in the cash and annuitization values encourages persistency of the annuity contracts, which allows Allianz to credit higher non-guaranteed interest and payout rates for all of its policyholders, resulting in greater accumulations over a longer period of time and greater retirement income for annuitants, which is the primary reason for annuities.  Voiding the surrender provisions will harm policyholders who do not surrender their contracts, or who make only penalty-exempted withdrawals.  At the same time, declaring the surrender provisions unenforceable would incentivize class members to surrender, giving them an enormous windfall at the expense of non-surrendering and non-class member policyholders.

Depriving Allianz of the surrender provisions, "where the Legislature has not seen fit to do so, is to decree a forfeiture, to authorize unjust enrichment without any counterbalancing discernable public policy which justifies such drastic medicine.  Forfeitures are viewed with legislative and judicial disfavor." *Felix*, 90 Cal. App. 3d at 163.

### 5.    A Supposed Violation Of The Senior Notice Statutes Did Not Cause Plaintiffs Any Injury.

In any event, the alleged deficiencies in the senior disclosures did not cause plaintiffs any injury.  Causation is a necessary element of any breach of contract claim.  "'The test for causation in a breach of contract action is whether the breach was a substantial factor in causing the damages.  Causation of damages in contract cases, as in tort cases, requires that the damages be proximately caused by the defendant's breach, and that their causal occurrence be at least reasonably certain.  A proximate cause of loss or damage is something that is a substantial factor in bringing about that loss or damage.'"  *Haley v. Casa del Rey Homeowners Ass'n*, 153 Cal. App. 4th 863, 871 (2007) (quoting *US Ecology, Inc. v. California*, 129 Cal. App. 4th 887, 909 (2005)).  It is undisputed that Allianz provided notice of the "substantial penalty" that applies

37

upon surrender, on the policy's cover page, within the contract itself, and in myriad materials provided at the point of sale.[14]   Allianz's supposed failure to identify the *location* of the details of the surrender provisions did not result in the plaintiffs being unaware of the penalties themselves. *See Brown v. Bank of America*, 457 F. Supp. 2d 82, 89 (D. Mass. 2006) (granting summary judgment for UCL defendant because deficient notice did not cause loss where customer was made aware of charge elsewhere).   Plaintiffs were unaware because they did not read the disclosures, making any claimed deficiency in the working of the notice both immaterial and harmless.   And, as many of the absent class member deponents testified, had they read the Allianz senior notice, they would have understood it.   The "causal connection is broken when a complaining party would suffer the same harm whether or not a defendant complied with the law.   Here, the lack of causation is illustrated by the fact the [plaintiffs] would suffer the same injury regardless of whether [Allianz] complied with or violated" the senior notice statutes. *Daro v. Superior Court*, 151 Cal. App. 4th 1079, 1099 (2007).

**6.     Class Members Who Have Not Incurred Surrender-Related Penalties Have No Breach Of Contract Claim.**

The Court has held that all class members have a declaratory relief claim for breach of contract; however, contract damages only may be awarded to those whose claims have accrued, *i.e.*, class members who actually paid a penalty in connection with a full or partial surrender.   *See* Order dated Feb. 23, 2009, at 7; Order dated July 8, 2008, at 7-8.   Unless the surrender provisions have been applied by Allianz against a class member, there has been no breach.   Since

---

[14] For example, the Court found:

> The contract summary stated, "the single premium or premiums paid during the first policy year receive a 10% bonus credited to the annuitization value." Elsewhere, the actual policy places the descriptions of annuitization value and cash value in adjacent columns.   The description of "annuitization value" includes the crediting of the "Annuitization Bonus Percentage," but nothing is said about a bonus percentage in the description of "cash value."

Order dated July 8, 2008, at 11.

only a fraction of class members have fully surrendered their annuities or incurred a penalty for a partial withdrawal, only a fraction of the class could have a viable breach of contract claim.

### C. Plaintiffs Cannot Prove Their Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing.

The claim for breach of the implied covenant of good faith and fair dealing fails on the merits for at least two reasons – there is no valid underlying contract claim and Allianz enforced the contract terms as written and disclosed.

#### 1. Without An Underlying Breach Of Contract, A Claim For Breach Of The Implied Covenants Is Not Viable.

Because the evidence does not support a breach of the annuity contract based on the senior disclosures or otherwise, the absence of any viable breach of contract claim necessarily defeats the implied covenant claim, whether plaintiffs elect to proceed in contract or in tort. *See*, *e.g.*, *1231 Euclid Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 135 Cal. App. 4th 1008, 1021 (2006) ("As HOA could state no cause of action for breach of contract, it could not assert a claim for bad faith."); *Bionghi v. Metro. Water Dist. of S. Cal.*, 70 Cal. App. 4th 1358, 1370 (1999); *San Diego Housing Comm'n v. Indus. Indem. Co.*, 68 Cal. App. 4th 526, 544 (1998) ("Where a breach of contract cannot be shown, there is no basis for a finding of breach of the covenant [of good faith and fair dealing.]").

#### 2. Allianz Had Proper Cause To Enforce The Contract Provisions.

California law is settled that only the *unreasonable* withholding of insurance benefits gives rise to a cause of action for breach of the implied covenant of good faith and fair dealing. *See Opsal v. United Servs. Auto. Ass'n*, 2 Cal. App. 4th 1197, 1205 (1991). Before an insurer can be found to have violated the implied covenant by withholding benefits, it must be shown to have done so "without proper cause." *Id.*; *Cal. Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal. App. 3d 1, 54-55 (1985). If an insurer has proper cause for withholding benefits, its doing so is not a breach of the covenant of good faith and fair dealing, even if it turns out that the benefits were in fact owed. *See Cal. Shoppers*, 175 Cal. App. 3d at 55. Thus, if there is a genuine issue of liability to an insured, as a matter of law, liability for breach of the implied covenant cannot be imposed. *See*, *e.g.*, *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001); *Opsal*, 2 Cal.

App. 4th at 1205-06.  In light of Department's review and acceptance of the policy forms, express approval of modified senior disclosure language for the Allianz policies at issue, the full disclosures and explanations of the surrender provisions contained in the annuity contracts and related documents (*e.g.*, SOUs, brochures, contract summaries), and the "illogical" legal theory plaintiffs construct (*Richter*, 2007 WL 6723708, at *4), Allianz did not act unreasonably or in bad faith by applying the surrender provisions in accordance with the contract terms.[15]

## VI.  EQUITABLE CAUSES OF ACTION

The evidence at trial also will show that plaintiffs cannot prove by a preponderance of evidence the essential elements of their equitable claims (violation of the UCL's "fraudulent" and "unlawful" prongs).  Each cause of action suffers not only from a lack of proof, but also because plaintiffs' claims are not viable as a matter of law.  Additionally, at no time did plaintiffs assert a claim under the UCL's "unfair" prong, and they may not assert it now.

### A.    Plaintiffs Cannot Prove Their UCL "Fraudulent" Prong Claim.

#### 1.    There Is Nothing Misleading About The Bonus Deferred Annuities.

Under the "reasonable consumer" standard, plaintiffs are required to show not merely that statements *could* mislead the public, but that they were *likely* to mislead the public. *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995); *Haskell v. Time, Inc.*, 965 F. Supp. 1398, 1406-07 (E.D. Cal. 1997).  Plaintiffs here will be unable to meet this burden.

The deficiencies of plaintiffs' common law fraud claim also are fatal to their fraud-based UCL claim.  Regarding the "immediate" issue, plaintiffs cannot prove that they were misled into purchasing an annuity based on the allegedly false promise that the premium bonus is not immediately available in cash.  The policy documents, including the brochures, SOUs, contract

---

[15] Because the Court dismissed the breach of contract claim to the extent it overlapped with the fraud claim, plaintiffs may not predicate their claim for breach of the implied covenant of good faith and fair dealing on the allegations and circumstances relevant to the fraud claim.  The implied covenant claim must derive from the alleged violations of the senior notice statutes as an alleged breach of contract.

CASE NO.:  05 CV 0633 JLS (CAB)

summaries, and contracts, are not misleading.  They explain that the bonus is immediately applied to the annuitization value, which includes the premium plus bonus and interest credited to that value, and is paid after the policy remains in deferral for at least five years and payout is taken over a period of at least 10 years.  As for the so-called "bonus" issue, the evidence will show that Allianz does not "recoup" the bonus through yield manipulation, the expense recovery adjustment, or otherwise.  Plaintiffs do not dispute, and the trier of fact will find, that class members always received *at least* what was promised to them.

*Lambros v. Metropolitan Life Insurance Co.*, 111 Cal. App. 4th 43 (2003), is instructive. In that case, the insured plaintiff brought a UCL action because the defendant life insurance company did not refund any portion of premium after surrender of the policy.  The plaintiff alleged that the defendant engaged in deceptive business practices, relying on "the fact that the cash surrender statement includes the information that the policy does not provide for premium refunds, and the fact that the policy does not state, in those precise words, that premiums will not be refunded on cash surrender."  *Id.* at 50.  The plaintiff argued that these facts showed a pattern of fraud and deception, alleging that the defendant knew that it should refund premiums, and then concealed its practice.  *Id.*  The *Lambros* court disagreed, finding that the policy

> does not include the words 'premiums will not be refunded,' but it does set forth the method of calculation of the cash surrender value, thus informing the policyholder that premiums will not be refunded.  The fact that the statement explaining the cash value includes certain information does not logically imply that [defendant] fraudulently concealed the information before it issued the [refund] check.

*Id.* (emphasis supplied).[16]  Here, not only do the Allianz annuity contracts "set forth the method of calculation of the cash surrender value," the sales materials (*e.g.*, brochures and SOUs) also

---

[16] *See also Berryman v. Merit Prop. Mgmt.*, 152 Cal. App. 4th 1544, 1557 (2007) (finding that not disclosing detailed listings or breakdowns of specific escrow charges could not be deceptive under UCL); *Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 484 (2006) (rejecting UCL claim because, "[i]n light of Staples' clear disclosure of the actual price it would charge its customers for declared value coverage prior to any purchase," not disclosing "whether the amount charged includes a 'surcharge' or profit for Staples was not misleading or deceptive"); *Searle v.*

*(footnote continued on next page)*

41

describe the annuitization and cash values, the deferral and payout periods, the current and guaranteed rates, and expressly state that the bonus is "forfeited" if the policy is surrendered.

