Robert S. Gianelli, #82116
Jully C. Pae, #233565
GIANELLI & MORRIS, A Law Corporation
626 Wilshire Blvd., Suite 800
Los Angeles, CA  90017
Tel:  213.489.1600; Fax:  213.489.1611
Email:  rob.gianelli@gmlawyers.com
            jully.pae@gmlawyers.com

Raymond E. Mattison, #71850
Don A. Ernst, #65726
ERNST AND MATTISON, A Law Corporation
1020 Palm Street
P.O. Box 1327
San Luis Obispo, CA 93406
Tel:  805.541.0300; Fax:  805.541.5168
Email:  rem@emlaw.us

Ronald A. Marron, #175650
LAW OFFICES OF RONALD A. MARRON, APLC
3636 Fourth Avenue, Suite 202
San Diego, CA  92103
Tel:   619.696.9006; Fax:  .619.564.6665
Email:  ron.marron@cox.net

Attorneys for Plaintiffs and the Class

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY J. IORIO, MAX FREIFELD, and RUTH SCHEFFER, , on behalf of themselves and all others, similarly situated,<br><br>                Plaintiffs,<br><br>   v.<br><br>ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA, INC.,<br><br>              Defendant. | CASE NO. 05-CV-0633-JLS (CAB)<br><br>[CLASS ACTION]<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Hearing**<br>Date:   March 3, 2011<br>Time:   1:30 p.m.<br>Dept.:  6, Honorable Janis L. Sammartino |

# NOTICE OF MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY PROVIDED** that on March 3, 2011, at 1:30 p.m. in Courtroom 6 of the United States District Court for the Southern District of California, located at 940 Front Street, San Diego, California, plaintiffs, ANTHONY J. IORIO, MAX FREIFIELD, and RUTH SCHEFFER, on behalf of themselves and on behalf of the class certified by the Court in the above-captioned action, will move the Court for an order granting final approval of the proposed class action settlement in the action, (comprised of the *Settlement Stipulation* and *Amendment to Settlement Stipulation*, collectively "settlement"), making related pertinent orders, and entering judgment in the action, all as set forth in the proposed final settlement approval order and final judgment, served and submitted herewith.

This motion is made, pursuant to the settlement, on the grounds that: (1) the settlement is fair, reasonable and adequate, and was not the product of collusion; (2) notice has been provided to the class of the terms of the settlement, including those provisions related to class members' rights to object to the settlement and/or appear at this final approval hearing, in a manner consistent with this Court's prior orders and due process, and said form and manner of notice was the best practical notice possible under the circumstances; (3) notice has also been provided to the class of class members' right to exclude themselves from the class, *i.e.*, "opt out", and the consequences of said decision, in a manner consistent with this Court's prior orders and due process, and said form and manner of notice was the best practical notice possible under the circumstances; (4) after such notices, requests for exclusion have been received for only 250 class annuities, out of more than 15,000; (5) after such notices, only three pending objections to the settlement (and three additional objections which have been formally withdrawn) have been received, out of more than 12,000 class members and more than 16,000 recipients of the settlement notice, and those objections should be overruled for the reasons stated herein, and (6) Allianz Life Insurance Company of North America

i

1  ("Allianz") will separately request final approval of the settlement and entry of judgment, on the

2  terms and conditions set forth in the settlement.

3

4       This motion will be based on the settlement; this notice of motion and the attached

5  memorandum of points and authorities: the supporting declarations and exhibits, served and filed

6  herewith; the unopposed motion for an award of attorneys' fees, litigation expenses, and class

7  representatives' incentives, served and filed herewith, and set for hearing contemporaneously with

8  this motion; Allianz' separate request for final settlement approval and entry of judgment, on the

9  terms and conditions set forth in the settlement, to be filed in the action; the previously-filed motion

10 for preliminary settlement approval and supporting documents and declarations; the Court's July 1,

11 2010 order preliminarily approving the proposed settlement, (Doc. No. 437), and findings therein;

12 the Court's docket and file in this action; and such evidence and argument as may be presented at

13 hearing.

