Robert S. Gianelli, #82116
Jully C. Pae, #233565
GIANELLI & MORRIS, A Law Corporation
626 Wilshire Blvd., Suite 800
Los Angeles, CA  90017
Tel:  213.489.1600; Fax:  213.489.1611
Email:  rob.gianelli@gmlawyers.com
          jully.pae@gmlawyers.com

Raymond E. Mattison, #71850
Don A. Ernst, #65726
ERNST AND MATTISON, A Law Corporation
1020 Palm Street
P.O. Box 1327
San Luis Obispo, CA 93406
Tel:  805.541.0300; Fax:  805.541.5168
Email:  rem@emlaw.us

Ronald A. Marron, #175650
LAW OFFICES OF RONALD A. MARRON, APLC
3636 Fourth Avenue, Suite 202
San Diego, CA  92103
Tel:   619.696.9006; Fax:  .619.564.6665
Email:  ron.marron@cox.net

Attorneys for Plaintiffs and the Certified Class

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ANTHONY J. IORIO, MAX FREIFIELD, and RUTH SCHEFFER, on behalf of themselves and all others, similarly situated,<br><br>          Plaintiffs,<br><br>  v.<br><br>ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA, INC.,<br><br>          Defendant. | CASE NO. 05-CV-0633-JLS (CAB)<br>[CLASS ACTION]<br><br>**DECLARATION OF ROBERT S. GIANELLI IN SUPPORT OF MOTIONS FOR FINAL SETTLEMENT APPROVAL AND FOR AN AWARD OF ATTORNEYS' FEES, LITIGATION EXPENSES, AND INCENTIVES**<br><br><u>Hearing</u><br>Date:  March 3, 2011<br>Time:  1:30 p.m.<br>Place:  Courtroom 6<br>       Hon. Janis L. Sammartino |

1

1

# **TABLE OF CONTENTS**

2

3                                                                                                       **Page**

4    Declaration of Robert S. Gianelli ................................................................. 4

5    Plaintiffs' Exhibit 1 (Settlement Stipulation) .............................................. 21

6    Plaintiffs' Exhibit 2 (Amendment to Settlement Stipulation) ...................... 201

7    Plaintiffs' Exhibit 3 (Settlement Notice) .................................................... 230

8    Plaintiffs' Exhibit 4 (Special Opt-Out Notice) ........................................... 252

9    Plaintiffs' Exhibit 5 (Declaration of Rachel Wnorowski) ........................... 256

10   Plaintiffs' Exhibit 6 (Declaration of Raymond E. Mattison)........................ 330

11   Plaintiffs' Exhibit 7 (Declaration of Don A. Ernst).................................... 340

12   Plaintiffs' Exhibit 8 (Declaration of Christopher D. Edgington) ................. 344

13   Plaintiffs' Exhibit 9 (Declaration of Scott Juretic) .................................... 352

14   Plaintiffs' Exhibit 10 (Declaration of Jully C. Pae).................................... 355

15   Plaintiffs' Exhibit 11 (Declaration of Richard Fruto)................................. 358

16   Plaintiffs' Exhibit 12 (Declaration of Joanne Victor)................................. 361

17   Plaintiffs' Exhibit 13 (Declaration of Ronald A. Marron) .......................... 364

18   Plaintiffs' Exhibit 14 (Declaration of Dean Goetz).................................... 375

19   Plaintiffs' Exhibit 15 (Declaration of Vincent P. Gallagher) ...................... 379

20   Plaintiffs' Exhibit 16 (Declaration of Gary Greenfield)............................. 397

21   Plaintiffs' Exhibit 17 (Declaration of Professor Geoffrey P. Miller) ........... 412

22   Plaintiffs' Exhibit 18 (Lorna J. Randolph Objection) ................................. 474

23   Plaintiffs' Exhibit 19 (Rick B. Smith Objection) ....................................... 477

24   Plaintiffs' Exhibit 20 (Philip E. McKibben Objection)............................... 479

25   Plaintiffs' Exhibit 21 (Rita B. Miller Objection)........................................ 484

26   Plaintiffs' Exhibit 22 (Carl D. and Laura F. Seymour Objection)................ 487

27   Plaintiffs' Exhibit 23 (Robert J. Ratliff Objection) .................................... 490

28   Plaintiffs' Exhibit 24 (*Reserved*) ............................................................ 492

2

1

**TABLE OF CONTENTS**, (Continued)

2

3                                                                                                    **Page**