### 2.  The Alleged Misrepresentations Did Not Cause Plaintiffs Any Injury.

As amended by Proposition 64 (codified in part at Cal. Bus. & Prof. Code § 17204), and recently confirmed by the California Supreme Court in *In re Tobacco II Cases*, "a class representative proceeding on a claim of misrepresentation as the basis of his or her UCL action *must demonstrate actual reliance* on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions." 46 Cal. 4th 298, 306 (2009) (emphasis supplied);[17] *see also Quezada*, 2009 WL 5113506, at *4-5 ("The California Supreme Court has interpreted Proposition 64 as imposing an 'actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong.'") (quoting *Tobacco II*, 46 Cal. 4th at 326); *Princess Cruise Lines, Ltd. v.*

---

*Wyndham Int'l, Inc.*, 102 Cal. App. 4th 1327, 1334-35 (2002) (not disclosing that hotel room service charge was used to pay servers' salaries was not deceptive because patrons are given "clear notice" of the charge and "the freedom to decline service"); *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1178 (2002) ("That the deed of trust does not expressly state that property inspection fees may be charged to the borrower after default does not preclude Countrywide from doing so when the deed of trust unambiguously permits the lender to charge the delinquent borrower for 'whatever' is necessary to protect the property's value, 'including' attorney fees and entering the property to make repairs, and puts the borrower on notice that property inspections may be performed. The deed of trust is not deceptive or likely to deceive borrowers with regard to property inspection fees.") (internal citation omitted).

[17] The California Supreme Court's ruling in *Tobacco II* does not hold that liability to a class can be established without proof of specific representations class members saw or heard. The *Tobacco II* court ruled that a plaintiff alleging a UCL "fraudulent" prong claim need not "necessarily plead and prove individualized reliance on specific misrepresentations or false statements" where misrepresentations "were part of an extensive and long-term advertising campaign." 46 Cal. 4th at 328. The factual basis for this ruling is absent here because the alleged misrepresentations were not made through an "extensive and long-term advertising campaign" that "spanned decades," *id.* at 307. Rather, the allegedly misleading statements were contained in a single document – the consumer brochure – that was hand delivered to each plaintiff during a face-to-face meeting with his or her agent. In fact, because the annuities at issue are sold only in face-to-face meetings with agents, plaintiffs could not have been exposed to the alleged misrepresentations at any other point in time or place.

42

*Superior Court*, 179 Cal. App. 4th 36 (2009) (after *Tobacco II*, UCL plaintiffs must prove they actually relied on false statements).  Plaintiffs in this case are unable to prove actual reliance because they testified that they did not read, remember, or rely on the allegedly deceptive written materials referenced in the Complaint.  *See*, *e.g.*, *Parrish*, 534 F. Supp. 2d at 1093-94 (dismissing misrepresentation claims where named plaintiffs did not read, hear or rely on alleged misrepresentations); *Laster*, 407 F. Supp. 2d at 1194 (finding plaintiffs failed to show there was causation when "none of the named Plaintiffs allege that they saw, read, or in any way relied on the advertisements [or] allege that they entered into the transaction *as a result* of those advertisements") (emphasis in original); *Mirkin*, 5 Cal. 4th at 1095 (holding that plaintiffs who did not read the alleged misrepresentations could not have relied on them in their investment decisions).  The "causal connection is broken when a complaining party would suffer the same harm whether or not a defendant complied with the law."  *Daro*, 151 Cal. App. 4th at 1099.

Plaintiffs' testimony is that they did not understand their policies and regret purchasing them.  Plaintiffs never have claimed that their misunderstanding is because they read and relied on the Allianz brochure, the SOU they signed, the contract summary, or the policy itself.

### 3.  The UCL Does Not Authorize Relief For Class Members Who Were Not Exposed To Allegedly Wrongful Business Practices.

Class-wide proof of causation and reliance is impossible in this UCL action, even after the California Supreme Court's ruling in *Tobacco II*, as demonstrated by *Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966 (2009).  In *Cohen*, a satellite television subscriber filed a class action alleging the defendant had disseminated false advertising to induce him and others to purchase more expensive "high definition" or "HD" services, in violation of the UCL and other laws.  The court held the UCL does not authorize "an award for injunctive relief and/or restitution on behalf of a consumer who was never exposed in any way to an allegedly wrongful business practice."  *Id.* at 980.  In affirming the denial of class certification, the *Cohen* court stated:

> The record supports the trial court's finding that common issue of fact do not predominate over the proposed class because the class would include subscribers who never saw DIRECTV advertisements or representations of any kind before deciding to purchase the company's HD services, and subscribers who only saw and/or relied upon advertisements that contained no mention of technical terms

43

regarding bandwidth or pixels, and subscribers who purchased DIRECTV HD primarily based on word of mouth or because they saw DIRECTV's HD in a store or at a friend's or family member's home. In short, common issues of fact do not predominate over Cohen's proposed class because the members of the class stand in a myriad of different positions insofar as the essential allegation in the complaint is concerned, namely, that DIRECTV violated the CLRA and the UCL by inducing subscribers to purchase HD services with false advertising.

178 Cal. App. 4th at 979; *see also Kaldenbach v. Mut. of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 847-50 (2009) (affirming the denial of class certification of a UCL claim, distinguishing *Tobacco II*, and holding that the individualized question of whether a class member was exposed to an alleged unfair business practice precluded class certification); *Akkerman v. Mecta Corp.*, 152 Cal. App. 4th 1094, 1101-02 (2007) (affirming that individualized issues predominated as to UCL restitution claim, including whether class members were exposed to an allegedly deceptive brochure and relied on it, whether they instead acted on their physician's independent explanations, and whether they would have sought procedure regardless).

Nor do common issues predominate across the instant class because, as defined, it includes persons who never saw Allianz representations before deciding to purchase the annuities; or who understood how the annuities operate based on their own knowledge or experience, the explanation provided by their agents, advice received from family, friends, or other professional advisors; or who purchased Allianz annuities for reasons unrelated to the bonus. *See* Section V.A.4, *supra*. Where, as here, the individual class members stand in myriad different positions, awarding class-wide UCL relief is improper.

The *Tobacco II* decision is not to the contrary, as it relates solely to the threshold question of statutory standing, not the question of predominance of common issues. The *Cohen* court explained:

*Tobacco II* held that, *for purposes of standing* in context of the class certification issue in a "false advertising" case involving the UCL, the class members need not be assessed for the element of reliance. Or, in other words, class certification may not be defeated *on the ground of lack of standing* upon a showing that class members did not rely on false advertising. In short, *Tobacco II* essentially ruled that, *for purposes of standing*, as long as a single plaintiff is able to establish that he or she relied on a defendant's false advertising, a multitude of class members will also *have standing*, regardless of whether any of those class members have in

44

any way relied upon the defendant's allegedly improper conduct.   In the contextual setting presented by Cohen's present case, we find *Tobacco II* to be irrelevant because the issue of "standing" simply is not the same thing as the issue of "commonality."

178 Cal. App. 4th at 981 (emphases in original).

### 4.   Relief May Not Be Granted To Class Members Whose Claims Have Not Accrued Or Who Have Sustained No Injury.

If a class member has not suffered remediable injury – for example, when Allianz has not "actually enforced th[e] surrender penalties against [the class member], *i.e.*, when [the class member] surrendered his [or her] policy," Order dated July 8, 2008, at 14, then the Court may not order any restitutionary or injunctive relief. [18]

"Courts have no power to presume and remediate harm that has not been established." *Lewis v. Casey*, 518 U.S. 343, 360 n.7 (1996) (holding that the mere existence of a class covering prisoners throughout a prison system is not enough to justify systemwide relief, and that it is necessary to demonstrate that the class members were injured by the particular matters covered). Thus, where named plaintiffs have "demonstrated that they have Article III standing to pursue th[e] litigation," the questions "then become:  (1) whether they have also established entitlement to equitable relief; and (2) if so, whether the scope of the relief granted is commensurate with the showing of injury suffered by the class." *Armstrong v. Davis*, 275 F.3d 849, 881 (9th Cir. 2001) (Berzon, J., concurring).   This consideration of absent class members' circumstances once standing and entitlement to equitable relief by the *named* plaintiffs is established is commensurate with the general rule that once a court properly certifies a class action, "the class of unnamed persons described in the certification acquire[s] a legal status separate from the interest asserted by the [named plaintiffs]." *Sosna v. Iowa*, 419 U.S. 393, 399 (1975).

---

[18] The Court held that this claim has not accrued until class members have "'lost money or property' as a result of Allianz's alleged noncompliance with the senior disclosures," *i.e.*, when a policy is surrendered and allegedly noncompliant surrender penalties are enforced.  Order dated July 8, 2008, at 14.  Because the UCL "unlawful" prong claim is not ripe until a surrender penalty has been imposed, only those class members who incurred such a penalty, and did so after March 30, 2001, may seek monetary damages.

45

Nothing in *Tobacco II* changes this limitation on class relief.  The California Supreme Court narrowly held that "Proposition 64 was not intended to, and does not, impose section 17204's standing requirements on absent class members in a UCL class action where class requirements have otherwise been found to exist."  46 Cal. 4th at 324.  Although absent class members need not prove the statutory standing requirements of injury-in-fact and loss of money and property, the *Tobacco II* court did not hold that uninjured class members may receive equitable relief.  Indeed, to do so would turn well-established remedial principles on their head.  "The object of restitution" under the UCL is "to restore the *status quo* by returning to the plaintiff funds in which he or she has an ownership interest."  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003).  Restitution only may be granted "as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."  Cal. Bus. & Prof. Code § 17203.  If class members have not suffered an injury, then there is nothing to restore to them.

Further, reading *Tobacco II* to allow granting equitable remedies to uninjured class members would be inconsistent with the jurisdictional principles outlined above.  *See*, *e.g.*, *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (affirming denial of class certification when, among other reasons, many uninjured absent class members lacked standing to sue defendant); *Burdick v. Union Sec. Ins. Co.*, No. CV 07-4028 ABC (JCX), 2009 WL 4798873, at *3-4 (C.D. Cal. Dec. 9, 2009) (holding that all absent UCL class members must have standing to pursue their own claims; that class representative possessed standing was insufficient).  As the Ninth Circuit stated in an analogous context, "allowing gross damages by treating unsubstantiated claims of class members collectively significantly alters substantive rights" and "is clearly prohibited by the Enabling Act that authorizes the Supreme Court to promulgate the Federal Rules of Civil Procedure."  *In re Hotel Tel. Charges*, 500 F.2d 86, 90 (9th Cir. 1974).  "Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge or modify any substantive right,' 28 U.S.C. § 2072(b)."  *Amchem Prods. Inc., v. Windsor*, 521 U.S. 591, 612-13 (1997).

46

1

**B.      Plaintiffs Cannot Prove Their UCL "Unlawful" Prong Claim.**

2

Plaintiffs' UCL "unlawful" prong claim mirrors their breach of contract claim and fails

3

for the same reasons.  *See* section V.B., *supra*.  The claim arises from the alleged violation of the

4

senior notice statutes, Cal. Ins. Code §§ 10127.10(c) & 10127.13.  Among other things, Allianz

5

fulfilled the legislative purposes of the senior notice statutes, and its modified disclosure was

6

approved by the California Department of Insurance.  Further, plaintiffs were not injured by any

7

supposed violation.  The claimed error in identifying the location of the details of the surrender

8

provisions for a subset of class members did not cause those class members to be unaware of the

9

penalties.  *See Brown*, 457 F. Supp. 2d at 89 (granting summary judgment for defendant on UCL

10

claim because deficient notice did not cause loss where customer was made aware of charge

11

elsewhere); *Daro*, 151 Cal. App. 4th at 1099.