14

15 Respectfully Submitted:

16 Dated:  February 10, 2011                     GIANELLI & MORRIS
                                                ERNST AND MATTISON
17                                              LAW OFFICES OF RONALD A. MARRON

18                                              /s/ Christopher D. Edgington
19                                              By:  Christopher D. Edgington

20                                              Attorneys for Plaintiffs and the Class

21

22

23

24

25

26

27

28

ii

## **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

I.       INTRODUCTION ........................................................................................................ 1

II.      SETTLEMENT VALUE .............................................................................................. 3

III.     FINAL APPROVAL OF SETTLEMENT .................................................................... 5

IV.      OBJECTIONS .............................................................................................................. 9

V.       CONCLUSION ............................................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

## California State Cases

*Lealao v. Beneficial California* ........................................................................................................ 5
  82 Cal. App. 4th 19 (2000)

## Federal Cases

*Churchill Village, L.L.C. v. General Electric* ................................................................. 6
  361 F. 3d 566 (9th Cir. 2004)

*Class Plaintiffs v. City of Seattle*, ................................................................. 5, 6
  955 F. 2d 1268 (9th Cir. 1992)

*Hanlon v. Chrysler Corp.* ................................................................. 6, 8
  150 F. 3d 1011 (9th Cir. 1998)

## Federal Statutes

*Federal Rules of Civil Procedure*

  Rule 23(e) ................................................................. 6

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiffs, on their own behalf and on behalf of the class, seek an order granting final approval of the settlement[1] in this class action, making related findings and orders, and entering judgment, all as set forth in the proposed final settlement approval order and judgment served and submitted herewith.  This motion is made contemporaneously with plaintiffs' motion for an award of attorneys' fees, litigation expenses, and class representative incentives, ("fee motion"), served and filed herewith, which is incorporated by reference.

On July 1, 2010, the Court preliminarily approved the settlement as falling within the range of possible final approval and directed that notice be mailed to the class.  Notices have been mailed in the form and manner ordered by the Court in its preliminary approval order, and further orders regarding class notice.  Through the combined efforts of the settlement administrator, counsel, and the parties, notice has been highly effective.  The settlement notices fully and clearly described the settlement and class members' rights to object and/or appear.  There have been just six objections to the settlement (three of which have been withdrawn by the objectors), and no requests to appear.  All class members have also been afforded a fair opportunity to "opt out", either at the class certification stage or (for a small segment of the class previously omitted in an administrative error) at the settlement stage, after effective notice of this right in accordance with the Court's certification and settlement notice orders.  Very few chose to do so.   Requests for exclusion have been submitted with respect to just 250 class annuities out of more than 15,000.

The settlement provides valuable benefits based on the status of each class annuity.  Depending upon the contract's status, these benefits include cash settlement payments and/or new valuable contract rights with substantial monetary value for the class.  The full utilization value of

---

[1] "Settlement" refers to the parties' *Settlement Stipulation* previously filed and preliminarily approved by the Court's July 1, 2010 preliminary settlement approval order, (*Doc. No. 437*), as amended by the *Amendment to Settlement Stipulation*.   For the Court's and parties' convenience, true and correct copies of the *Settlement Stipulation* and *Amendment to Settlement Stipulation* are served and filed herewith as **Pl. Exs. 1-2**, respectively.

the direct class relief (*i.e.*, 100% utilization of all available benefits) is $89.1 - $89.5 million, and the projected utilization value is $30.8 - $50.0 million.  Individual settlement payments and benefits, determined by equitable formulae, are likewise substantial.

These direct class settlement benefits are not "claims-made."   No claim form or other affirmative action is required to be eligible for settlement benefits, (although policyholder behavior will determine the realization of certain benefits, as reflected by the difference between full utilization value and projected utilization value).  Cash settlement payments (both immediate and future) will automatically be distributed upon finality.  Exercise of newly added contract rights (and the monetary benefits which flow from that exercise) will remain the individual choice of each class member, but the new rights created automatically vest upon finality.

The foregoing direct class benefits will not be reduced for attorneys' fees, litigation expenses, administrative expenses, or incentives for the class representatives.  Allianz has expressly agreed not to oppose and, if approved by the Court, to separately pay attorneys' fees up to $18.0 million, reasonable litigation expenses up to $1.3 million, and the full costs of settlement notice and administration.  Allianz has further agreed not to oppose (and if approved to pay) a $25,000 incentive for each class representative for efforts on behalf of the class.  No class member will be required to pay any amount whatsoever for attorneys' fees, litigation expenses, administrative expenses, or incentives.  A full award of such amounts will not diminish or reduce any class member's settlement payments or benefits.  Plaintiffs' fee motion is served and filed herewith and incorporated by reference.