4    Plaintiffs' Exhibit 25 (Notice of Withdrawal of Rita B. Miller Objection)....................................494

5    Plaintiffs' Exhibit 26 (Notice of Withdrawal of Carl D. and Laura E. Seymour Objection) .........497

6    Plaintiffs' Exhibit 27 (Notice of Withdrawal of Robert J. Ratliff Objection) .............................. 500

7    Plaintiffs' Exhibit 28 (Special Verdict Form, *Mooney v. Allianz*) ................................................. 502

8    Plaintiffs' Exhibit 29 (Declaration of Anthony Iorio) ................................................................... 506

9    Plaintiffs' Exhibit 30 (Declaration of Ruth Scheffer).................................................................... 513

10   Plaintiffs' Exhibit 31 (Declaration of Max Freifield).................................................................... 518

11   Plaintiffs' Exhibit 32 (Preliminary Settlement Approval Order) .................................................. 524

12   Plaintiffs' Exhibit 33 (Special Opt-Out Notice Order)................................................................... 544

13   Plaintiffs' Exhibit 34 (Exemplar MasterDex 10 Policy Form)....................................................... 549

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>DECLARATION OF ROBERT S. GIANELLI</u>**

I, **ROBERT S. GIANELLI**, hereby declare:

1. I am an attorney licensed to practice law in the State of California and in this Court, and co-lead counsel of record for plaintiffs and the class in the above captioned action, ("action"). I submit this declaration in support of plaintiffs' motion for final approval of the proposed class action settlement in the action and plaintiffs' motion for an award of attorneys' fees, litigation expenses, and class representatives' incentives, both served and filed herewith. I have been in involved in all aspects of the litigation of the action and I have first hand knowledge of the matters stated in this declaration. If called upon to do so, I would testify in accordance with this declaration.

2. The law firm of Gianelli & Morris has specialized in representing aggrieved consumers in complex insurance class action and unfair business practices (*Business & Professions Code* §17200) litigation for over 25 years. During this time I have handled the investigation, preparation, trial, and appeals of numerous consumer class actions, in both state and federal courts. I have been a practicing attorney for over 30 years.

3. I have served as an Adjunct Professor teaching Insurance Law at Whittier Law School and La Verne University College of Law. I am a contributing editor to the Rutter Group publication, *California Practice Guide: Insurance Litigation*. On numerous occasions, I have lectured, and continue to lecture, on insurance related topics, including programs and lectures sponsored by the Rutter Group and ABA/ALI. I have also lectured on numerous occasions to the Consumer Attorneys of California on issues of insurance and insurance bad faith.

4

4.      In addition to this action, Gianelli & Morris has been appointed class counsel in a number of significant consumer class actions, in many cases as co-class counsel with the firm Ernst and Mattison.  My firm is presently serving as class counsel in various certified consumer class actions, and in the pre-certification phases of other putative class actions.  Gianelli & Morris and Ernst and Mattison have litigated (or are presently litigating) six deferred annuity sales fraud class actions, including this action. Gianelli & Morris has also collaborated with the Law Offices of Ronald A. Marron in several consumer class actions, including several deferred annuity sales fraud cases.

5.      Gianelli & Morris has represented the insureds in a number of significant consumer law decisions, including: *Clark v. Superior Court*, 50 Cal. 4th 605 (2010) (reversing the Second District Court of Appeal's ruling that *Civil Code* §3345 applies to UCL restitution, previously published at *Clark v. Superior Court*, 174 Cal. App. 4th 82 (2009)); *Broberg v. The Guardian Life Insurance Co.*, 171 Cal. App. 4th 912 (2009); *Rodriguez v. Blue Cross of California*, 162 Cal. App. 4th 330 (2008); *Kavruck v. Blue Cross of California*, 108 Cal. App. 4th 773 (2003); *Allstate v. Overton*, 160 Cal. App. 3d 843 (1984); *Hansen v. Blue Cross*, 891 F.2d 1384 (9th Cir. 1989); *American States Ins. Co. v. Borbor*, 826 F. 2d 888 (9th Cir. 1987); *IT Corp. v General* American, 107 F. 3d 1415 (9th Cir. 1997).