12

**C.      Plaintiffs Do Not Have A Claim Based On The UCL "Unfairness" Prong.**

13

In their Memorandum of Contentions of Fact and Law (Doc. No. 270), plaintiffs asserted

14

for the first time that the "unfairness" prong also is part of their UCL claim.  Plaintiffs are

15

mistaken.

16

The factual and statutory predicates for a UCL claim based upon "unfairness" were not

17

pled in the Complaint – only the "fraud" and "unlawful" prongs.  Moreover, the Court did not

18

certify a UCL class claim based upon "unfairness."  To the contrary, Judge Gonzalez identified

19

the three varieties of "unfair competition," but specifically determined that "[i]n the present case,

20

plaintiffs purport to bring their UCL claim under the 'unlawful' and 'fraudulent' prongs."  Order

21

dated July 26, 2006, at 7.[19]  Until their Memorandum of Contentions of Fact and Law, plaintiffs

22

never contended that a UCL "unfairness" claim was alleged or certified.  Significantly, their

23

_____

24

[19] Even if Judge Gonzalez's silence as to a UCL "unfairness" class claim could somehow be

25

interpreted as certifying that claim, silence would not satisfy the requirements of Rule 23.  *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 315-20 (3d Cir. 2008) (class certification

26

order must affirmatively identify each certified claim and the reasons it was certified); *Valentino*

27

*v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996) (same).

28

opposition to the motion to decertify the class discusses only the "unlawful" and "fraudulent" prongs. *See* Doc. No. 210, at 4 & 12; *see also In re Vaccine Cases*, 134 Cal. App. 4th 438, 457 (2005) (holding that where a plaintiff alleges violations of a statute only, the "cause of action alleges unfair competition that is 'unlawful' rather than 'unfair' or 'deceptive'").

And even if UCL "unfairness" had at one time been a part of this case, plaintiffs abandoned the claim. Allianz moved for summary judgment as to each cause of action in its entirety and with prejudice." Plaintiffs' opposition to the summary judgment motion classified their UCL claim under two telling subheadings: "The Fraudulent Prong" and "The Unlawful Prong." Doc. No. 194, at 32-33. Plaintiffs did *not* raise "unfairness" anywhere in their opposition. A plaintiff abandons claims by not raising them in opposition to a defendant's summary judgment motion, even if the motion does not specifically reference the issue. *Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) (finding plaintiff abandoned claim by failing to raise the issue in opposition to summary judgment even though summary judgment motion did not reference that issue). The Court relied on plaintiffs' characterization of their UCL claims. In ruling on Allianz's motion for summary judgment, the Court determined that the UCL claim "*has two parts*: a fraudulent prong, which essentially alleges the same facts as his common-law fraud claim, and an unlawful prong, which essentially alleges the same facts as the second part of plaintiffs' breach of contract claim, *i.e.*, violations of the senior notice laws concerning proper disclosure of surrender penalties." Order dated July 8, 2008, at 13 (emphasis supplied). The Order made no reference to the UCL "unfairness" prong.

In short, plaintiffs' eleventh hour attempt to introduce a new claim is improper and futile, since it is apparent that: (1) the issue of UCL "unfairness" has never been part of this case; (2) the Court did not certify a UCL class claim based on "unfairness"; and (3) even if "unfairness" ever were a part of this case, that claim was long ago abandoned.

48

CASE NO.: 05 CV 0633 JLS (CAB)

1    **VII.   AFFIRMATIVE DEFENSES**

2         **A.      Statutes of Limitations.**

3              **1.      Three-Year Period For Common Law Fraud Claims.**

4         "The statute of limitations for fraud is three years, but 'is not deemed to have accrued

5    until the discovery, by the aggrieved party, of the facts constituting the fraud.'"  Order dated July

6    8, 2008, at 10 (quoting Cal. Civ. Proc. Code § 338(d)).  "Here, the term 'discovery' refers to the

7    time 'not when the plaintiff became aware of the specific wrong alleged, but when the plaintiff

8    suspected or should have suspected that an injury was caused by wrongdoing.'"  *Id.* (quoting

9    *Kline v. Turner*, 87 Cal. App. 4th 1369, 1374 (2001)).  "The statute begins to run 'when the

10   plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has

11   the opportunity to obtain knowledge from sources open to his investigation.'"  *Id.* (quoting

12   *Parsons v. Tickner*, 31 Cal. App. 4th 1513, 1525 (1995)).  "'A plaintiff need not be aware of the

13   specific facts necessary to establish the claim.'"  *Id.* (quoting *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d

14   1103, 1111 (1988)).

15        "Mr. Iorio's 'immediate issue' claim is time-barred," because "the provisions in the

16   contract summary and the policy itself triggered the date when Mr. Iorio 'should have suspected

17   that an injury was caused by wrongdoing.'"  Order dated July 8, 2008, at 11 (quoting *Kline*, 87

18   Cal. App. 4th at 1374).  "By investigating the policy documents, Mr. Iorio would not have

19   necessarily understood all the specific facts supporting his fraud claim, but he would have been

20   put on notice that something was amiss regarding the supposedly 'immediate' bonus."  *Id.*; *see

21   also Hydranautics v. FilmTec Corp.*, 306 F. Supp. 2d 958, 963 (S.D. Cal. 2003) (stating that

22   "individuals are imputed to know the terms of the contracts they enter").   Extending these

23   principles to the class at large, any class member who purchased one of the subject annuities

24   before March 30, 2002 does not have a valid "immediate" issue claim.

25        The Court further ruled that "all class members, even those with time-barred claims on

26   the 'immediate issue,' may pursue the same causes of action on the bonus issue."  Order dated

27   Feb. 23, 2009, at 7.  Allianz respectfully disagrees.  A class member (like Mr. Iorio) need not

28   have knowledge or suspicion of all aspects of the alleged fraud cause of action to trigger the

limitations period.  The Court must "'not take a hypertechnical approach to the application of the discovery rule.  Rather than examining whether the plaintiffs suspect facts supporting each specific legal element of a particular cause of action, [the Court must] look to whether the plaintiffs have reason to at least suspect that *a type of wrongdoing* has injured them.'"  *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1057 (9th Cir. 2008) (quoting *J.C. v. Los Angeles Unified Sch. Dist.*, 139 Cal. App. 4th 499, 516 (2006)) (emphasis supplied).  "'The plaintiff discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof – when, simply put, he at least suspects that someone has done *something* wrong to him, wrong being used, not in any technical sense, but rather in accordance with its lay understanding.'"  *Id.* (quoting *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999)) (emphasis supplied).  "'[C]ourts interpret discovery in this context to mean not when the plaintiff became aware of the specific wrong alleged, but when the plaintiff suspected or should have suspected that *an injury* was caused by wrongdoing.  A plaintiff need not be aware of the specific facts necessary to establish a claim since they can be developed in pretrial discovery.  Wrong and wrongdoing in this context are understood in their lay and not legal senses.'"  *Id.* (quoting *Kline*, 87 Cal. App. 4th at 1374) (emphasis supplied).

Here, the Court found that, "although Mr. Iorio would not have necessarily understood all the specific facts supporting his fraud claim," reviewing his policy would have alerted him that something was "amiss."  Order dated July 8, 2008, at 11.  That is, class members had reason to at least suspect that *a type of wrongdoing* injured them.  It is immaterial that there may have been other facets of the alleged fraud since class members reasonably could have investigated further.  Plaintiffs asserted a single cause of action for fraud, and that claim accrued when they knew or should have suspected an injury caused by wrongdoing.  That date was delivery of the annuity contract, which plaintiffs allege was not as described at the point of sale.  Plaintiffs were obliged to "'seek to learn the facts necessary to bring the cause of action in the first place – he cannot wait for them to find him and sit on his rights; he must go find them himself if he can and file suit if he does.'"  *Id.* (quoting *Norgart*, 21 Cal. 4th at 398).  Because Mr. Iorio and other class members were on notice of some aspect of the fraud cause of action upon delivery of their

50

policies, the limitations period began running on the other aspects of the fraud cause of action, and the Court erred in holding otherwise.[20]

More fundamentally, the discovery rule should not apply at all. The requisites of that rule are not pled in the Complaint – there are no allegations identifying either: (1) the time and manner of the discovery; or (2) plaintiffs' diligence in discovering the cause of action. It is settled law that "plaintiffs seeking to toll the statute of limitations on various grounds must have included the allegation in their pleadings; this rule applies even where the tolling argument is raised in opposition to summary judgment." *Wasco Prods., Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989, 991 (9th Cir. 2006); *see also Fodor v. AOL Time Warner, Inc.*, 217 F. App'x 622, 623 (9th Cir. 2007) (holding that a complaint that would be otherwise barred without the benefit of the discovery rule must plead facts to show: (1) the time and manner of discovery; and (2) the inability to have made earlier discovery despite reasonable diligence); *Gallardo v. DiCarlo*, 203 F. Supp. 2d 1160, 1169 n.13 (C.D. Cal. 2002) (refusing to apply the discovery rule because plaintiff failed to plead facts in his complaint addressing the time and manner of discovery and his diligence in discovering the cause of action). It is too late now for plaintiffs to attempt to explain why the limitations periods do not bar their claims by virtue of the discovery rule; why the class claims are also not barred; or how the time, manner, nature, and diligence of the discovery can apply uniformly to 12,115 individuals.

## 2.    Four-Year Period For Breach Of Contract Claims.

"Actions based on contract have a four-year statute of limitations." Order dated July 8, 2008, at 12 (citing Cal. Civ. Code § 337(1)). "'A cause of action for breach of contract accrues at the time of the breach of contract, and the statute of limitations begins to run at that time regardless of whether any damage is apparent or whether the injured party is aware of his right to

---

[20] Plaintiffs cannot now be heard to argue that the "immediate" issue is an affirmative misrepresentation claim that accrued on one date and the "recouping" issue is a fraudulent omission claim that accrued on some later date. *See* Order dated February 23, 2009 (Doc. No. 283).

51

sue.'" *Id.* (quoting *Perez-Encinas v. AmerUs Life Ins. Co.*, 468 F. Supp. 2d 1127, 1134 (N.D. Cal. 2006)).