This valuable settlement was achieved despite substantial litigation risk, as discussed in detail on preliminary approval.  In particular, in the jury trial of the *Mooney v. Allianz* nationwide class action, a case with certain similar issues, Allianz obtained judgment in its favor.   That judgment is now final, and the hundreds of thousands of *Mooney* class members received nothing.  Further, as this Court is well aware, class certification was a constant battle in this action, repeatedly and vigorously challenged by Allianz both in this Court and in the Ninth Circuit.  But for the settlement, further appellate challenges to class certification would have been inevitable.

The Court's preliminary conclusion that the settlement is fair, reasonable and adequate is buttressed by the overwhelmingly favorable response from the class.  There are only three pending objections (out of more than 12,000 class members and more than 16,000 recipients of settlement notice).  Requests for exclusion have been submitted for only 250 out of more than 15,000 class annuities.   The settlement is fair, adequate, and reasonable, and in the best interests of the class as a whole.  It provides benefits of great value, both class-wide and individually, in the face of significant litigation risk. The proposed settlement should be approved.

## II.  SETTLEMENT VALUE

On preliminary approval, class counsel described in detail the various categories of settlement benefits and provided an estimated valuation. *Doc. Nos. 424-425*.  For benefits dependent upon future policyholder behavior or circumstances, class counsel provided hypothetical values at various rates of utilization.  Now, pursuant to the Court's request for additional information, class counsel submit a detailed analysis by expert actuary, Vincent P. Gallagher.  Dr. Gallagher calculates the "full utilization value" of the settlement (*i.e.*, 100% utilization of all available settlement benefits) and the "projected utilization value" (*i.e.*, adjusting for actuarial predictions of future policyholder behavior).  *See*, **Pl. Ex. 15**, (*Gallagher Decl.*).  His calculations, for each category of settlement benefits, are summarized in the following table:

| Benefit Category | Full Utilization | Projected Utilization |
|---|---|---|
| Penalty-Free Withdrawals | $58.8 million | $13.1 - $30.7 million |
| 3.25% Annuitization Credit | $12.8 million | $3.6 - $4.8 million |
| Past Surrenders | $12.4 - $12.7 million | $12.4 - $12.7 million |
| Past Annuitizations | $3.9 million | $0.5 million |
| Past Deaths | $0.5 – $0.6 million | $0.5 – $0.6 million |
| Past Deaths (Bonus Maxxx) | $0.7 million | $0.7 million |
| **TOTALS** | **$89.1 – $89.5 million** | **$30.8 - $50.0 million** |

**Pl. Ex. 15**, (*Gallagher Decl.*, ¶7).

Individually, settlement payments are equally substantial. Average individual benefits, in each benefits category, were calculated by Dr. Gallagher, as follows:

| Full Utilization: | |
|---|---|
| **Benefit Category** | **Individual Average** |
| Penalty-Free Withdrawals | $5,599 |
| 3.25% Annuitization Credit | $1,152 |
| Past Surrenders | $5,441 - $5,573 |
| Past Annuitizations | $2,928 |
| Past Deaths | $500 |
| Past Deaths (Bonus Maxxx) | $5,328 |

| Projected Utilization: | |
|---|---|
| **Benefit Category** | **Individual Average** |
| Penalty-Free Withdrawals | $1,248 - $2,924 |
| 3.25% Annuitization Credit | $343 - $ 457 |
| Past Surrenders | $5,441 - $5,573 |
| Past Annuitizations | $375 |
| Past Deaths | $500 |
| Past Deaths (Bonus Maxxx) | $5,328 |

**Pl. Ex. 15**, (*Gallagher Decl.*, ¶12).

The details and assumptions underpinning Dr. Gallagher's analysis are set forth in full in his declaration. His assumptions are reasonably based upon actual policyholder behavior to date, Allianz' own actuarial predictions, the class product policy forms, standard mortality tables, and his general experience as an actuary. Projected utilization takes into account all factors which are predicted to have any significant impact on valuation, both quantitative and qualitative. The "full utilization" calculation takes into account all non-elective factors affecting value, (*i.e.*, anything beyond the policyholder's control). **Pl. Ex. 15**, (*Gallagher Decl.*, ¶8.A.(7)).[2] The "projected utilization value" calculation additionally predicts the impact of elective factors entirely within the

---

[2] For example, the full utilization value calculation still takes into account the impact of predicted policyholder mortality. Only purely elective factors, (*e.g.*, the decision to exercise the settlement benefit, or the decision whether to annuitize the policy or not) are omitted in determination of the full utilization value. **Pl. Ex. 15**, (*Gallagher Decl.*, ¶8.A.(7)).

policyholder's control, (*e.g.*, whether to utilize the various newly-created contract rights). *Id.*, (*Gallagher Decl.*, ¶8.A).