6.      The proposed settlement in the action is fair, adequate, and reasonable; it is the product of extensive negotiation among the settling parties and free from collusion; and it represents an excellent recovery on behalf of the class.  The terms of the settlement, and valuation of the settlement benefits for the class are described in detail in the declarations submitted by myself and my co-class Counsel in  support of preliminary settlement approval, and further analyzed by expert actuary, Vincent P. Gallagher, Ph.D., (**Pl. Ex. 15**).

7.      In addition to the direct class settlement benefits, Allianz has agreed not to oppose, and if awarded by the Court to separately pay, attorneys' fees in the amount $18,000,000,

5

litigation expenses in the amount $1,300,000, all reasonable costs of settlement notice and administration, and incentives for the class representatives of $25,000 each.  The amounts which may be awarded by the Court for fees, expenses, and incentives shall not in any way reduce the direct class benefits.  The amounts awarded by the Court for fees and expenses shall represent Class Counsel's full compensation for their work in litigating the action and obtaining this settlement on behalf of the class. No class member will have any obligation to pay any fees, litigation expenses, administration expenses, or class representative incentives.  The settlement's provisions in these regards are set forth in Section VIII. Of the Settlement Stipulation, (**Pl. Ex. 1**).

Attorneys' fees, litigation expenses, administration expenses, and class representative incentives were not discussed at mediation or settlement negotiations until after all class issues had been resolved and the direct class relief was secured.   The attorneys' fees awarded by the Court shall be divided among Class Counsel in the agreed-upon manner – 39% to Gianelli & Morris, 39% to Ernst and Mattison (to be divided 50-50% between its successor firms, Ernst Law Group and Mattison Law Firm), and 22% to the Law Offices of Ronald A. Marron.  This division is based on counsel's present assessment of their relative contributions to the litigation of the action, and has been disclosed and consented to by the class representatives.  A true and correct copy of said agreement was previously submitted as Exhibit 12 to my declaration in support of preliminary settlement approval.  The submitted declarations of Mr. Ernst and Mr. Mattison (**Pl. Exs. 6-7**) confirm the division between their respective successor firms, and its disclosure to the class representatives.

8.   Under the retainer agreements executed between the class representatives and class counsel (Gianelli & Morris, Ernst and Mattison, and the Law Offices of Ronald A. Marron), class counsel's right to be compensated for the legal services provided to the class representatives and on behalf of the class in these action is wholly contingent upon these

6

firms' ability to obtain a monetary recovery or other valuable relief for the benefit of the class representatives and class members by means of settlement or judgment.

9.    Based on the billing records maintained by Gianelli & Morris, my firm performed a total of 4,921.8 attorney hours of work and 787.2 hours of paralegal work on this file during the five and one-half year period (to date) of this litigation.  The significant majority of this time, (3,652.1 hours), was performed by me.  The balance was performed by attorneys, Sherril Nell Babcock (125.9 hours), Jully C. Pae (793.2 hours), Richard R. Fruto (267.0 hours), and Joanne Victor (83.6), and paralegal Shayn Adamson (787.2 hours).  The extensive secretarial time expended on this file by my firm's staff has not been included in the firm's lodestar.  The firm has detailed daily time records itemizing the time spent by the firm's attorneys, which can be presented to the Court at hearing upon request.  The time expended in connection with this litigation by my firm, as set forth herein, is reasonable in amount, particularly when compared to the complexity of this litigation and the quality of the result achieved on behalf of the class.  The entirety of my firm's work on this file was necessary to ensure the successful prosecution of this litigation.

10.   The billing rate applied in calculating my portion of the "lodestar" is $750.00 per hour. The reasonableness of my billing rate, for work of this complexity, by comparably qualified senior counsel, is attested to by Gary Greenfield, an attorney with particular expertise in market billing rates.  Mr. Greenfield's declaration is attached hereto as **Pl. Ex. 16**.  My skill and experience as a trial lawyer and in the prosecution of complex consumer class action litigation, particularly in the insurance field (and specifically including six senior deferred annuity sales fraud class actions), is described above and in my declaration in support of preliminary settlement approval.