The Court ruled that "plaintiffs did not suffer damage from the allegedly noncompliant surrender penalty provisions until plaintiffs actually surrendered their policies and Allianz enforced the surrender penalties. Mr. Iorio could file suit only after his cause of action accrued, and a breach of contract claim does not accrue until the plaintiff first incurs actual damages." *Id.* at 13 (citing Cal. Civ. Code § 312). The Court further ruled that "[e]very class member, regardless of surrender, has a declaratory relief claim," Order dated Feb. 23, 2009, at 7, but that does not avoid the fact that, for those class members who incurred a penalty in connection with a full or partial surrender of their policy before March 30, 2001, their claims expired before the complaint was filed. Taking together the Court's accrual rulings, for the large majority of class members, their contract claims either have not accrued or they are time-barred.

Moreover, whether a class member has a claim for breach of contract or is seeking declaratory relief is not an idle consideration. A breach of contract claim is not the same as a request for declaratory relief since, unlike a breach of contract claim, declaratory relief is not a substantive cause of action but merely a judicial remedy, (*see Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 33 n.3 (1st Cir. 2007) ("Although the plaintiffs style 'declaratory judgment' as a cause of action, the provision that they cite, 28 U.S.C. § 2201(a), creates a remedy, not a cause of action.")), and "is procedural only." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937). Important remedial (*e.g.*, recovery of damages) and procedural distinctions (*e.g.*, applicable statute of limitations) exist between a California breach of contract claim and a request under the federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* In addition, as discussed in Section V.C.1, *supra*, where there is no underlying breach of contract, there can be no breach of the implied covenant of good faith and fair dealing.

### 3. Two- Or Four-Year Periods For Breach Of The Implied Covenant Of Good Faith And Fair Dealing Claims.

The Court directed plaintiffs to specify whether their claim for breach of the implied covenant of good faith and fair dealing sounds in tort or in contract: "When trying their bad faith

claim, plaintiffs may elect to pursue their claim in tort (with the broader remedies and a shorter [two-year] statute of limitations) or in contract (with fewer available remedies and a longer [four-year] statute of limitations)."   Order dated May 18, 2009 (Doc. No. 333), at 11; *see also Archdale v. Am. Int'l Specialty Lines Ins. Co.*, 154 Cal. App. 4th 449, 467 n.19 (2007) ("An insured electing to proceed in tort, however, is burdened with a significantly shorter statute of limitations. . . . If the insured (or assignee) elects to proceed only in contract, . . . then recovery is limited to those damages recoverable in contract.  (*See* Civ. Code, § 3300.)  In such case, the applicable statute of limitations . . . is four years (Code of Civ. Proc., § 337, subd. (1)), instead of the two-year period applicable in tort actions.  (Code of Civ. Proc., § 339, subd. (1).).").  Thus, if plaintiffs' claim for breach of the implied covenant of good faith and fair dealing sounds in contract, then those class members who have not incurred a penalty in connection with a full or partial surrender do not have a ripe claim, and for those class members who incurred such a penalty before March 30, 2001, their claims are time-barred.  *See* Section VII.A.2, *supra*.  If, however, plaintiffs elect to proceed in tort, then those class members who paid a penalty for a full or partial surrender before March 30, 2003 no longer have the claim.

### 4.    Three-Year Period For Declaratory Relief.

The Third Amended Complaint seeks a "declaratory judgment that certain forfeiture provisions in plaintiffs' annuity contracts with Allianz are unenforceable."  Order dated July 26, 2006, at 9; *see also* Order dated Feb. 23, 2009, at 7 ("Judge Gonzalez unambiguously held that a declaratory judgment of unenforceability of surrender penalties was suitable for class-wide adjudication.").  If a claim for declaratory relief could have been resolved through another form of action which has a specific limitations period, the specific period of time governs.  *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 688 (9th Cir. 1993).   Here, the request for a declaratory judgment is governed by the three-year statute of limitations applicable to reformation claims.  *See* Cal. Civ. Proc. Code § 338(d); *North Star Reinsurance Corp. v. Superior Court*, 10 Cal. App. 4th 1815, 1822-26 (1992) (judicial declaration that insured may not

53

rely on exclusionary language held to be identical to reformation remedy, so three-year statute of limitations at section 338(d) applied).[21]

"Properly read, the allegations of the declaratory relief cause of action amount to no more than an alternative manner of pleading for reformation. The fact [that plaintiffs] make[] references to a controversy and declaration about whether [Allianz] may rely on the [surrender] language in the policies does not change this conclusion.  The sum and substance of the allegations of the declaratory relief cause of action is reformation.  If a court were to grant the declaratory relief prayed for, the legal effect would be identical to that involved in a successful reformation.  Success under either cause of action would result in [financial gain] under the policies by virtue of elimination of the [surrender] language." *North Star*, 10 Cal. App. 4th at 1826.  "Viewed from a somewhat different perspective, the way [plaintiffs] pled [their] declaratory relief cause of action made it appear to be no different from the reformation count.  To merely claim it is different from reformation does not raise a new theory."  *Id.* at 1827; *Treadaway v. Camellia Convalescent Hosps., Inc.*, 43 Cal. App. 3d 189, 197 (1974) (request for declaration in effect sought relief by way of reformation and, as such, "must be bound by the provisions of Civil Code, Section 3399," the statute governing reformation claims).

The three-year statute of limitations applicable to reformation claims runs from the time the grounds for reformation could have been discovered.  Cal. Civ. Proc. Code § 338(d).  Allianz's allegedly deficient senior disclosures were sufficient to allow the class members, including Mr. Iorio, to identify violations of Insurance Code §§ 10127.10 and 10127.13 at the time they received the allegedly deficient annuity contracts.  A plaintiff's ignorance of the law (*i.e.*, whether a particular set of known facts gives rise to a legal claim) does not delay accrual of the cause of action.  *See Gutierrez v. Mofid*, 39 Cal. 3d 892, 897-98 (1985).  "[T]he uniform California rule is that a limitations period dependent on discovery of the cause action beings to

---

[21] Alternatively, the request for declaratory relief is subject to the three-year limitations period prescribed by Code of Civil Procedure § 338(a), which applies to actions "upon a liability created by statute, other than a penalty or forfeiture."

54

run no later than the time the plaintiff learns or should have learned, the *facts* essential to his claim.  It is irrelevant that the plaintiff is ignorant of his legal remedy or the legal theories underlying his cause of action." *Id.* (internal citations omitted) (emphasis in original).  Thus, class members who received delivery of their policies with allegedly non-compliant senior notices, before March 30, 2002, do not have timely requests for declaratory relief.

### 5.     Four-Year Period For UCL Claims.

The applicable statute of limitations for plaintiffs' UCL "fraudulent" and "unlawful" prong claims is four years.  Cal. Bus. & Prof. Code § 17208.

### a.     UCL "Fraudulent" Prong.

The Court ruled that the "immediate" issue claim under the UCL "fraudulent" prong was not timely "because Mr. Iorio could have discovered the broad contours of a fraudulent UCL claim in his policy and contract summary, [so] he cannot go forward on the affirmative misrepresentation portion of that claim."  Order dated July 8, 2008, at 13.  The Court found, however, that the "recouping" issue claim was not time-barred by virtue of California's fraudulent concealment doctrine, which "'tolls the applicable statute of limitations, but only for that period during which the claim is undiscovered by plaintiff or until such time as plaintiff, by the exercise of reasonable diligence, should have discovered it.'"  *Id.* (quoting *Bernson v. Browning-Ferris Indus. of Cal., Inc.*, 7 Cal. 4th 926, 931 (1994)).  In ruling on Allianz's motion for summary judgment, the Court held that "*Allianz has not carried its burden* of showing that Mr. Iorio, 'by the exercise of reasonable diligence, should have discovered' the haircut or manipulation of yields more than four years before he filed the present action."  *Id.* at 14 (emphasis supplied).  Respectfully, the Court erred in ruling that Allianz has the burden of disproving plaintiffs' fraudulent concealment theory.  It is not Allianz's burden to show that the class members, by the exercise of reasonable diligence, should have discovered their UCL claims.  The burden rests with plaintiffs.  *See Bernson*, 7 Cal. 4th at 937 ("emphasizing the burden on the plaintiff to demonstrate reasonable diligence"); *Pashley v. Pac. Elec. Ry.*, 25 Cal. 2d 226, 231 (1944) ("Upon the trial the party relying on fraudulent concealment of the cause of action to avoid the statute would have the burden of proving such concealment.").

55

Plaintiffs will be unable to prove at trial entitlement to tolling by fraudulent concealment. As an initial matter, arguing doctrinal exceptions to the statutes of limitations is improper because the Complaint does not describe with specificity, or even mention, the grounds for fraudulent concealment.  *See Wasco Prods.*, 435 F.3d at 991 ("plaintiffs seeking to toll the statute of limitations on various grounds must have included the allegation in their pleadings; this rule applies even where the tolling argument is raised in opposition to summary judgment"). More fundamentally, "fraudulent concealment[] halts the statute of limitations when there is 'active conduct by a defendant, *above and beyond* the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time.'"  *Guerrero v. Gates*, 442 F.3d 697, 706 (9th Cir. 2006) (quoting *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176-77 (9th Cir. 2000)); *see also Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1052 (9th Cir. 2008). Plaintiffs will be unable to show that Allianz engaged in any fraudulent conduct *above and beyond* the affirmative misrepresentation upon which the "recouping" issue rests.  *See Guerrero*, 442 F.3d at 707 ("Even assuming that [plaintiff's] allegations of a conspiracy are true, the defendants did not engage in any fraudulent conduct '*above and beyond* the wrongdoing upon which the plaintiff's claim is filed.'") (quoting *Santa Maria*, 202 F.3d at 1177) (emphasis in original).  Plaintiffs cannot circumvent the requirements of the fraudulent concealment doctrine by claiming that the basis for invoking the doctrine is the same as the alleged cause of action. "'This merges the substantive wrong with the tolling doctrine. . . . [and] would eliminate the statute of limitations.'"  *Lukovsky*, 535 F.3d at 1052 (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990)).

### b.    UCL "Unlawful" Prong.

Concerning the UCL "unlawful" prong, the Court found that:

> Mr. Iorio lost money from Allianz's non-compliance when Allianz actually enforced those surrender penalties against Mr. Iorio, *i.e.*, when Mr. Iorio surrendered his policy.  At that point, Mr. Iorio lost money as a result of the enforcement of the non-compliant provisions.  Mr. Iorio surrendered his policy in February 2005, only about a month prior to the filing of this action.  Therefore, the "unlawful" prong of Mr. Iorio's UCL claim is not time-barred.

Order dated July 8, 2008, at 14.  Allianz respectfully disagrees.