In addition to the foregoing direct class benefits, Allianz will separately pay attorneys' fees of up to $18.0 million, litigation expenses of up to $1.3 million, administrative and notice costs (estimated to be $300,000), and class representative incentives of $75,000 (collectively).   These indirect settlement benefits undeniably benefited the class, (*i.e.*, by making class action litigation such as this possible in the first instance).  Because such amounts are not paid out of the direct class benefits, but will be paid separately by Allianz, they are properly considered as part of the value of the settlement. *See*, **Pl. Ex. 17**, (*Miller Decl.*, ¶¶39-40); *Lealao v. Beneficial California,* 82 Cal. App. 4th 19, 28 (2000).[3]   Considering these additional indirect class benefits, the full utilization value of the settlement is $108.8 - $109.2 million, and the projected utilization value is $50.5 - $69.7 million.

## III.  FINAL APPROVAL OF SETTLEMENT

The Court has already determined, preliminarily, that the settlement is fair, reasonable and adequate, free of collusion or other indicia of unfairness, and falls within the range of possible final judicial approval. **Pl. Ex. 32**, (*Doc. No. 437*, *Preliminary Approval Order*).  The points and authorities, declarations, and other documents submitted in support of the preliminary approval motion (*Doc. Nos. 424-429*) remain equally applicable at this final approval stage, and are incorporated by reference.

The inquiry now remains essentially the same – the Court's final responsibility in reviewing a proposed class action settlement is to ensure that the settlement is "fair, adequate, and reasonable", and if so, it should be approved. "Strong judicial policy … favors settlements, particularly where complex class litigation is concerned", so long as there is no indicia of collusion or unfairness among the negotiating parties. *Class Plaintiffs v. City of Seattle*, 955 F. 2d 1268, 1276 (9th Cir. 1992), *cert. den.*, 506 U.S. 953, 113 S. Ct. 408, 121 L. Ed. 2d 333 (1992).

---

[3] As briefed in detail in the accompanying motion for attorneys' fees, California law controls in determining entitlement to and the amount of any fee award in this diversity jurisdiction case.

The "universally applied standard" for approval of a proposed class action settlement under *Federal Rules of Civil Procedure*, Rule 23(e), is "whether the settlement is fundamentally fair, adequate, and reasonable." *Id.*, 1276 and 1291. Settlement approval therefore balances many factors, including: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1026 (9th Cir. 1998); *Churchill Village, L.L.C. v. General Electric*, 361 F. 3d 566, 575-576 (9th Cir. 2004); *Class Plaintiffs*, 955 F. 2d at 1291.

The first six of these *Hanlon* factors have been addressed at great length in support of preliminary settlement approval. *Doc. No. 424-429, generally*; **Pl. Ex. 32**, (*Doc. No. 437, Preliminary Approval Order*). Nothing has occurred since preliminary approval that would mandate any variance from the Court's prior determinations that this settlement was reached through arm's length negotiation, without collusion or other indicia of unfairness to the class, after sufficient discovery and extensive litigation. Nor does any subsequent event impact the Court's preliminary assessments that the strength of the claims at issue, the risk, complexity, and likely duration of continued litigation, and counsels' experience and views of the settlement, all support settlement approval.

The fourth *Hanlon* factor, in particular, is underscored by Dr. Gallagher's detailed valuation of the settlement's direct class benefits. **Pl. Ex. 15**, *generally*, *and see discussion supra*. That analysis confirms, as estimated by class counsel at the time of preliminary approval, that a very substantial benefit has been conferred on the class, both from a class-wide and an individual perspective. The great value of these settlement benefits strongly supports settlement approval. *Hanlon*, 150 F. 3d at 1026.