My $750 per hour billing rate represents only a moderate increase over my prior billing rate of $675, repeatedly approved in both in the Los Angeles Superior Court and the United States District Court for the Central District of California, for comparably complex

7

class action insurance litigation.  This prior billing rate was approved in the Central District of California in *Chastain v. Union Security Life Insurance Company*, *et al*., C.D. Cal. Case No. CV 06-5885 ABC (FFMx) (C.J. Audrey B. Collins) and *Alloway v. ReliaStar life Insurance* Company, Case No. CV 06-4719 CAS (FMOx) (C.D. Cal. J. Snyder) and *Salgado v. ReliaStar life Insurance Company*, Case No. CV 08-05624 CAS (FMOx) (related cases, J. Christina A. Snyder); and in other deferred annuity sales fraud class actions in the Los Angeles Superior Court in *Peterman v. North American Company for Life & Health Insurance*, et al., Los Angeles Superior Court Case No. BC357194 (J. Carolyn B. Kuhl) and *Clark v. National Western Life Insurance Company, et al*., Los Angeles Superior Court Case No. BC321681 (J. Ann I Jones).

11.    Ms. Pae is an associate in the firm of Gianelli & Morris, and has been employed in this capacity since 2006.  I am well-familiar with her qualifications and experience. Throughout her employment at Gianelli & Morris, Ms. Pae has worked extensively on the firm's consumer class action files, including several annuity sales fraud class actions.  The reasonable billing rate applied in calculating Ms. Pae's portion of the "lodestar" is $500.00 per hour.  The reasonableness of this hourly billing rate, for work of this complexity, by comparably qualified counsel, is attested to by Mr. Greenfield in his declaration, (**Pl. Ex. 16**).  Ms. Pae's billing rate represents only a moderate increase over her prior billing rate of $410, approved repeatedly approved in the *Chastain*, *Alloway*, *Salgado*, *Peterman*, and *Clark* class actions, *supra*.

12.    Mr. Fruto is an associate in the firm of Gianelli & Morris, and has been employed in this capacity since 2001.  I am familiar with his qualifications and experience.  Throughout his employment at Gianelli & Morris, Mr. Fruto has worked extensively on the firm's consumer class action files.  The reasonable billing rate applied in calculating Mr. Fruto's portion of the "lodestar" is $450.00 per hour.  Although a higher billing rate may be justified by Mr. Fruto's 11 years of experience, and extensive class action experience, a

8

lower billing rate has been applied in an exercise of discretion based on the particular nature of the work he performed on this file.  The reasonableness of this hourly billing rate, for work of this complexity, by comparably qualified counsel, is attested to by Mr. Greenfield in his declaration, (**Pl. Ex. 16**).  Mr. Fruto's billing rate represents only a moderate increase over her prior billing rate of $400, repeatedly approved in prior consumer class action cases in the Los Angeles Superior Court.  Mr. Fruto's prior rate was approved in the *Clark* and *Peterman* deferred annuity sales fraud class actions, *supra*, and also in *Ticconi v. Blue Shield of California Life & Health Insurance Company*, Los Angeles Superior Court, Case No. BC330989 (J. Anthony J. Mohr), and *Papadakis v. Northwestern Mutual Life Ins. Co.*, Case No. BC322788 (J. Peter D. Lichtman).

13.   Ms. Babcock was an attorney at the firm of Gianelli & Morris from 1990 through 2007, and I am very familiar with her experience and qualifications.  Ms. Babcock was admitted to California Bar in 1988.  Initially, she was employed as practicing as a research attorney for the Los Angeles Superior Court.  She joined Gianelli & Morris in 1990, and through 2007, she practiced nearly exclusively in the fields of insurance, class action, and unfair business practices law.  Among other cases, Ms. Babcock worked on five of the firm's annuity sales fraud class action files, if this one is included.  After leaving Gianelli & Morris in 2007, Ms. Babcock returned to employment with the California Superior Court, as a law clerk for the Fresno County Superior Court. During the course of her 17-year employment with Gianelli & Morris, Ms. Babcock handled the briefing for several hundred motions in connection with the firm's insurance and consumer class action files, and numerous writs and appeals in both the state and federal courts.  She was awarded an "AV" rating by Martindale-Hubbell in 2003.  The billing rate applied in calculating Ms. Babcock's portion of the "lodestar" is $575 per hour.  Ms. Babcock's billing rate is supported as reasonable by the breadth of her experience in this highly specialized area of law, and by the comparable billing rates for attorneys of her seniority, as demonstrated by the Mr. Greenfield's analysis for other billing attorneys on this file.  Ms. Babcock's $575

9

per hour billing rate was previously approved in the *Clark* deferred annuity sales fraud class action, *supra*.