56

"Generally, a cause of action accrues and the statute of limitations begins to run when a suit may be maintained." *Howard Jarvis Taxpayers Ass'n v. City of La Habra*, 25 Cal. 4th 809, 815 (2001). Prior to the passage of Proposition 64 in November 2004, the UCL authorized any person acting for the general public to sue for relief from unfair competition, and the ability "to bring such an action *did not depend on a showing of injury or damage*." *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 227 (2006) (emphasis supplied). Before Proposition 64, class members like Mr. Iorio could have maintained a suit anytime after they received the annuity contracts containing the allegedly deficient senior disclosures – injury was not then an element of a UCL cause of action. Because injury was not an element, for conduct arising pre-Proposition 64, the UCL statute of limitations runs from the time of the alleged conduct, not from the time of an alleged injury. *See Karl Storz Endoscopy-America, Inc. v. Surgical Tech., Inc.*, 285 F.3d 848, 857 (9th Cir. 2002); *Endres v. Wells Fargo Bank*, No. C 06-7019 PHJ, 2008 WL 344204, at *6 (N.D. Cal. Feb. 6, 2008); *In re Conseco Ins. Co. Annuity Mkt'g & Sales Practices Litig.*, Nos. C-05-04726 RMW, C-06-00537 RMW, 2007 WL 486367, at *6 (N.D. Cal. Feb. 12, 2007); *Rodarte v. Philip Morris, Inc.*, No. CV 03-0353 FMC (CTx), 2003 WL 23341208, at *2 (C.D. Cal. June 23, 2003). Allianz submits that Mr. Iorio's UCL "unlawful" prong claim accrued in December 2000, not in February 2005. Similarly, class members who received delivery of their policies before March 30, 2001 do not have timely UCL "unlawful" prong claims. Mr. Iorio's and the class members' causes of action did not accrue twice, once pre- and once post-Proposition 64.

## B.      Estoppel.

"Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." Cal. Evid. Code § 623; *see also In re Lisa R.*, 13 Cal. 3d 636, 645 (1975). Plaintiffs are barred from bringing their claims since they signed the SOUs, attesting that they understood the features of the annuity they purchased, including the operation of the premium bonus and that no future values were promised other than the guaranteed values, and that their agents answered their questions.

Allianz relied upon those representations to its detriment by issuing the annuities.  If Allianz had known that plaintiffs did not understand the features of the policies, it could have taken steps to make certain that the purchasers understood what they were purchasing or declined to issue the contracts, and avoided the instant litigation.

### C.    Waiver.

"The right to information of material facts may be waived, either (a) by the terms of insurance or (b) by neglect to make inquiries as to such facts, where they are distinctly implied in other facts of which information is communicated."  Cal. Ins. Code § 336; see *also* Cal. Civ. Code § 3513 ("Any one may waive the advantage of law intended solely for his benefit"). Plaintiffs signed SOUs attesting that they understood the information stated therein, which explained the operation of the premium bonus, including that to receive the premium bonus the annuity must remain in deferral for at least five years and payout taken over a period of at least ten years, and explained that only the guaranteed policy values were warranted.  By signing the SOUs, accepting the policies, and not returning the policies during the free-look period, plaintiffs acted inconsistently with and waived any claim to the premium bonus being immediately available in cash or future policy values greater than the guaranteed values.

### D.    Mitigation Of Damages.

Even if plaintiffs could show that Allianz breached the contract and that the breach caused them harm, Allianz will demonstrate that the plaintiffs are not entitled to recover any damages because they could have avoided damages with reasonable efforts.  For example, plaintiffs failed to mitigate their purported damages by not reading or returning their policies during the "free look" period and by surrendering the policies before satisfying the deferral and payout requirements.  Plaintiffs' failure to mitigate damages bars their recovery.

### E.    Consent And Acceptance.

Consent by the plaintiff will preclude subsequent litigation as to the matters to which consent is given.  Cal. Civ. Code § 3515 ("He who consents to an act is not wronged by it."); *Edward Brown & Sons v. City & County of San Francisco*, 36 Cal. 2d 272, 279 (1950) ("no one can maintain an action for a wrong where he has consented to the act which has occasioned his

58

loss").  Plaintiffs purchased their annuities, represented they understood their policies and that the annuities were suitable for their financial needs, and were treated by Allianz in accordance with the terms of those policies.  By accepting their policies and not exercising their right to cancel during the "free look" period, plaintiffs consented to the terms of the policies.

**F.    Failure To Exercise Ordinary Care.**

"Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself."  Cal. Civ. Code § 1714(a); *see also Li v. Yellow Cab Co.*, 13 Cal. 3d 804, 809 (1975) (following comparative fault standard of Restatement (Second) of Torts § 463 (1965)).  Plaintiffs had a duty to read their annuity contracts, and any of the alleged injuries as a result of that failure to exercise ordinary care was brought upon themselves.

**G.    Comparative Fault.**

Comparative fault is conduct by the plaintiff that falls below the standard of care the plaintiff is legally required to maintain under the circumstances and that constitutes a contributing cause of the injury.  Cal. Civ. Code § 1714; *Li*, 13 Cal. 3d at 809.  Plaintiffs represented that they read the SOU, when they did not, and failed in their duty to read their annuity contracts.  Plaintiffs' conduct fell below the standard of care and constitutes a contributing cause of their alleged injury.

**H.    Intervening Fault Or Cause.**

A defendant is not liable for harm suffered by the plaintiff if a third party's criminal conduct or intentional tort is a superseding cause of harm.  *See Kane v. Hartford Accident & Indem. Co.*, 98 Cal. App. 3d 350, 360 (1979) (recognizing that California has adopted Restatement (Second) of Torts § 448 (1965)).  An intervening act is a superseding cause if it produces harm of a kind or degree beyond the risk the original tortfeasor could have foreseen.  *Kahn v. East Side Union High Sch. Dist.*, 31 Cal. 4th 990, 1017 (2003).  Many of the alleged injuries in this case were caused by misrepresentations made by insurance agents or others not associated with Allianz who persuaded plaintiffs to surrender their Allianz products at issue in

59

1  this litigation so that plaintiffs could purchase other products or for any other reason.  Therefore,

2  to the extent a third party made a misrepresentation after the named plaintiffs or class members

3  purchased their annuities that caused plaintiffs to surrender an Allianz policy, such

4  misrepresentation would constitute an intervening superseding cause of plaintiffs' alleged harm

5  and Allianz is not responsible for such harm.

6  **VIII.   REMEDIES**

7          Allianz filed its Motion to Strike Portions of Prayer for Relief (Doc. No. 285) in March

8  2009.  While the Court addressed certain aspects of Allianz's motion in its Order dated May 18,

9  2009, it did not issue a ruling on the merits.  Allianz renews those arguments here and, in

10  addition, challenges plaintiffs' attempt to recover damages in connection with their breach of

11  contract claim.

12          **A.      Plaintiffs Cannot Prove They Are Entitled To Restitutionary Relief.**

13          "The UCL limits the remedies available for UCL violations to restitution and injunctive

14  relief (and civil penalties, which are not at issue [here])."  *Madrid v. Perot Sys. Corp.*, 130 Cal.

15  App. 4th 440, 452 (2005).  Plaintiffs here are seeking sums equal to the bonus applied to the

16  annuitization value of their policies, as well as non-guaranteed interest crediting and payout

17  rates, which is a form of alleged damages – not equitable restitution.  "In the context of the UCL,

18  'restitution' is meant to restore the status quo by returning to the plaintiff funds in which he or

19  she has an ownership interest, and is so limited."  *In re First Alliance Mortg. Co.*, 471 F.3d 977,

20  996 (9th Cir. 2006).  California courts employ two tests to determine whether funds sought

21  pursuant to a UCL claim qualify as equitable "restitution":  "'restitution means the return of

22  money to those persons [1] from whom it was taken or [2] who had an ownership interest in it.'"

23  *Id*. at 997 (quoting *Madrid*, 130 Cal. App. 4th at 455).  Neither test is met in this case.

24          **1.      Neither The Bonus Nor Non-Guaranteed Policy Values Is Money Or**
             **Property That Was Once In Plaintiffs' Possession.**

25          The bonus and non-guaranteed contract benefits cannot be the subject of restitutionary

26  relief, because plaintiffs are not seeking the return of money or property that they gave to

27  Allianz.  To the contrary, plaintiffs allege that they expected Allianz would give money to them,

28

60

in the form of a premium bonus and interest crediting and payout rates in excess of the contract guarantees. According to the Complaint, "there was no such bonus or value in existence until at least ten or fifteen years after purchase." Complaint ¶¶ 13(c) & 27(c); *see also id.* ¶ 3 (alleging "that seniors buy contracts which provide no real bonus"); *id.* ¶¶ 13(d) & 27(d) ("so-called bonus"); *id.* ¶¶ 13(g) & 27(g) ("bogus bonus"). This Court has articulated plaintiffs' claims as "the promise of a 10% immediate bonus misrepresented the nature of the bonus because the policyholders could not obtain the bonus unless they waited at least five years to begin taking annuity payments from the policy and accepted those payments over a minimum period of ten years." Order dated July 8, 2008, at 18. Plaintiffs thus fail the test for restitution, since they are not seeking the *return* of any monies they once possessed and paid to Allianz.

### 2. If Plaintiffs Had Any Interest In Non-Guaranteed Contract Benefits, It Was A Non-Cognizable Expectancy Interest.

Plaintiffs also fail the second test, as they are seeking expectancy or contract damages, not equitable restitution. The assertion that Allianz enjoyed some "ill-gotten gain does not make a viable UCL claim unless the gain was money in which plaintiff[s] had a vested interest." *Madrid*, 130 Cal. App. 4th at 455. "A 'vested' interest is one that is 'unconditional,' 'absolute,' and 'not contingent.' A contingent interest, on the other hand, is dependent upon an uncertain future event." *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 319 F. Supp. 2d 1059, 1080 (C.D. Cal. 2003) (internal citations omitted). Plaintiffs here had at most an expectancy interest in contract values above the guarantees. *See Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168, 1173 (E.D. Cal. 2007), *aff'd sub nom. Walker v. Geico Gen. Ins. Co.*, 558 F.3d 1025 (9th Cir. 2009) (auto repair shop did not have a vested interest in receiving full amount of estimates on the ground that insureds signed the estimates, where payment for work not yet undertaken was not owed when estimate was executed; expectation of payment of the estimate was a contingent interest). Here, plaintiffs received **at least** what their policies promised, and whether to credit higher interest and payout rates than the contract guarantees was at Allianz's sole discretion.

At bottom, plaintiffs are seeking a form of damages based on an extra-contractual expectation – not the restoration of sums they once possessed or in which they had an

61

1   unconditional property interest.  Plaintiffs' measure of damages for their legal claims apparently
2   is identical to their proposed restitutionary measure for their equitable claims.  The consequence
3   of allowing such non-restitutionary monetary relief would be that "the UCL would be used as an
4   all-purpose substitute for a tort or contract action, something the Legislature never intended."
5   *Korea Supply*, 29 Cal. 4th at 1151.