The single *Hanlon* factor which could not be conclusively known at the time of preliminary approval – class reaction – is now clear and abundantly approving of the settlement. Settlement notices were sent in the manner previously ordered by this Court to more than 12,000 individual

_____

*Iorio, et al. v. Allianz*

Case No. 05-CV-0633-JLS (CAB)

class members (plus several thousand beneficiaries, where the class members were known to be deceased), for more than 15,000 class annuities. **Pl. Ex. 5**, (*Wnorowski Decl.*)   Meticulous address updating and mailing/re-mailing procedures were followed to ensure the highest possible rate of actual receipt of notice by the class. **Pl. Ex. 1**, (*Settlement*, §V.D); **Pl. Ex. 5**, (*Wnorowski Decl.*, ¶¶6-17).[4]  Mailing (and re-mailing) has been highly effective.  Out of more than 16,000 notices mailed, less than 1,000 were returned as undeliverable.  Approximately one-half of these were re-mailed using further updated address information obtained.  All told, just 537 notices remain undeliverable after exhaustion of all reasonable address updating avenues. **Pl. Ex. 5**, (*Wnorowski Decl.*, ¶¶13-17).  The form of the notice, as ordered by the Court, fully described the nature of the action, the terms of the settlement, and class members' rights, (including their right to object and/or appear). **Pl. Ex. 3**, (*Settlement Notice*); **Pl. Ex. 5**, (*Wnorowski Decl.*, ¶15 and Ex. A).  For a small subset of the class who were identified after the prior notices of class certification, a special notice gave clear notice of these class members' right to exclude themselves from the class, in the manner ordered by the Court.[5] **Pl. Ex. 4**, (*Special Opt-Out Notice*); *Doc. No. 438, (Special Opt-Out Notice Order);* **Pl. Ex. 5**, (*Wnorowski Decl.*, ¶16 and Ex. B).

---

[4] Address updating and re-mailing procedures included cross-referencing the new mailing data produced by Allianz with the prior mailing data from the other notices in the case (which had been updated at that time, and continued to be updated in response to class inquiries), duplicative inclusion of multiple addresses and mailing addresses for a single class annuity in instances where a single correct address could not be definitively determined, National Change of Address updating of the resultant mailing database, re-mailing to any updated address for notices returned undeliverable with forwarding information, and advanced address searches (using Lexis/Nexis) for notices returned undeliverable without forwarding information. **Pl. Ex. 1**, (*Settlement*, §V.D); **Pl. Ex. 5**, (*Wnorowski Decl.*, ¶¶6-17).

[5] Previous notices to the class, in the form and manner ordered by the Court, gave each class member notice of class certification and of their right, at that time, to opt out.  Very few elected to do so.  Requests for exclusion at the class certification notice stage were received for just 249 out of more than 16,000 class annuities. **Pl. Ex. 5**, (*Wnorowski Decl.*, ¶¶12, 26, 30 and Ex. C). Obviously, this election to remain in the class at the certification stage was made at a time when no settlement benefits were available for consideration.  Notwithstanding, the special opt-out notice subgroup (just one opt out from more than 300 class members) again signals that the class overwhelmingly approves of the settlement.

In addition to the Court-approved notices, to further assist class members in understanding the settlement and their rights, the parties established live-operator, toll-free telephone, e-mail, and web support.  Through these avenues, the administrator fielded hundred (if not thousands) of class inquiries.  Those inquiries which could not be resolved by the administrator were referred to and resolved by class counsel directly.  **Pl. Ex. 1**, (*Settlement*, §V.E); **Pl. Ex. 5**, (*Wnorowski Decl.*, ¶¶18-30); **Pl. Ex. 8**, (*Edgington Decl.*, ¶5).

In sum, the parties have taken every reasonable step to ensure that class members were fully informed about the settlement, and could make informed decisions about their rights and options. After this full and effective notice process, five months after the deadlines for requesting exclusion or objecting to the settlement, only three objections are pending, and requests for exclusion have been received for just 250 of the more than 15,000 class annuities. **Pl. Ex. 5**, (*Wnorowski Decl.*, ¶¶25-30 and Ex. C); *Gianelli Decl.*, ¶23).  Only a single request for exclusion was received from the special opt-out group (out of 318 mailing records), who considered this opt-out election with knowledge of the benefits made available by the settlement. **Pl. Ex. 5**, (*Wnorowski Decl.*, ¶¶26).  The near total absence of any dissent confirms ithe overwhelming class support for approval of the settlement.