14.   Joanne Victor was admitted to the bar in 1985.  She was an Adjunct Professor of Law at Southwestern University and a research attorney for the California Court of Appeal before entering private practice in 1988.  She has been at Gianelli & Morris for one year, during which time she has worked on various consumer class action files, including several health care rescission, financial elder abuse, and deferred annuity sales fraud cases.  Prior to joining Gianelli & Morris, she did insurance defense work for 15 years, including some work in class action cases. The reasonable billing rate applied in calculating Ms. Victor's portion of the "lodestar" is $450.00 per hour.  Although a higher billing rate may be justified by her 25 years of experience, a lower billing rate has been applied in an exercise of discretion based on the particular nature of the work she performed on this file.  The reasonableness of this hourly billing rate, for work of this complexity, by comparably qualified counsel, is attested to by Mr. Greenfield in his declaration, (**Pl. Ex. 16**).

15.   Paralegal, Shayn Adamson, has been employed by Gianelli & Morris for fourteen years, and has been a certified paralegal for nine years.  He has extensive experience with the special requirements of managing the voluminous data and documents in complex class action litigation.  I am generally familiar with the rates charged in this legal market for paralegal services, and the reasonable billing rate for Mr. Adamson's time, claimed in the lodestar for my firm, is $195 per hour.  Mr. Adamson's $195 billing rate was approved by the Los Angeles Superior Court in both the *Peterman* and *Clark* class actions, *supra*.

16.   Gianelli & Morris has incurred $1,114,701.71 in out-of-pocket expenses in connection with the action to date (paid and currently due), all of which are the type of expenses which are normally billed to a fee-paying client.  These litigation expenses incurred by my firm are reflected on an expense-by-expense basis in the financial records of my firm maintained by

10

my firm's accounting department.  These records are prepared from expense reports, check requests, and cash receipts, and are maintained in the ordinary course of business by Gianelli & Morris.  An itemized summary of un-reimbursed expenses can be presented to the Court at hearing upon request.

17.     Based on the foregoing, the "lodestar" fee amount for Gianelli & Morris in the action, to date, is $3,520,241.50.  The portion of this lodestar attributable to my own work in connection with this litigation is $2,739,975.00.  The "lodestar" litigation expense amount for my firm is $1,114,701.71.

18.     This lodestar amount for my firm does not include any amounts for the time expended by the firm's secretarial staff, and is not adjusted for any multiplier.

19.     Based on my past experience in administering similar class action settlements with a similar class population demographic, including other senior deferred annuity sales fraud cases, substantial time and expenses will continue to be incurred by class counsel's firms in conjunction with settlement administration.  For this reason, class counsel have included $300 hours at a reduced billing rate of $410 in the lodestar amount for the firm of Ernst and Mattison.  This work will be largely performed by attorney, Christopher D. Edgington.  I have reviewed Mr. Edgington's declaration concerning such future settlement administration work and concur in his analysis of the time to be expended.  If anything, in my experience, the estimated 300 hours will be on the low side for a case and class of this magnitude and demographic.

20.     I am familiar in all respects with the contributions of co-class counsel, Ernst and Mattison and the Law Offices of Ronald A. Marron.  For years, Ernst and Mattison and Gianelli & Morris have collaborated extensively in the prosecution of complex consumer class action

11

cases.  This collaboration has proved highly successful in the firms' prosecution of consumer class action cases, including the present action.  I have also collaborated with Mr. Marron in several consumer class action cases as well, and I am well-familiar with his contributions.  Although eleven different billing attorneys contributed work on this file, through a centralized decision-making process, the firms and lawyers successfully minimized any duplication of effort and ensured that the best possible collaborative work resulted.  Co-class counsel have submitted declarations, served and filed herewith, of their time spent in connection with this litigation.   I have reviewed said declarations and I am familiar with the time declared to have been expended therein.   The time expended by co-class counsel, as set forth in their declarations, is reasonable in amount, particularly when compared to the complexity of this litigation and the quality of the result achieved on behalf of the class.  The time expended by co-class counsel was reasonable and necessary to ensure the successful prosecution of this litigation.