**B.     Plaintiffs Are Not Entitled To Injunctive Relief.**

**1.     Plaintiffs Are Not Entitled To An Injunction Compelling Allianz To Pay Them Money.**

For the same reasons plaintiffs cannot recover UCL restitution of the premium bonus or
interest and payout rates in excess of what their annuity contracts promised, plaintiffs lack
standing under the UCL to pursue an injunction compelling Allianz to pay the bonus in cash, or
to pay non-guaranteed benefits.  As demonstrated, Allianz has no money or property that once
belonged to plaintiffs to support a claim for equitable restitution.  Plaintiffs cannot re-label their
inchoate restitution claim as one for prospective injunctive relief.

The Ninth Circuit recently rejected that ploy, finding that not only did the plaintiff's
claim for restitutionary relief fail, but also the attempt to re-fashion that claim as one for
injunctive relief.  *Walker*, 558 F.3d 1025.  Citing *Buckland v. Threshold Enterprises*, 155 Cal.
App. 4th 798 (2007), the Ninth Circuit found that while "remedies for individuals under the UCL
are restricted to injunctive relief and restitution," the intent is "to limit standing to individuals
who suffer losses of money or property that are eligible for restitution."  *Id.* at 1027.  *See also*
*Citizens of Humanity, LLC v. Costco Wholesale Corp.*, 171 Cal. App. 4th 1, 22 (2009) (same).
As the Ninth Circuit found in *Walker*, plaintiffs here are no more entitled to an injunctive remedy
than they are to a restitutionary one.  *See* 558 F.3d at 1027 (rejecting argument that, although no
loss of money or property for purposes of receiving monetary relief under the UCL, plaintiff
should nevertheless be entitled to an injunction).[22]  In *Walker*, the plaintiff contended that he lost

---

[22] This Court previously held that Mr. Iorio "lost money or property" because he incurred a 10%
load on his premium upon surrender, and that plaintiffs "have presented sufficient evidence of
*(footnote continued on next page)*

62

money or property based on a claimed vested interest in the full amount of repair estimates he prepared that were signed by the defendants' insureds.  474 F. Supp. 2d at 1173.  The district court found that payment of those estimates by the defendant insurers was contingent upon the satisfaction of various conditions, and so dismissed the UCL claim for lack of standing.  *Id.* at 1173-74.  Likewise here, plaintiffs have not established that they had a vested, fully realized ownership interest in either the bonus or any non-guaranteed benefits.  On appeal, the *Walker* plaintiff contended that he was "entitled to an injunction effectively requiring [his] insurers in the future to pay higher rates for their insureds' auto body repairs."  558 F.3d at 1027.  The Ninth Circuit rejected this argument, affirming the district court's ruling that the plaintiff had not lost money or property in which he had prior possession or a vested ownership interest.  *Id.*  Likewise here, plaintiffs seek an injunction effectively requiring Allianz to treat the premium bonus like cash and to apply non-guaranteed interest and payout rates unaffected by alleged "yield reductions" and the "haircut."  *See* Doc. No. 309, at 8 (describing the injunction sought).  Because neither the bonus nor non-guaranteed benefits constitute "lost money or property" within the meaning of the UCL, plaintiffs are not entitled to the injunctive relief they seek.

### 2. Plaintiffs Are Not Entitled To An Injunction Regulating Allianz's Annuity Sales And Marketing Practices.

Plaintiffs also are not entitled to enjoin Allianz's future annuity sales or marketing practices.  Entitlement to injunctive relief requires proof that plaintiffs are threatened by a repetition of the violation for the relief to redress their alleged injuries.  *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1040 & 1042 (9th Cir. 1999) (the requirement of irreparable injury "cannot

---

*injury-in-fact* because they purchased Allianz's annuities."  Order dated July 8, 2008, at 14, 31 (emphasis supplied).  The Court, however, did not express an opinion on whether the bonus or non-guaranteed policy values constitute "lost money or property," or whether the large majority of class members who have not incurred a premium load for cash surrender have "lost money or property," for purposes of the UCL's standing requirements.  Accordingly, nothing in the Court's earlier ruling forecloses Allianz's arguments in this respect.  Moreover, the Ninth Circuit's subsequent opinion in *Walker* extends the requirement that a UCL plaintiff must have lost money or property to be eligible for restitution to also include eligibility for injunctive relief.

63

be met where there is no showing of any real or immediate threat that the plaintiffs will be wronged again"); *Laster v. T-Mobile USA, Inc.*, No. 05-cv-1167, 2009 WL 4842801, at *4 (S.D. Cal. Dec. 14, 2009) (no threat of future irreparable injury because plaintiffs "now know Defendants will seek sales tax reimbursement on any bundled wireless phone purchase equal to the full retail price of the phone or phones purchased"); *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 951 (S.D. Cal. 2007) (injunctive relief denied because plaintiff was then fully aware of the allegedly false advertisement).

The representative plaintiffs cannot make the required showing of a threat of future irreparable injury, given they now know of Allianz's allegedly fraudulent conduct ***and*** their testimony that if they understood at the time of sale what they understand now, they would not have purchased their policies. Whether other policyholders possess the same present knowledge and share the same regret as the named plaintiffs is irrelevant – they cannot confer standing for the class. *See Laster*, 2009 WL 4842801, at *4 ("Nor does the unnamed class members' standing confer jurisdiction."); *see also Hodgers-Durgin*, 199 F.3d at 1045 ("Any injury unnamed members of this proposed class may have suffered is simply irrelevant to the question whether the named plaintiffs are entitled to the injunctive relief they seek.").

## C. Plaintiffs Are Not Entitled To Declaratory Relief.

### 1. Declaratory Relief Is Unripe For Most Class Members.

Plaintiffs seek a judicial declaration that the contract's cash surrender value is unenforceable because the California senior notice statutes are incorporated into their annuity contracts, Allianz allegedly violated those statutes, and that "violation" constitutes a breach. *See* Order dated July 8, 2008, at 27 (plaintiffs allege "that statutory notice requirements concerning surrender penalties are read into the contracts. When Allianz failed to comply with those notice requirements, the surrender penalties applied by Allianz were unenforceable.").[23]  The alleged

---

[23] Plaintiffs incorrectly cite the California declaratory judgment statute, Code of Civil Procedure § 1060, as the basis for their request. *See* Plaintiffs' Opposition to Defendant Allianz Life Insurance Company of North America's Motion to Modify the Class Definition, *etc.* (Doc. No.

*(footnote continued on next page)*

64

"surrender penalties applied by Allianz" is the policy's cash surrender value – no bonus, a charge against the premium paid (between 10 and 12.5%), and reduced interest crediting – which is the identical monetary relief plaintiffs claim for their substantive causes of action.

Responding to Allianz's argument that declaratory relief is unavailable because a declaration of the rights and liability of the parties under the annuity contracts duplicates the legal and other equitable relief they seek, plaintiffs concede that "many class members have not surrendered their annuities," but that declaratory relief "permits an early adjudication of these class members' rights, even if their claims for damages in the form of surrender charges *have not arisen*." Doc. No. 309, at 8 (emphasis supplied).  In other words, plaintiffs ask the Court to adjudicate the admittedly inchoate and unripe claims of a large majority of class members.  For a case to be justiciable under Article III of the Constitution, it must be ripe for review.  *Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009).  "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal citations omitted).[24]  "That is so because, if the contingent events do not occur, the plaintiff likely will not have suffered an injury that is concrete and particularized enough to establish the first element of standing."  *Bova*, 564 F.3d at 1096.

This Court previously found that "plaintiffs did not suffer damage from the allegedly noncompliant surrender penalty provisions ***until*** plaintiffs actually surrendered their policies and Allianz enforced the surrender penalties."  Order dated July 8, 2008, at 13 (emphasis supplied).  This contingent future event may never occur or occur as anticipated.  As plaintiffs themselves admit, it is only if "a purchaser fails to comply with the [contractually-specified] deferral and

---

273) at 12.  Even in diversity actions, the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and not state law, governs claims for declaratory relief in federal court.  *See DeFeo v. Procter & Gamble Co.*, 831 F. Supp. 776, 779 (N.D. Cal. 1993).

[24]  The Court, of course, has an independent obligation to inquire into Article III standing whenever it is doubtful.  *Bova*, 564 F.3d at 1095.

annuitization requirements" that "Allianz applies penalties, including a loss of the bonus, imposition of a 'load' (10% on Bonus Maxxx and BonusDex, 12.5% on the others), and a reduction of the yields to a minimal rate." Doc. No. 309, at 8. In a class action, *all* class members – named and unnamed alike – must assert claims that are ripe for adjudication to be entitled to relief. *See Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 66-67 (1993) (remanding for determination of which class members had "ripe claims" since district courts could exercise Article III jurisdiction only over such class members); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999) (noting argument that "exposure-only" class members lack an injury-in-fact and acknowledging need for Article III standing but turning to class certification issues first); *id.* at 884 (Breyer, J., dissenting) (referring to the "standing-related requirement that each class member have a good-faith basis under state law for claiming damages for some form of injury-in-fact"); *Burdick*, 2009 WL 4798873, at *3-4; *Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009) (class certification was inappropriate because the proposed class definition included persons who had not yet been aggrieved).

In this regard, this case is strikingly similar to the Ninth Circuit's recent decision in *Bova*, where the plaintiffs were current employees of the defendant and argued that the city's policy of denying health insurance coverage to retirees is unlawful. 564 F.3d at 1094. The Ninth Circuit dismissed the action as unripe, because the claims were contingent upon two future events: the plaintiffs' retirement and subsequent denial of health benefits under the defendant's coverage. *Id.* at 1096-97; *see also Stewart v. M.M.&P. Pension Plan*, 608 F.2d 776, 784-85 (9th Cir. 1979) (suit to obtain declaration whether plaintiff could accrue pension credit for a period in excess of 20 years did not present ripe controversy where plaintiff did not establish that he intended to retire until some unspecified future time, had no vested interest in benefits, and no defendant had denied him benefits). Likewise, in this case, the question of whether the large majority of class members whose policies remain in force might someday be "injured" is contingent on their decision to fully or partially surrender their contract and incurring a penalty as a result.

CASE NO.: 05 CV 0633 JLS (CAB)

1

### 2.    Declaratory Relief Is Moot As To Ms. Scheffer And Mr. Iorio.

2

Nor may declaratory relief be granted to Ms. Scheffer and Mr. Iorio, because they do not

3

face the threat of continuing misconduct by Allianz.  Their requests for a declaratory judgment

4

are moot because they no longer own their Allianz annuities.

5

"A federal court cannot issue a declaratory judgment if a claim has become moot."  *Pub.*

6

*Utilities Comm'n of Cal. v. FERC*, 100 F.3d 1451, 1459 (9th Cir. 1996).  "A claim is moot if it

7

has lost its character as a present, live controversy."  *United States v. Geophysical Corp. of*

8

*Alaska*, 732 F.2d 693, 698 (9th Cir. 1984).  That is, where the conduct sought to be prevented has

9

already occurred, and the courts cannot undo what already has been done, the action is moot, and

10

must be dismissed.  *See Seven Words LLC v. Network Solutions*, 260 F.3d 1089, 1095 (9th Cir.