The very significant value of the settlement strongly supports final approval and bears reiteration. *Hanlon*, 150 F. 3d at 1026, (*Hanlon*'s fourth factor).  The direct class relief to be fairly apportioned among approximately 12,000 class members (or where deceased, their beneficiaries) has a full utilization of $89.1 - $89.5 million, and a projected utilization value of $30.8 - $50.0 million.  In addition, the settlement provides separately for Allianz' payment of attorneys' fees, litigation expenses, notice and administration expenses, and class representative incentives, without any cost to the class. Inclusion of fees and litigation expenses as a value inuring to the class is appropriate generally, and especially here, where the claims alleged could properly include an award of fees.  *See*, **Pl. Ex. 17**, (*Miller Decl.*, ¶¶39-40); *Fee Motion, generally*; *Lealao v. Beneficial California,* 82 Cal. App. 4th 19, 28 (2000).  Including these indirect benefits for the class, the settlement's full utilization value is $108.8 - $109.2 million, and the projected utilization value is $50.5 - $69.7 million.

1    This excellent recovery for the class was achieved despite significant litigation risk.  *See*,

2    *Hanlon*, 150 F. 3d at 1026, (*Hanlon* factors 2 and 3).  With respect to the likelihood of prevailing

3    on the merits of the action at trial, the *Mooney v. Allianz* nationwide class action offers an abject

4    lesson in litigation risk.  There, certain similar claims and theories were rejected by a Minnesota

5    jury in October 2009, (just months before the scheduled trial date and settlement in this action).

6    *Gianelli Decl.*, ¶24 *and* **Pl. Ex. 28***,* (*Mooney Special Verdict*).  Although finding Allianz had made

7    misrepresentations and/or engaged in deceptive practices, the jury nonetheless found that the class

8    was not harmed. **Pl. Ex. 28**, (*Mooney Special Verdict*).  That judgment in favor of Allianz has now

9    become final, and the hundreds of thousands of *Mooney* class members have recovered nothing.

10    Class certification also presented significant risk, including appellate risk avoided by settlement.

11    The docket plainly reflects the great vigor with which Allianz contested class certification in this

12    action, opposing the initial certification motion, moving for decertification, moving for

13    "clarification" of the Court's order denying decertification, moving to modify the class definition,

14    and moving to decertify the punitive damage claims.  No less than three times, Allianz petitioned

15    the Ninth Circuit for permission to immediately appeal the Court's various rulings relating to class

16    certification. *Gianelli Decl.,* ¶24.  While class counsel believe this Court's rulings were correct,

17    and Allianz' petitions to immediately appeal were correctly denied, the merits of these challenges

18    were never resolved by the Ninth Circuit.

19    For these reasons, as further discussed in support of preliminary approval, final settlement

20    approval is properly granted.

21

22    **IV.  OBJECTIONS**

23    Out of more than 12,000 class members and more than 16,000 settlement notices mailed (to

24    the class members and beneficiaries of deceased class members), just six objections to the

25    settlement were received, and no requests to appear at the fairness hearing. **Pl. Ex. 5**, (*Wnorowski*

26    *Decl*., ¶28); *Gianelli Decl.,* ¶23); **Pl. Exs. 18-23,** (*Objections*).  Of these, only three remain

27    pending. **Pl. Ex. 18**, (*L. Randolph Objection*); **Pl. Ex. 19**, (*R. Smith Objection*); **Pl. Ex. 20**,

28    (*McKibben Objection*).  The other three objections have been withdrawn by the objector. **Pl. Exs.**

**24-27,** (*Withdrawal of Objections*).    The pending objections are without merit and should be overruled.

      **Ms. Lorna Randolph:**  Ms. Randolph's objection was not filed with the Court (as required), but it is submitted here as **Pl. Ex. 18**, (*L. Randolph Objection*), and addressed on its merits.  Ms. Randolph has a single active-status class annuity, which she wishes to annuitize.  She objects that the settlement's 3.25% annuitization value credit is discriminatory because she cannot exercise it without awaiting the settlement's finality.  There is no discrimination, however.  All class members must await finality before any benefits are available (in any benefits category).  Then, Ms. Randolph will be entitled to annuitize with a $4,762 settlement credit. **Pl. Ex. 8**, (*Edgington Decl.*, ¶8.A).  If unable (or unwilling) to wait, the settlement does not preclude Ms. Randolph from annuitizing immediately without the settlement credit.  Alternatively, she can exercise her pre-existing partial penalty-free withdrawal rights (up to 5% of total premium annually, for her policy form) to tide her over until settlement finality.  Her existing contract rights will therefore allow her to await finality without adverse economic consequences.[6]  This objection should be overruled.