21.   I am likewise generally familiar with the expenses incurred by co-class counsel in this action and I have reviewed the declarations of Mr. Mattison and Mr. Marron in this regard.  The expenses incurred by co-class counsel's firms, as set forth in said declarations, are reasonable in amount, and were reasonably and necessarily incurred in connection with the litigation of this matter for the benefit of the class.

22.   Class counsel's requested award of attorneys' fees, in the full unopposed amount of $18.0 million, is supported as reasonable by a lodestar/multiplier analysis, based upon a total fee lodestar of $10,575, 285.50, and a multiplier of 1.70.  A multiplier of this magnitude given the circumstances of this litigation and settlement (and in particular, the contingency/litigation risk discussed below, which is not subsumed in class counsel's lodestar) is supported as reasonable by the analysis of class action attorneys' fee expert, Professor Geoffrey P. Miller, whose declaration is attached as **Pl. Ex. 17**.  As confirmed by

12

his declaration, Professor Miller is a law professor at New York University and a pre-eminent expert on issues of reasonable fees and expenses in complex class action litigation.

A full award of the unopposed $18.0 million fee permitted under the settlement is likewise supported as reasonable by a percentage of recovery cross-check.  Plaintiffs' expert actuary, Dr. Vincent P. Gallagher (whose declaration is attached as **Pl. Ex. 15**), has calculated the "full utilization value" of the settlement to be $108.8 - $109.2 million, representing the value of the benefits actually made available to the class members if exercised, and the "projected utilization value" to be $50.5 - $69.7 million, taking into account actuarial predictions of voluntary policyholder behavior with regard to their policies and new contract rights created by the settlement..   Based on these values, the requested attorneys' fee represents 16.48% of the settlement's full utilization value, and 29.95% of the midpoint of the range of projected utilization value.  The reasonableness of the requested fee award (as a percentage of the total recovery) is further supported by the Professor Miller's analysis (**Pl. Ex. 17**), confirming that whether measured against full utilization value or a projected utilization value midpoint, the requested fee falls within generally accepted range in the Ninth Circuit, and in an survey of comparable class action fee awards generally.

The direct class relief ($89.1 – $89.5 million full utilization value; $30.8 - $50.0 million projected utilization value) will not be reduced whatsoever because of any awarded attorneys' fees, litigation expenses, settlement administration expenses, or incentives, since all these amounts are separately provided for by the settlement, and if awarded will be paid by Allianz, not by the class.  Settlement benefits are not "claims-made" meaning the entirety of the direct class relief will automatically be available to the class upon finality, (although the exercise of new contractual rights will remain the choice of individual class members, as reflected by the difference between the full and projected utilization values).  Approximately 25-30% of the direct class benefits are immediate cash benefits, not dependent on utilization, and will be automatically distributed upon finality.

13

The legal authorities confirming the reasonableness of the requested fee, under these circumstances, are set forth in the supporting points and authorities served and filed herewith.

23.    As of February 10, 2011 (five months after the deadline for any objection to the settlement, class counsel have received only six objections to the settlement, (**Pl. Exs. 18-23**).  (Four of these were filed with the Court as required by the settlement.  The one objection which was not filed has nevertheless been addressed on its merits in plaintiffs' final approval motion, and a copy is provided here for the Court's consideration. **Pl. Ex. 18**.)  Three of these six objections have been formally withdrawn by the objector, (**Pl. Exs. 25-27**), and three remain pending.  No other objection to the settlement, timely and valid or otherwise, has been received by Class Counsel from anyone, (including any Class member), either directly or via the settlement administrator.  No requests to appear at the final approval hearing have been received from or on behalf of any class member, or by anyone else.

24.    The contingency/litigation risk confronted by class counsel in fully litigating this action from its inception to only hours before the commencement of jury selection cannot be understated.  As already noted *supra*, class counsel's significant expenditure of time and expenses in this action to date (more than 17,100 hours for the three firms (including more than 15,200 attorney hours, 55.7%% of which were expended by senior counsel), and $1.28 million in expenses) was on a pure contingency basis.  The three firms involved are relatively small.  My firm employs six attorneys, four of whom participated in this action; Ernst and Mattison employs five attorneys and one contract attorney, four of whom participated; and Mr. Marron is a sole proprietor (assisted to some extent by one contract attorney and various law clerks).