11

2001).  A plaintiff's own actions terminating the challenged conduct can render moot a claim for

12

declaratory relief.  *See Harris v. Itzhaki*, 183 F.3d 1043, 1050 (9th Cir. 1999) (tenant's claims for

13

declaratory relief were mooted by the tenant's departure from his apartment complex); *Jones*

14

*Intercable of San Diego, Inc. v. City of Chula Vista*, 80 F.3d 320, 328 (9th Cir. 1996) (cable

15

television operator's claims for declaratory relief were moot because the operator had disposed

16

of the cable infrastructure at issue); *Blair v. Shanahan*, 38 F.3d 1514, 1519-20 (9th Cir. 1994)

17

(former panhandler's claims for declaratory relief invalidating an aggressive panhandling statute

18

were moot because the panhandler had obtained employment and stopped begging for money).

19

Here, there is no continuing breach, violation, or other alleged harm threatening Ms.

20

Scheffer, Mr. Iorio, or any class member who terminated their contracts.  These plaintiffs fully

21

surrendered their annuities, so the fact and effect of the challenged conduct has disappeared.[25]  A

22

---

23

[25] Otherwise moot conduct may be still challenged if it is "capable of repetition, yet evading

24

review."  *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 871 (9th Cir. 2002).  "'Under this

exception, federal courts may exercise jurisdiction over otherwise moot matters in which the

25

challenged action is in its duration too short to be fully litigated prior to its cessation or

expiration, and there is a reasonable expectation that the same complaining party would be

26

subjected to the same action again.'"  *Headwaters v. Bureau of Land Mgmt.*, 893 F.2d 1012,

1016 (9th Cir. 1989)  (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)).  However, the

27

"repetition/evasion" exception is a narrow one, and applies only in "exceptional situations."

28

*(footnote continued on next page)*

CASE NO.:  05 CV 0633 JLS (CAB)

1

"declaratory judgment without the possibility of *prospective* effect would be superfluous,"

2

*McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1095 (9th Cir. 2004) (emphasis supplied); the

3

Court would be issuing a mere advisory opinion. That Ms. Scheffer and Mr. Iorio demand

4

monetary relief for Allianz's past actions does not "cure" the mootness. A request for

5

declaratory relief may be moot even if the plaintiff has a claim for monetary relief. *See id.*; *Cole*

6

*v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1099 (9th Cir. 2000).

7

### 3.    Declaratory Relief Duplicates Plaintiffs' Other Legal And Equitable Claims, And Is Therefore Unnecessary.

8

Plaintiffs' requests for declaratory relief duplicate their other claims, and should be

9

dismissed as superfluous. The Declaratory Judgment Act does not provide litigants with an

10

additional remedy for the determination of identical issues.

11

"Declaratory relief should be denied when it will neither serve a useful purpose in

12

clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief

13

from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759

14

F.2d 1353, 1357 (9th Cir. 1985) (en banc). Here, plaintiffs demand a declaration of the rights

15

that duplicates the legal and other equitable relief they seek. Plaintiffs seek a declaration that the

16

contractual surrender penalties are unenforceable because the California senior notice statutes are

17

incorporated into their annuity contracts, Allianz allegedly violated those statutes, and that

18

"violation" constitutes a breach. *See* Order dated July 8, 2008, at 27 (plaintiffs allege "that

19

_____

20

*Pub. Utilities Comm'n*, 100 F.3d at 1459; *Headwaters*, 893 F.2d at 1016. Both the "repetition"

21

and "evasion" prongs must be satisfied. *See Bernhardt*, 279 F.3d at 871-72; *Pub. Utilities*

*Comm'n*, 100 F.3d at 1459; *Headwaters*, 893 at 1016. The evasion prong will not be satisfied if

22

further conduct "can be attacked in court and restrained if the court finds reason to restrain" the

23

conduct. *Headwaters*, 893 F.2d at 1016. In this case, the "repetition/evasion" exception does

not apply. First, there is no suggestion that a future breach, violation or other harm is imminent,

24

and that Ms. Scheffer or Mr. Iorio will again be subjected to the alleged conduct. Second, even

25

if the alleged conduct were likely to recur, the courts would be more than capable of redressing

any injury at that time. Indeed, because plaintiffs contend that there are other class members

26

being harmed, there are other litigants capable of challenging the alleged business practices. *See*

27

*Bernhardt*, 279 F.3d at 872 ("As a practical matter, we also note that other litigants are capable

of challenging the County's alleged policy.").

28

statutory notice requirements concerning surrender penalties are read into the contracts.  When Allianz failed to comply with those notice requirements, the surrender penalties applied by Allianz were unenforceable.").  The alleged "surrender penalties applied by Allianz" is the policy's cash surrender value – no bonus, a charge against the premium paid (between 10-12.5%), and reduced interest crediting – which is the identical monetary relief plaintiffs claim for their substantive causes of action.  Once the legal and equitable claims are tried, there will be no future rights or liabilities to declare or enforce.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) ("To the extent Swartz seeks a declaration of defendants' liability for damages sought for his other causes of action, the claim is merely duplicative and was properly dismissed.").[26]

Under the instant circumstances, where a judicial declaration of the parties' respective "rights and liability" adds nothing to the resolution of this case, the Court should dismiss as superfluous plaintiffs' demand for declaratory relief.

---

[26] The cases denying declaratory relief that duplicates the legal relief sought are legion.  *See, e.g.*, *B&O Mfg., Inc. v. Home Depot USA, Inc.*, No. C 07-02864 JSW, 2007 WL 3232276, at *7 (N.D. Cal. Nov. 1, 2007); *Celador Int'l Ltd. v. The Walt Disney Co.*, 347 F. Supp. 2d 846, 858 (C.D. Cal. 2004) ("It is not clear how a declaratory judgment would resolve the issues raised while a jury verdict would not."); *FCE Benefit Adm'rs, Inc. v. George Washington Univ.*, 209 F. Supp. 2d 232, 244 n.16 (D.D.C. 2002) ("[P]laintiff has offered no reason why the Court should grant its request for a declaratory judgment, which is an unnecessary remedy for a breach of contract. That request will therefore also be denied."); *Kinghorn v. Citibank, N.A.*, No. C 97-3111 FMS, 1999 WL 30534, at *7 (N.D. Cal. Jan. 20, 1999) (request for declaratory relief is "superfluous" where an "adjudication of defendants' third counterclaim for breach of contract will simultaneously dispose of the question whether the Agreement is valid"); *The Pantry, Inc. v. Stop-N-Go Foods, Inc.*, 777 F. Supp. 713, 718 (S.D. Ind. 1991) (holding that a "declaratory judgment claim [was] inappropriately raised because the plaintiff [would] be fully compensated if it prevails on the breach of contract claim").

69

1

**D.      Plaintiffs Did Not Plead, And Are Not Entitled To, Special Damages.**

Plaintiffs seek "special damages" of an indeterminate nature and sum.  No specifics on what items of special damages are sought exist anywhere in the Complaint.  Whatever it is that plaintiffs may be seeking, they are not entitled to recover these damages:

> Unlike general damages, special damages are those losses that do not arise directly and inevitably from any similar breach of any similar agreement.  Instead, they are secondary or derivative losses arising from circumstances that are particular to the contract or to the parties.  Special damages are recoverable if the special or particular circumstances from which they arise were actually communicated to or known by the breaching party (a subjective test) or were matters of which the breaching party should have been aware at the time of contracting (an objective test).  Special damages 'will not be presumed from the mere breach' but represent loss that 'occurred by reason of injuries following from' the breach.

*Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 34 Cal. 4th 960, 968-69 (2004) (quoting *Mitchell v. Clarke*, 71 Cal. 163, 168 (1886)) (internal citations omitted).

"If an item of special damage is claimed, it must be specifically stated" in the complaint. Fed. R. Civ. P. 9(g).  Plaintiffs must allege special damages with particularity and specify facts showing that such damages were the natural and direct result of the defendant's conduct. *Browning v. Clinton*, 292 F.3d 235, 245 (D.C. Cir. 2002).  The failure here to itemize the special damages claimed precludes their recovery.  *See, e.g.*, *id.*; *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1113 (C.D. Cal. 2004).

**E.      Plaintiffs May Not Recover Consequential Damages In Connection With Their Claim For Breach Of Contract.**

The attempt to recover damages for Allianz's enforcement of the annuity contract's cash surrender value should not be permitted.  "'Contract damages are generally limited to those within the contemplation of the parties when the contract was entered into or at least reasonably foreseeable by them at that time; consequential damages beyond the expectation of the parties are not recoverable.  This limitation on available damages serves to encourage contractual relations and commercial activity by enabling parties to estimate in advance the financial risks of their enterprise.'"  *Erlich v. Menezes*, 21 Cal. 4th 543, 550 (1999) (quoting *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515 (1994)); *see also* Restatement (Second) of

70

Contracts § 351(1) (1981) ("Damages are not recoverable for loss that the party in breach did not have reason to foresee as a probable result of the breach when the contract was made.").

The parties here did not contemplate at the time they entered into the annuity contracts that the cash surrender provisions were unenforceable by virtue of alleged violations of Insurance Code §§ 10127.10 and 10127.13.  Allianz could not have foreseen damages resulting from judicial determinations that:   (1) the contract's cash surrender value was wholly unenforceable because it used senior disclosure language that satisfied the statutory purpose and was approved by the California Department of Insurance; or (2) any action to enforce the surrender provisions would be judicially construed as a breach of contract, resulting in a windfall to the plaintiffs and frustrating the entire purpose of the contract's two values.  If Allianz had any inkling when the contracts were made and filed with the Department of such a result, Allianz never would have allowed the policy forms to be used.  To argue, as plaintiffs must, that Allianz could have expected the use of deficient senior notice disclosures as leading to the unenforceability of its surrender provisions defies all logic.

Plaintiffs cannot prove reasonably foreseeable damages; they can only prove consequential damages.  The losses alleged in this case arise only by convoluted legal reasoning, not in the ordinary course of events.

### F.      Plaintiffs Are Not Entitled To Punitive Damages.

Plaintiffs will be unable to prove that Allianz acted with oppression, fraud or malice, Cal. Civ. Code § 3294(a), including a specific intent to injure, *id.* § 3294(c)(3).  Again, plaintiffs cannot prove a misrepresentation by Allianz because the statements in the Allianz sales materials and policy-related documents (*viz.*, the brochures, SOUs, Buyer's Guides, contract summaries, contracts, and other written materials) are not misleading or deceptive.  Policyholders always received what was promised to them; indeed, they usually received more.  Plaintiffs, therefore, cannot prove entitlement to punitive damages.  In addition, plaintiffs will be unable to recover actual damages, and "actual damages are an absolute predicate for an award of exemplary or punitive damages."  *Kizer v. County of San Mateo*, 53 Cal. 3d 139, 147 (1991).  Where the evidence is legally insufficient to support a punitive damages award, the question should not be

1    submitted to the jury. *See*, *e.g.*, *Basich v. Allstate Ins. Co.*, 87 Cal. App. 4th 1112, 1118-21

2    (2001); *Stewart v. Truck Ins. Exchange*, 17 Cal. App. 4th 468, 484 (1993).