      **Mr. Rick B. Smith, (Doc. No. 441):**  Mr. Smith is not himself a class member, but a beneficiary and trustee for his deceased father's four class annuities.  Mr. Smith (son) is presently receiving payment of the death benefits from these four annuities (two individually, two as a successor trustee) over a period of five years (with four years remaining).  Notably, Allianz has no record of any complaint whatsoever by Mr. Smith at the time that he elected the five-year payout for these death benefit claims. **Pl. Ex. 8**, (*Edgington Decl.*, ¶8.B).  There is no settlement benefit

---

[6] Importantly, Ms. Randolph was aware of the requirement that she await finality if she wishes to receive settlement benefits, conceding that this was properly disclosed in the settlement notice. **Pl. Ex. 18**, (*L. Randolph Objection*); **Pl Ex. 3**, (*Settlement Notice*, p. 11 "Important Note").  For those class members who may have unwittingly annuitized in the interim (*i.e.*, after the settlement's Annuity Status Date but prior to receiving settlement notice), the settlement amendment provides an alternative benefit. **Pl Ex. 2**, (*Settlement Amendment*, ¶6).    For other active-status class members who may make interim elections after the Annuity Status Date but prior to receiving settlement notice, or who may die prior to the ability to exercise active-status settlement benefits, the settlement amendment similarly provides alternative benefits. *Id.*, ¶¶3-6.

1   for beneficiaries who commenced a five-year payout of a death benefit prior to the Annuity Status

2   Date.[7]   By accepting the five-year payout (in lieu of a lump sum), these beneficiaries will already

3   receive the contracts' full annuitization value (including the promised 10% bonus and all earnings),

4   and will entirely avoid the contracts' surrender penalties (loss of bonus, premium load, reduced

5   earnings) at issue in this litigation.  (The 10% bonus alone exceeds $67,500 on these four annuities,

6   before counting any earnings on that bonus.) **Pl. Ex. 8**, (*Edgington Decl.*, ¶8.B).  Further, by virtue

7   of his father's death, the total policy duration in deferral was five years, diminishing the impact (if

8   any) of Allianz's challenged crediting practices.  Mr. Smith also objects that the settlement does

9   not obtain any relief commensurate with the "criminal act" of the sales agent who sold this product

10  to his father.  The sales agent (and his agency, brokerage, and/or any associated marketing

11  organization), however, was not released under the settlement. **Pl. Ex. 1**, (*Settlement*, VII.A.9).

12  Mr. Smith's objections should be overruled.

13       Mr. Smith includes with his objections the off-color remark that "[a]s usual the only party

14  benefiting from a class action lawsuit is the attorneys…." **Pl. Ex. 19**, (*Smith Objection*).  This

15  unsubstantiated comment, without any stated basis, is not a valid objection and should not be

16  considered as such.  Notwithstanding, it is refuted by the settlement's full utilization value of $89.1

17  - $89.5 million, and a projected utilization value of $30.8 - $50.0 million, *for direct class relief

18  alone*.  Not a penny of these very substantial amounts will be diverted to pay class counsel.

19  Further, as a percentage of total recovery under applicable Ninth Circuit precedent, the settlement's

20  attorney fee provisions (to be paid by Allianz separately), are eminently reasonable, (particularly

21  when weighing the outcome in this case against the outcome in the *Mooney* action). *See*, **Pl. Ex.

22  17**, (*Miller Decl.*, ¶¶36-57).

---

24  [7] Mr. Smith complains that the settlement's right to convert a past-annuitized policy to a life with a
25  ten-year guaranteed payout and receive a 3.5% increase in payout under that option, is unappealing
    to him.  Mr. Smith is incorrect in his belief that this settlement benefit applies to beneficiaries who
26  have claimed a death benefit under a five year pay-out.  The referenced right of conversion applies
    to *contract owners* who have annuitized their policies prior to the Annuity Status Date. **Pl. Ex. 1**,
27  (*Settlement*, IV.C).  There is no settlement benefit provided for beneficiaries who have elected a
28  five-year payout, (thus securing the promised bonus and avoiding the contract's surrender
    penalties).