This commitment of these firms' resources, on a pure contingency basis, is particularly significant in the context of this action.  In October 2009, only several months before the scheduled trial date in this action, a Minnesota jury in the nationwide class

14

action *Mooney v. Allianz Life Insurance Company of North America*, D. Minn. Case No. 06-545 ADM/FLN found in favor of Allianz. *Mooney*, which "carved out" the senior California annuity purchasers comprising the class in this action, asserted certain similar claims and theories to those asserted here. The judgment in Mooney, pursuant to that verdict (Pl. Ex. 28) is now final. The *Mooney* class, comprised of hundreds of thousands of annuity purchasers, has received no recovery or relief of any nature.

Allianz' strident challenge to class certification in this action, which if successful would have been a death knell for this lawsuit, also bears mention in assessing the significance of class counsel's contingency risk. As reflected by the docket, Allianz vigorously opposed class certification, sought decertification, sought "clarification" of denial of decertification, sought to modify the class definition, and sought to decertify the punitive damages claims – effectively litigating class certification five separate times. The Court's rulings on these motions were the subject of three separate Rule 23(f) petition by Allianz for immediate review by the Ninth Circuit. The merits of these potential appellate issues remained unresolved at the time of settlement on the literal eve of trial.

As set forth in plaintiffs' supporting points and authorities and as confirmed by Professor Miller's declaration (**Pl. Ex. 17**), this contingency/litigation risk, supports as reasonable the requested fee multiplier and plaintiffs' percentage-of-recovery analysis.

25. A true and correct fully-executed copy of the *Settlement Stipulation*, preliminarily approved by the Court on July 1, 2010, is attached as **Pl. Ex. 1**. Said exhibit was previously filed in support of preliminary settlement approval, and is re-submitted here for the Court's and parties' convenience.

26. A true and correct fully-executed copy of the *Amendment to Settlement Stipulation*, is attached as **Pl. Ex. 2**.

15

27.     A true and correct fully-executed copy of the Settlement Notice mailed to the class on August 5, 2010, in accordance with the settlement and the Court's preliminary settlement approval order in the action (Doc. No. 437), is attached hereto as **Pl. Ex. 3**.

28.     A true and correct fully-executed copy of the Special Notice of Right to Remain a Class Member or Request Exclusion from Class Action (Special Opt-Out Notice") mailed to the class on August 5, 2010, in accordance with the Court's order in the action (Doc. No. 438), is attached hereto as **Pl. Ex. 4**.

29.     A true and correct copy of the *Declaration of Rachel Wnorowski*, of Epiq Class Action and Claims Solutions, Inc., settlement administrator in the action, executed February 9, 2011, is attached hereto as **Pl. Ex. 5**.  The original declaration will be available at hearing for the Court's review.

30.     A true and correct copy of the *Declaration of Raymond E. Mattison*, executed February 10, 2011, is attached hereto as **Pl. Ex. 6**.  The original declaration will be available at hearing for the Court's review.

31.     A true and correct copy of the *Declaration of Don A. Ernst*, executed February 10, 2011, is attached hereto as **Pl. Ex. 7**.  The original declaration will be available at hearing for the Court's review.

32.     A true and correct copy of the *Declaration of Christopher D. Edgington*, executed February 10, 2011, is attached hereto as **Pl. Ex. 8**.  The original declaration will be available at hearing for the Court's review.

16

33.    A true and correct copy of the *Declaration of Scott Juretic*, executed February 10, 2011, is attached hereto as **Pl. Ex. 9**.  The original declaration will be available at hearing for the Court's review.

34.    A true and correct copy of the *Declaration of Jully C Pae*, executed February 10, 2011, is attached hereto as **Pl. Ex. 10**.  The original declaration will be available at hearing for the Court's review.

35.    A true and correct copy of the *Declaration of Richard R. Fruto*, executed February 10, 2011, is attached hereto as **Pl. Ex. 11**.  The original declaration will be available at hearing for the Court's review.

36.    A true and correct copy of the *Declaration of Joanne Victor*, executed February 10, 2011, is attached hereto as **Pl. Ex. 12**.  The original declaration will be available at hearing for the Court's review.