3            **G.    Even If Punitive Damages Are Awarded, Such Damages Cannot Constitutionally Exceed The Amount Of Compensatory Damages Awarded.**

4

5            A class claim for punitive damages should not remain certified, nor should punitive

6    damages be awarded at all, but even if they are awarded, the Court is constitutionally obliged to

7    limit such damages to a ratio of no more than 1:1 with the compensatory damages awarded.

8            The Due Process Clause imposes substantive and procedural limitations on awards of

9    punitive damages. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003).

10   Substantively, due process requires that punitive damages avoid "the imposition of grossly

11   excessive or arbitrary punishments on a tortfeasor," *id.*; provide "fair notice not only of the

12   conduct that will subject him to punishment, but also of the severity of the penalty," *id.* at 417

13   (internal quotation marks omitted); and "have a nexus to the specific harm suffered by the

14   plaintiff," *id.* at 422, including "that the measure of punishment is both reasonable and

15   proportionate to the amount of harm to the plaintiff and to the general damages recovered," *id.* at

16   426.  Procedurally, due process prohibits punishing a defendant for anything other than the

17   defendant's conduct towards a particular plaintiff; thus, punitive damages cannot be awarded to

18   one plaintiff in order to punish the defendant for harm caused to others. *Philip Morris USA v.*

19   *Williams*, 549 U.S. 346, 356-57 (2007) ("We did not previously hold explicitly that a jury may

20   not punish for the harm caused others.  But we do so hold now.").

21           In *Campbell*, the United States Supreme Court said that a single-digit maximum is

22   appropriate in all but the most exceptional of cases, and "[w]hen compensatory damages are

23   *substantial*, then a lesser ratio, *perhaps only equal to compensatory damages*, can reach the

24   outermost limit of the due process guarantee."  538 U.S. at 425 (emphases supplied); *see also*

25   *Roby v. McKesson*, 47 Cal. 4th 686, 719 (2009) (holding that the maximum permissible ratio of

26   punitive damages to compensatory damages is 1:1 where compensatory damages are substantial).

27   In *Exxon Shipping Co. v. Baker*, 128 S. Ct. 2605 (2008), the Supreme Court clarified that

28

72

"substantial" refers not to the compensatory damages awarded an individual plaintiff, but the aggregate amount of compensatory damages awarded against a class action defendant:

> The criterion of "substantial" takes into account the role of punitive damages to induce legal action when pure compensation may not be enough to encourage suit, a concern addressed by the opportunity for a class action when large numbers of potential plaintiffs are involved:  in such cases, individual awards are not the touchstone, for it is the class option that facilitates suit, and a class recovery of $500 million is substantial.  *In this case, then, the constitutional outer limit may well be 1:1.*

128 S. Ct. at 2634 n.28 (emphasis supplied).

Therefore, to the extent punitive damages can ever be awarded in a class action consistent with the Due Process Clause, the holdings in *Campbell*, *Roby*, and *Baker* constitutionally limit punitive damages to a maximum 1:1 ratio on a class-wide basis, regardless of the compensatory damages recovered by any individual class members.[27]  And this is the *maximum* ratio – "by most accounts the median ratio of punitive to compensatory awards has remained *less than* 1:1." *Id.* at 2624 (emphasis supplied).  Significantly, the *Baker* court noted that, in that case, where the jury awarded just over $500 million in compensatory damages, "a median ratio of punitive to compensatory damages of about 0.65:1 probably marks the line near which cases like this one largely should be grouped." *Id.* at 2633.

---

[27] See Allianz's Motion to Decertify the Punitive Damages Class Claim (Doc. No. 343), which argued that the jury in this case cannot calibrate a constitutional punitive damages award on a class-wide basis.  As noted in the briefing on that motion, the *Baker* case is not to the contrary.  There, *the defendant* requested class treatment of the punitive damages issue, after stipulating to liability and damages.  *See* 128 S. Ct. at 2613; *In re The Exxon Valdez*, 296 F. Supp. 2d 1071, 1080 (D. Alaska 2004) (describing the litigation's procedural history) vacated and remanded on other grounds by *In re Exxon Valdez*, 472 F.3d 600 (9th Cir. 2006); *In re Simon II Litig.*, 407 F.3d 125, 134 n.7 (2d Cir. 2005) (noting that in the *Exxon Valdez* litigation, "the defendants, who faced a real risk of large punitive damages awards in the already certified compensatory claims, were the proponent of the class").  Allianz has not stipulated to class treatment of the claims or remedies, and does not waive its constitutional rights or defenses.

**H.      Section 3345 Does Not Apply To UCL Restitutionary Awards.**

"[T]he essence of the statutory unfair competition claim lies in its restitutionary nature." *Rubin v. Green*, 4 Cal. 4th 1187, 1200 (1993).   Because UCL restitution is fundamentally restorative, the Court should hold that restitution is incompatible with the plain language and legislative intent of section 3345 of the Civil Code, which permits trebling of monetary remedies "authorized by a statute" the "purpose or effect of which is to punish or deter."[28]

The object of UCL restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest.  UCL restitution is not intended "to punish" or to have punitive consequences.  The California Supreme Court has spoken clearly that UCL restitution is a "nonpunitive" remedy.  *See Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1261 n.3, 1267 & 1272 (1992) (describing UCL restitution as "nonpunitive monetary relief").  UCL restitution also is not a remedy that does anything more than fortuitously "deter" wrongdoing.  The same could be said of an award of compensatory damages.  Any deterrent value is incidental to the private benefits obtained by bringing a restitutionary or compensatory damages action.  *See Cruz v. PacifiCare Health Sys., Inc.*, 30 Cal. 4th 303, 318 (2003) (stating that "although Cruz argues that restitution under the UCL accomplishes a public purpose by deterring unlawful conduct, the same could be said of damages under the CLRA or under various federal statutes.  This deterrent effect is, however, incidental to the private benefits obtained from those bringing the restitutionary or damages action.").

Further, engrafting the *legal* trebling mechanism of section 3345 onto the *equitable* restitution permitted by the UCL creates an anomalous "super-restitution" remedy that is contrary to section 17203's limited forms of equitable relief.  It calls for the finder of fact to receive evidence on, and to evaluate, a host of factors collateral to the alleged unfair business practice.  Such a remedy is at odds with the UCL's procedural expedience – the intended goal of

---

[28] This issue is currently under review by the California Supreme Court in the appeal of *James A. Clark v. Superior Court (National Western Life Insurance Company)*, No. S174229.   The Supreme Court accepted review on September 9, 2009, and the case is now fully briefed.

74

the Legislature – and with prior precedents rejecting enhanced remedies under section 17203. *See Feitelberg v. Credit Suisse First Boston, LLC*, 134 Cal. App. 4th 997, 1020 (2005) (stating that the California Supreme Court has "reaffirmed that a nonrestitutory remedy 'would be at odds' with the unfair competition law's language and history, with the high court's own prior decisions, and with public policy.").

## IX.    CONCLUSION

For all these reasons, Allianz should prevail at trial and is entitled to a verdict in its favor. Plaintiffs' tort, statutory, and contract claims fail to satisfy their factual and legal requisites, and are not legally cognizable.

Dated:  February 19, 2010              By: /s/ Denise A. Fee
                                           James F. Jorden, *Pro Hac Vice*
                                           Raul A. Cuervo, *Pro Hac Vice*
                                           Denise A. Fee, *Pro Hac Vice*
                                           JORDEN BURT LLP
                                           Jefferson Court, Suite 400 East
                                           1025 Thomas Jefferson Street, N.W.
                                           Washington, D.C.  20007-5208
                                           Telephone:     (202) 965-8100

                                           -and-

                                           Jeffrey L. Williams, *Pro Hac Vice*
                                           JORDEN BURT LLP
                                           175 Powder Forest Drive, Suite 301
                                           Simsbury, Connecticut  06089-9658
                                           Telephone:     (860) 392-5020

                                           -and-

                                           Daniel G. Lamb, State Bar No. 101685
                                           Brian D. Martin, State Bar No. 199255
                                           PILLSBURY WINTHROP SHAW PITTMAN LLP
                                           501 West Broadway, Suite 1100
                                           San Diego, California  92101-3575
                                           Telephone:     (619) 544-3171

                                           *Attorneys for Defendant Allianz Life*
                                           *Insurance Company of North America*

75

DOCKET NO.:  05-CV-0633-JLS (CAB)

**CERTIFICATE OF SERVICE**

I, Denise A. Fee, the undersigned, hereby declare as follows:

1.      I am over the age of 18 years and am not a party to the within cause.  I am employed by Jorden Burt LLP in the City of Washington, D.C.

2.      My business address is 1025 Thomas Jefferson Street, N.W., Suite 400 East, Washington, D.C. 20007-5208.

3.      On February 19, 2010, I filed the foregoing Trial Brief electronically with the United States District Court, Southern District of California, and the below-listed parties were served via the Court's electronic case filing system at the email addresses listed below on the attached Service List:

[See attached Service List]

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 19th day of February, 2010, at Washington, D.C.

/s/ Denise A. Fee
Denise A. Fee

CASE NO.:  05 CV 0633 JLS (CAB)

**SERVICE LIST**

Robert S. Gianelli, Esq.                                    <u>COUNSEL FOR</u>
Sherril Nell Babcock, Esq.                                 Anthony J. Iorio, *et al.*
GIANELLI & MORRIS, A Law Corporation
626 Wilshire Boulevard
Los Angeles, CA  90017
Telephone:  213-489-1600
Facsimile:  213-489-1611
rob.gianelli@gmlawyers.com
sherril.babcock@gmlawyers.com


Raymond E. Mattison, Esq.                                  <u>COUNSEL FOR</u>
Don A. Ernst, Esq.                                         Anthony J. Iorio, *et al.*
ERNST & MATTISON, A Law Corporation
1020 Palm Street
P.O. Box 1327
San Luis Obispo, CA  93406
Telephone:  805-541-0300
Facsimile:  805-541-5168
rmattison@ccaccess.net


Ronald A. Marron, Esq.                                     <u>COUNSEL FOR</u>
LAW OFFICES OF RONALD A. MARRON                            Anthony J. Iorio, *et al.*
3636 Fourth Avenue, Suite 202
San Diego, CA  92103
Telephone:  619-696-9006
Facsimile:  619-696-0983
ron.marron@cox.net

223610v3DC

77

CASE NO.:  05 CV 0633 JLS (CAB)