**Mr. Philip E. McKibben, (Doc. No. 444):**  Mr. McKibben objects that he would have to pay taxes upon exercise of any additional penalty-free partial withdrawal right for his active-status annuities, frustrating his ability to transfer those funds to another annuity.[8]  This objection is inaccurate.  *Internal Revenue Code* §1035 does not preclude a *partial* transfer to another annuity. The rules governing "qualified" (IRA) investments do not preclude partial transfer of funds to a different qualified IRA investment.

Mr. McKibben additionally objects that the settlement purportedly did not achieve enough on his behalf, and demands penalty-free transfer of his full annuitization value, (including bonus and earnings), to another company's annuity. This demand is inherently unreasonable in the context of a settlement, as Allianz would have little reason to settle for what essentially represents full nullification of the subject surrender penalties.  Further, his settlement benefits are of significant value, individually.  The settlement will permit penalty-free partial withdrawal of an additional $26,900, avoiding penalties of $10,500 (if realized through annuitization value) or $3,300 (if realized through cash value). The available annuitization credit on the residual is more than $1,500.  For the sake of comparison, the difference between his current annuitization value and cash value is $26,800. **Pl. Ex. 8**, (*Edgington Decl.*, ¶8.C).   More generally, this isolated individual complaint must be considered in context of the exemplary value for the class as a whole:

---

[8] The formally withdrawn objections of Rita B. Miller and Mr. Carl D. and Laura F. Seymour (Doc. Nos. 445-446) were identical. **Pl. Exs. 21-22**, (*Miller and Seymour Objections*); **Pl. Exs. 25-26** (*Withdrawal of Objections*). The Seymour's also echoed Mr. McKibben's objection that the settlement did not achieve enough on their behalf, identically demanding a penalty-free transfer of their full annuitization value, (including bonus and reasonable earnings), to another company's annuity.  These withdrawn objections are without merit for the same reasons.  Further, individually, the Seymour's partial free-out benefit permits withdrawal of an additional $34,400 in premium, avoiding penalties of $12,900 (if realized through annuitization value) or $4,200 (if realized through cash value).  The available annuitization credit on the residual policy value is more than $3,300.  For sake of comparison, the difference between current annuitization value and cash value is $46,300. **Pl. Ex. 8**, (*Edgington Decl.*, ¶8.D).   Ms. Miller's annuity was surrendered prior to June 3, 2010, such that her objection is moot.  She has never been eligible for additional penalty-free partial withdrawals.  Instead, she will receive a substantial cash settlement payment of $24,900 or $17,900 (depending upon whether she transferred her funds to another annuity).  This represents a very substantial partial recovery of the $38,000 difference between her annuitzation value and cash surrender value at the time of surrender. *Id.*, (*Edgington Decl.*, ¶8.E).

---

full utilization value of $89.1 - $89.5 million and a projected utilization value of $30.8 - $50.0 million, to be fairly divided among the 12,000 class members.  Mr. MicKibben's objections should be overruled.[9]

**V.  CONCLUSION**

The settlement is fair, reasonable, adequate, and in the best interest of the class as a whole. The process of reaching the settlement was free from collusion or any other indicia of possible unfairness.  The class has near-unanimously indicated its support for the settlement. For these reasons, and those set forth in support of preliminary approval and in the associated attorneys' fee motion (served and filed herewith), final approval is now properly granted.


Respectfully Submitted:

Dated:  February 10, 2011                         GIANELLI & MORRIS
                                                  ERNST AND MATTISON
                                                  LAW OFFICES OF RONALD A. MARRON

                                                  /s/ Christopher D. Edgington
                                                  By:  Christopher D. Edgington

                                                  Attorneys for Plaintiffs and the Class

---

[9] The only other objection, (Robert J. Ratliff, *Doc. No. 442*), has also been formally withdrawn. **Pl. Ex. 27**.  Mr. Ratliff objects that he does not expect to live long enough to fully exercise the active-status settlement benefits, and demands lump sum payment of annuitization value to his heirs upon his death.  From a class-wide standpoint, mortality has been considered in Dr. Gallagher's valuation of settlement benefits, (both in the full utilization value and the projected utilization value).  Individually, for the first year alone (and each year thereafter), Mr. Ratliff is eligible to avoid penalties of $3,240 (if realized as annutization value) and $740 (if realized as cash value). **Pl. Ex. 8**, (*Edgington Decl*., ¶8.F).    Should Mr. Ratliff not live long enough to exercise any of his active-status benefits, the settlement amendment provides an alternative stop-gap benefit. **Pl. Ex. 2**, (*Settlement Amendment*, ¶¶3-4).