37.    A true and correct copy of the *Declaration of Ronald A. Marron*, executed February 10, 2011, is attached hereto as **Pl. Ex. 13**.  The original declaration will be available at hearing for the Court's review.

38.    A true and correct copy of the *Declaration of Dean Goetz*, executed February 10, 2011, is attached hereto as **Pl. Ex. 14**.  The original declaration will be available at hearing for the Court's review.

39.    A true and correct copy of the *Declaration of Vincent P. Gallagher*, executed February 7, 2011, and Exhibit A thereto, is attached hereto as **Pl. Ex. 15**.  The original declaration will be available at hearing for the Court's review.

17

40.     A true and correct copy of the *Declaration of Gary Greenfield*, executed February 8, 2011, and Exhibit 1 thereto, is attached hereto as **Pl. Ex. 16**.  The original declaration will be available at hearing for the Court's review.

41.     A true and correct copy of the *Declaration of Professor Geoffrey P. Miller*, executed February 8, 2011, and appendices thereto, is attached hereto as **Pl. Ex. 17**.  The original declaration will be available at hearing for the Court's review.

42.     A true and correct copy of the objection of Lorna J. Randolph to the settlement is attached hereto as **Pl. Ex. 18**.  Said objection was not previously filed with the Court by the objector.

43.     A true and correct copy of the objection of Rick B. Smith to the settlement is attached hereto as **Pl. Ex. 19**.  Said objection was previously filed with the Court by the objector, (*Doc. No. 441*).

44.     A true and correct copy of the objection of Philip E. McKibben to the settlement is attached hereto as **Pl. Ex. 20**.  Said objection was previously filed with the Court by the objector, (*Doc. No. 444*).

45.     A true and correct copy of the objection of Rita B. Miller to the settlement is attached hereto as **Pl. Ex. 21**.  Said objection was previously filed with the Court by the objector, (*Doc. No. 446*).

46.     A true and correct copy of the objection of Carl D. and Laura F. Seymour to the settlement is attached hereto as **Pl. Ex. 22**.  Said objection was previously filed with the Court by the objector, (*Doc. No. 445*).

47.     A true and correct copy of the objection of Robert J. Ratliff to the settlement is attached hereto as **Pl. Ex. 23**.  Said objection was previously filed with the Court by the objector, (*Doc. No. 442*).

48.     **Pl. Ex. 24** is reserved.

49.     A true and correct copy of the notice of withdrawal of the objection of Rita B. Miller to the settlement is attached hereto as **Pl. Ex. 25**.

50.     A true and correct copy of the notice of withdrawal of the objection of Carl D. and Laura F. Seymour to the settlement is attached hereto as **Pl. Ex. 26**.

51.     A true and correct copy of the notice of withdrawal of the objection of Robert J. Ratliff to the settlement is attached hereto as **Pl. Ex. 27**.

52.     A true and correct copy of the special verdict form in the matter, *Mooney v. Allianz Life Insurance Company of North America*, D. Minn. Case No. 06-545 ADM/FLN, dated October 12, 2009, is attached hereto as **Pl. Ex. 28**.

53.     A true and correct copy of the *Declaration of Anthony Iorio*, executed February 9, 2011, is attached hereto as **Pl. Ex. 29**.  The original declaration will be available at hearing for the Court's review.

54.     A true and correct copy of the *Declaration of Ruth Scheffer*, executed February 10, 2011, is attached hereto as **Pl. Ex. 30**.  The original declaration will be available at hearing for the Court's review.

55.    A true and correct copy of the *Declaration of Max Freifield*, executed February 9, 2011, is attached hereto as **Pl. Ex. 31**. The original declaration will be available at hearing for the Court's review.

56.    For the Court and parties' convenience, a true and correct copy of the Court's preliminary settlement approval order (Doc. No. 437), dated July 1, 2010, is attached hereto as **Pl. Ex. 32**.

57.    For the Court and parties' convenience, a true and correct copy of the Court's order regarding the Special Opt-Out Notice (Doc. No. 438), dated July 1, 2010, is attached hereto as **Pl. Ex. 33**.

58.    A true and correct copy of an exemplar MasterDex 10 policy form, produced in discovery in the action, is attached hereto as **Pl. Ex. 34**.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct and that this declaration was executed in Los Angeles, California, on February 10, 2011.



Robert S. Gianelli